IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis, | Case No. 24-cv-00426 (PJS/DLM) |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT** |
| City of Rochester, Patrick Keane, and Kim Norton, | |
| Defendants. | |

Dennis's response brief states what has long been apparent: this lawsuit is entirely about Dennis's anger at the March 6 Resolution. (*See* Pl.'s Resp. at 3 [ECF No. 27].) Dennis contends that the censure targeted her because she has ADHD, but that is not supported by Dennis's pleading and the materials fairly embraced by it. Instead, the March 6 Resolution makes plain the conduct it targeted: intimidating behavior, unwillingness to respect personal boundaries, threats, and more. That conduct does not map onto Dennis's ADHD symptoms, such as difficulty focusing, a short attention span, and struggles with "linear processing and working memory." (*Compare* Am. Compl. ¶ 13 [ECF No. 13] *with* Defs.' Ex. 2 [ECF No. 22-2].) That is, Dennis does not plausibly allege that she engaged in the behaviors *because* of her disability, and nor could she.

Dennis did not and cannot link the censure and resulting limitations with her ADHD. Moreover, Dennis does not sufficiently allege that she has experienced an adverse action because the March 6 Resolution merely reiterated the rules and norms that apply to all Councilmembers and did not prevent her from performing her role. Counts I, II, III, V, and VI fail as a matter of law. Likewise, Dennis offers little more than improper, conclusory assertions to support her retaliation claims (Count IV, IX), defamation claim (Count VII), and procedural due process claim (Count VIII). Because Dennis fails to state any claim, the Court should dismiss the Amended Complaint.

## **ARGUMENT**

### I.   **Dennis does not dispute—and thus concedes—many aspects of Defendants' motion.**

#### A.   **Keane and Norton are immune from suit.**

Defendants Patrick Keane and Kim Norton are immune from suit for several reasons—none of which Dennis contests.

First, both Keane and Norton have legislative immunity from all claims related to their roles in the March 6 Resolution. *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998). Dennis thus fails to state a claim against them for all Counts related to the March 6 Resolution (Counts I–VI, VIII, and IX).

Second, Keane and Norton have qualified immunity from Dennis's First Amendment claim because their roles in the March 6 Resolution involved

discretionary functions that did not violate Dennis's clearly established constitutional rights. *See Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, No. 317CV12300BRMTJB, 2019 WL 1895065, at *8–*10 (D.N.J. Apr. 29, 2019) (elected official failed to state First Amendment claim so Defendants were entitled to qualified immunity). Count IX thus fails.

Third, neither Keane nor Norton are liable under Title VII, the ADA, or the MHRA because the statutes do not permit claims against individuals. See *Kristensen v. Greatbatch*, No. CIV. 11-3318 MJD/TNL, 2012 WL 4479244, at *4 (D. Minn. Sept. 28, 2012) (dismissing Title VII and ADA claims because the statutes do not provide for individual liability); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (individuals are not liable under Title II of the ADA); *cf. Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 801 (Minn. 2013) (individual not liable under the MHRA). Counts I–IV and VI fail as to Keane and Norton on this basis.

Fourth, Norton's alleged statements to the independent investigator cannot support a defamation claim. Statements made in good faith, "upon a proper occasion, from a proper motive," and "based upon reasonable or probable cause" are protected by a qualified privilege. *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). In her response, Dennis asserts—without any basis or additional explanation—that Norton's alleged statements were "completely false" and part of a "vicious smear campaign." (Pl.'s Resp. at 16.) But Dennis cannot dispute that Norton made the

3

alleged comments in context of the City's good-faith investigation into Dennis's complaint of disability discrimination, conducted by an outside investigator. (*See* Defs.' Ex. 4 at 11 [ECF No. 23].) Courts have repeatedly affirmed that communications made in the course of investigating alleged misconduct are protected by the qualified privilege. *E.g.*, *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 468 (8th Cir. 2016); *Rudebeck v. Paulson*, 612 N.W.2d 450, 453 (Minn. Ct. App. 2000). Although such investigations most typically arise in the employment context—which this is not—the same rationale applies here.

Dennis also does not plausibly dispute that Norton's alleged comments were made in good faith and "based upon reasonable or probable cause." It is not enough for Dennis to assert that Norton acted "maliciously," or in a way that "appears" improper "to reasonable people." (*See* Pl.'s Resp. at 16.) Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a plaintiff can overcome the qualified privilege with well-pleaded allegations that the statements were made from "ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff," Dennis fails to do so. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 920 (Minn. 2009) (citation omitted). Instead, Dennis's 'unadorned' pleading is akin to that at issue in *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 1000 (D. Minn. 2013), *aff'd*, 823 F.3d 462

(8th Cir. 2016). There, the plaintiff merely alleged that the defendant defamed him because the defendant "was angry at Plaintiff." *Id.* The court concluded that assertion did not show actual malice and thus did not defeat the qualified privilege. *Id.* Here, at most, Dennis suggests that Norton repeated a "rumor" and/or "took words out of context." (Pl.'s Resp. at 16.) Even if true, that would not meet the required threshold for actual malice. Count VII must be dismissed.

In short, Keane and Norton are immune from suit and this Court should dismiss all claims against them.

**B.      Dennis did not address the fatal flaws in her retaliation claims.**

Although Dennis's response and supporting filings repeatedly *state* that she experienced retaliation under the MHRA and the First Amendment, Dennis fails to cure any of the flaws in those claims. To support a claim for retaliation, Dennis must plead that she (1) engaged in protected conduct, (2) suffered an adverse action, and (3) there is a causal connection between the "materially adverse" action and the protected conduct. *See Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (analyzing First Amendment retaliation claim); *Larson v. Arthur J. Gallagher & Co.*, No. CIV. 13-1506 JNE/SER, 2013 WL 4734021, at *5 (D. Minn. Sept. 3, 2013) (analyzing MHRA reprisal claim). But Dennis's Amended Complaint does not include any details of her alleged protected conduct or any plausible causal connection between that conduct and any materially adverse action. That is, Dennis fails to allege the basic elements of a retaliation claim. What's more, in her response, Dennis alleges that

the March 6 Resolution was, itself, an adverse action. (Pl.'s Resp. at 9–10, 12.) But this position is at odds with her pleadings, which seem to suggest that Dennis experienced an adverse action *after opposing* the March 6 Resolution. (*See* Am. Compl. ¶¶ 15, 18.) Either way, Dennis's allegations do not state a claim for retaliation. *See Iqbal*, 556 U.S. at 678. Counts IV and IX must be dismissed.

### C. Dennis does not support any claim under Section 1981, the Civil Rights Act of 1991, the Lily Ledbetter Fair Pay Act, or Minn. Stat. § 363.09.

Dennis's Amended Complaint does not allege the elements of a claim under Section 1981, the Civil Rights Act of 1991, or the Lily Ledbetter Fair Pay Act. (*See* Defs.' Mem. at 23–24 [ECF No. 20].) Dennis did not address those failures in her response brief opposing this motion. Likewise, Dennis's response did not contest that Minn. Stat. § 363.09 was repealed and is no longer operable. These aspects of Counts V and VI fail as a matter of law.

## II. Dennis is not an employee under Title VII, the ADA, or the MHRA.

Defendants did not violate employment laws because Dennis is not an employee.

Title VII does not apply to elected officials: it expressly carves out "any person elected to public office" from the definition of an "employee." 42 U.S.C. § 2000e(f). Likewise, the MHRA does not apply to elected officials because they hold "a political position, separate and distinct from any employer/employee relationship" and "[i]n no way are they employed by any entity or person within the [governmental

structure]." *Farrington v. City of Richfield*, 488 N.W.2d 13, 16 (Minn. Ct. App. 1992). This is consistent with other state law, which makes clear that city councilmembers are *not* employees of the city they represent. *See* Minn. Stat. § 410.191. Dennis does not meaningfully contest either point.

The ADA does not use the same definition of "employee" as Title VII. Instead, it defines an employee simply as one who is "employed by an employer." 42 U.S.C. § 12111(4). Because that definition is "completely circular," the U.S. Supreme Court has adopted a common law test for determining when someone is an "employee" under the ADA. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 445 (2003). The Court set out factors for evaluating whether a person is an employee under the statute based on the "common-law touchstone of control," including whether the person was hired, is supervised by someone higher in the organization, and can be fired. *Id.* at 449–50. None of those factors apply to elected officials.

For example, Defendants did not hire Dennis; she was elected to office by the voters of Ward 6. (*See* Compl. ¶ 17; Pl.'s Resp. at 11–12.) Defendants do not supervise or direct Dennis in her role. (*See* Compl. ¶¶ 6–8.) Defendants also cannot fire her. Instead, elected officials can only be removed from office before the end of their term with a legal action initiated by the voters. *See* City Charter § 3.07.

The court in *Martin v. City of Mill Creek* concluded that an elected official is not an employee. No. C18-0781RSL, 2019 WL 1556186, at *3 (W.D. Wash. Apr. 10,

2019). There, after the plaintiff sought appointment to the city council and was rejected, he sued alleging discrimination and retaliation under the ADA. *Id.* at *1. Following *Clackamas,* the court concluded that city council members were "not subject to the control of the City or each other in the performance of their legislative functions," and thus were "not 'employed' by the City for purposes of the ADA." *Id.* at *3. That same conclusion is appropriate here. Indeed, consistent with state law, the City Charter expressly states that a "person who is elected to a city office cannot serve in that office and be simultaneously employed by the city." City Charter § 3.026; *see also* Minn. Stat. § 410.191 ("[N]either the mayor nor any city council member may be employed by the city").

The cases Dennis cites do not hold otherwise—and, in fact, support that Dennis is *not* an employee. First, Dennis directs the Court to *Parker v. Yuba County Water District,* No. 02:06-cv-0340-GEB-KJM, 2006 WL 2644899, at *1 (E.D. Cal. Sept. 14, 2006). (*See* Pl.'s Resp. at 9.) In *Parker,* the court evaluated whether the alleged employer, the Water District, had enough employees to be a covered entity under the ADA. 2006 WL 2644899, at *1. The case turned on whether the five elected/appointed members of the Water District's Board of Directors were properly considered employees. *Id.* at *1, *3. Citing *Clackamas,* the court evaluated whether the Board members reported to "a higher authority within the business." *Id.* at *2. Because they did not, the court concluded the elected Board members "were *not*

8

subject to the District's control," and therefore "*were not employees for the purposes of the ADA.*" *Id.* (emphasis added). That is, *Parker* supports the conclusion that Dennis is not an employee under the ADA.

Dennis also cites *Hove v. Pierce County*, No. 22-cv-487-slc, 2023 WL 2571773, at *5 (W.D. Wis. Mar. 20, 2023). (*See* Pl.'s Resp. at 9.) The court in *Hove* evaluated whether an elected sheriff was an employee under the ADA. 2023 WL 2571773, at *5. The court acknowledged that the ADA did not include Title VII's express exemption for elected officials in its definition of an "employee" but was "not persuaded . . . that the absence of a specific exemption for public officials automatically means that [the sheriff] *is* an employee." *Id.* (emphasis in original). Indeed, the court was "extraordinarily skeptical" that the sheriff was an employee for purposes of the ADA. *Id.* at *6. The court declined to dismiss the case on that basis only because the defendants had not offered "a fully-developed argument" on that point. *Id.* Here, Defendants have offered a fully-developed argument establishing why Dennis is not an employee under the applicable statutes.

In short, the plain language of Title VII, state law, and Rochester's City Charter conclude that elected officials are not employees of the body they represent. And although the MHRA and the ADA do not include the same express exemption, courts have repeatedly interpreted those laws as likewise excluding elected officials.

Dennis does not offer any law to the contrary. This Court must dismiss Dennis's employment-based claims as a matter of law.

### III.   Dennis has at all times been able to perform her elected role.

#### A.   The City provided Dennis with reasonable accommodations for her disability.

Dennis does not dispute that the City Council Code of Conduct provides for formal 10-minute breaks from meetings every 90–120 minutes, as the agenda permits. (*See generally* Pl.'s Resp.; *see* Defs.' Ex. 6 at 5 [ECF No. 22-6].) Dennis also does not dispute that she is permitted to take personal breaks from meetings at any point, and that the City has given Dennis additional tools, such as a podium platform and livestream of the Council meeting, to make it easier to take frequent breaks. (*See generally* Pl.'s Resp.) Instead, Dennis argues Defendants have failed to accommodate her disability because they do not require the *entire* Council to take a break every 60 minutes. (*See id.* at 6–7.) That argument is not supported by law.

The ADA requires the City only to make *reasonable* accommodations; it does not require a public entity to provide accommodations where those accommodations would impose an undue burden. *See Tennessee v. Lane*, 541 U.S. 509, 532 (2004). The materials fairly embraced by Dennis's Amended Complaint demonstrate ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████. (*See* Defs.'

Ex. 4 at 3, 11, 18.) Moreover, the ADA does not require the City to provide every accommodation "that an individual requests or prefers." *Chew v. Legislature of Idaho*, 512 F. Supp. 3d 1124, 1129–31 (D. Idaho 2021) (state legislature was not required to accommodate its members' request to "attend in their preferred manner," i.e., virtually); *see Baribeau*, 596 F.3d at 484 (public entity was not required to provide plaintiff with their preferred accommodation); *cf. Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000) (employer was not required to provide employee with their preferred accommodation).

In short, the City Council is not required to formally adjourn its meetings every hour simply because that is what Dennis would prefer. And, more to the point, the City permitted Dennis to take the breaks she needed and allowed her to continue to listen to ongoing business during those breaks. Dennis does not dispute any other aspect of the City's accommodations. This aspect of Dennis's discrimination claim fails as a matter of law.

## B. The March 6 Resolution did not change Dennis's role or responsibilities.

The March 6 Resolution put certain guardrails on how Dennis would communicate with City staff and other elected officials, but it did not change Dennis's role or responsibilities. Relevant here, the March 6 Resolution (1) required Dennis to meet virtually with City staff for the remainder of 2023; (2) limited Dennis to meetings and communications with high-level City staff for City-related business;

and (3) required Dennis to communicate with City staff in writing, with copies to the City Administrator. (*See* Defs.' Ex. 2.) Dennis contends those limitations were discriminatory and retaliatory because they prevented her from making direct inquiries to line-level City employees such as librarians, police officers, bus drivers, and public works staff. (*See* Pl.'s Resp. at 11.) As a result, Dennis argues she was "not able to perform basic tasks" as a Councilmember. (*Id.*) But Dennis's argument is not supported by the facts fairly embraced by the Amended Complaint and does not demonstrate an adverse action.

Dennis does not contest that the City Council's Rules of Procedure and Code of Conduct apply to her as a City Councilmember. (*See generally* Pl.'s Resp.) The Code of Conduct provides that the City Council is a "policy-making board," but does not "administer the day-to-day operations of the City," which is instead within the purview of City staff. (Defs.' Ex. 6 at 11 (Art. 2, Ch. 1.01).) That is, it is *not* Dennis's job to administer City functions. It is also not Dennis's role to direct City staff or assign them work assignments. (*Id.* at 15 (Art. 2, Ch. 3.01).) The only City staff who report to the City Council are the City Attorney and the City Administrator. (*Id.*) The City Council *as a whole* can provide staff *general direction* for work, but the City Administrator is charged with managing and assigning tasks. (*See id.*) Indeed, the City Council Code of Conduct specifically provides that City staff "are not obligated to pursue items for only one Council Member." (*Id.*) If a Councilmember has a

request that would require more than thirty minutes of staff time, they *must* seek approval from the entire Council. (*Id.*)

In short, the March 6 Resolution's requirement that Dennis meet with high-level City staff on issues pertaining only to City-related business did not prevent Dennis from doing the "basic tasks" of her role. Instead, it merely reiterated the *already-existing requirements* of the role. Dennis was still free to develop and advance policy, attend legislative functions, do public engagement, and otherwise perform her role as an elected Councilmember. (*See* Am. Compl. ¶¶ 6–8 (Dennis describes her "job functions" as hosting community listening sessions, attending legislative functions, participating in City Council meetings, representing the City in various public events, etc.).) The censure did not change her role and cannot, therefore, be an adverse action as a matter of law.

## IV.   Dennis cannot allege a new due process claim.

In her Amended Complaint, Dennis alleged that Defendants violated her due process rights by "demoting Dennis to employee status without due process." (*Id.* ¶ 40.) In her response brief, Dennis invented a new claim: that Defendants violated due process because the March 6 Resolution "was not notified to the public or City Council." (Pl.'s Resp. at 3, 15.) The Court should disregard all newly-asserted allegations not found in the Amended Complaint. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (declining to consider facts presented for the

first time in an opposition to a motion to dismiss because those factual allegations were not included in the amended complaint).[1]

## V.    Dennis is not entitled to a surreply.

In her response, Dennis asked the Court for "an additional reply to the Defendant's motion." (Pl.'s Resp. at 2.) Dennis has not filed a motion for leave to file additional briefing or even explained why additional briefing is necessary. A surreply is not contemplated by this Court's briefing order and is inappropriate under the Local Rules. *See Jackson v. Simon*, No. CV 22-3034 (PAM/TNL), 2023 WL 2837324, at *3 (D. Minn. Apr. 7, 2023). Additional briefing would also require the Court to reschedule the April 30, 2024 hearing date, causing further unnecessary delays. The Court should deny Dennis's request. *See* D. Minn. L. R. 7.1(i).

## CONCLUSION

Dennis fails to state a claim on any count, so the Amended Complaint should be dismissed in its entirety.

---

[1] Dennis's new due process claim is based on her belief that the March 6 Resolution was not listed in the March 6 City Council meeting agenda. (Pl.'s Resp. at 15.) The "Formal Censure of Ward 6 Councilmember Molly Dennis" is listed on the agenda as item H.3. (Pl.'s Ex. F [ECF No. 28 at 70].)

Dated:  April 19, 2024                          **GREENE ESPEL PLLP**


  s/ Erin R. Emory
Jenny Gassman-Pines, Reg. No. 0386511
Erin R. Emory, Reg. No. 0401215
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jgassman-pines@greeneespel.com
eemory@greeneespel.com
(612) 373-0830

Attorneys for Defendants City of Rochester,
Patrick Keane, and Kim Norton