# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Molly L. Dennis,                                    Case No. 24-cv-426 (PJS/DLM)

        Plaintiff,

v.                                                  **REPORT AND**
                                                    **RECOMMENDATION**

City of Rochester, Patrick Keane, and               **FILED UNDER SEAL**
Kim Norton,

        Defendants.

---

This matter is before the Court on Defendants City of Rochester, Patrick Keane, and Kim Norton's Motion to Dismiss pro se Plaintiff Molly L. Dennis's Amended Complaint (Docs. 17 (motion), 20 (memorandum), 22 (Emory declaration with exhibits)), to which Ms. Dennis has responded (Docs. 27 (memorandum), 28 (exhibit), 29 (Dennis declaration)), and Defendants have replied (Doc. 32). The Court held a hearing on Defendants' motion on April 30, 2024, entertaining oral argument by both parties on the motion. (Doc. 35 (hearing minutes).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 concerning Defendants' motion to dismiss. (Doc. 3.) For the reasons below, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

## BACKGROUND

During the incidents alleged in her operative First Amended Complaint (Doc. 13), Ms. Dennis was an elected city councilmember for the City of Rochester in Minnesota. (*Id.* ¶¶ 1, 4, 12.) In this lawsuit, she sues the City of Rochester, the Mayor of the City, Kim Norton, and a fellow city councilmember, Patrick Keane, alleging that they have engaged in unlawful discrimination against her based on her disability. (*Id.* at 1; *see also, e.g.*, *id.* ¶ 13.) Ms. Dennis alleges that she suffers from attention deficit hyperactivity disorder ("ADHD"), a disabling disorder which involves symptoms such as difficulty focusing, short attention span, struggling with linear processing and working memory, executive functioning deficits, fidgeting and wide hand gestures, lack of awareness of time, impulsivity, and hyperactivity. (*Id.* ¶¶ 12–13.) The main thrust of the operative complaint is that Defendants repeatedly and intentionally discriminated against Ms. Dennis in violation of state and federal law.

Ms. Dennis alleges that even though she is not technically an employee of the City as an elected official, her role meets the definition of an employee because of her employee-like pay, functions, credentials, access, requirements, taxes, benefits, performance reviews, and disciplinary procedures. (*Id.* ¶¶ 4–11.) She claims that she sought accommodations from the City for her disability under the Americans with Disabilities Act ("ADA") when she began in her councilmember role (*id.* ¶ 12), but rather than accommodating her reasonable requests for things like an hourly break during council meetings, Defendant engaged in various discriminatory acts against her based on her disability. Such acts, according to Ms. Dennis, included treating symptoms of her disability—such as asking

more questions than others because of neurodivergent processing—as performance issues resulting in progressive disciplinary steps including verbal warnings, written reprimands, probation, formal public censure on March 6, 2023, and a disciplinary investigation (*id.* ¶¶ 11–14); delivering a harsh public censure of her without due process (*id.* ¶ 14); restricting her access to directly communicating with over 900 City staff members, and instead requiring her to go through department heads (*id.*); and restricting her ability to criticize the City (*id.*).

Ms. Dennis alleges that when she spoke up about these discriminatory actions, Defendants retaliated against her. (*Id.* ¶¶ 15–18.) According to Ms. Dennis, these retaliatory actions included refusing to meet with her; excluding her from conversations relevant to performing her duties as an elected city councilmember; forcing her to conduct her job duties through cumbersome mechanisms known to further strain her ADHD; using those cumbersome mechanisms that did not apply to other councilmembers to effectively demote her to a subordinate unelected City staff member role; and increasing the level of restrictions on her interactions with City staff members down to the topics, lengths, and means by which Ms. Dennis could communicate. (*Id.*) Ms. Dennis further alleges that to cover their discriminatory and retaliatory conduct, Defendants have hired a law firm to "whitewash" their behavior by undertaking a sham investigation resulting in a subjective, misleading, and false report that paints Ms. Dennis as the perpetrator of misconduct. (*Id.* ¶¶ 11, 18.) She also claims that Defendants have sought to discredit her as part of their retaliation, including by defaming her through publishing untrue statements by Ms. Dennis's ex-spouse, and allegations she engaged in a scheme to "fix" parking tickets. (*Id.*

3

¶¶ 18, 20.) Ms. Dennis alleges that Defendants' retaliatory actions in response to her complaints of discrimination are part of a larger pattern, claiming that she has often opposed discrimination in the City—within and outside of government—but that Defendants only care about protecting the City's reputation so that its healthcare sector will continue to grow. (*Id.* ¶ 19.) Because of this alleged discriminatory and retaliatory conduct, Ms. Dennis claims she has endured "mental anguish," and "other extensive damages," and that Defendants "have adversely impacted [her] ability to perform her current job now and into the future." (*Id.* ¶ 21.)

Defendants have moved to dismiss Ms. Dennis's complaint in its entirety, offering a counternarrative to Ms. Dennis's allegations. They claim that the City sought to accommodate Ms. Dennis's multiple disability-related requests for breaks, printed-out materials, writing materials, water, and restroom access, and also provided additional resources beyond her accommodation requests. Defendants further contend that Ms. Dennis's discipline and censure were unrelated to her disability, but instead were responses to Ms. Dennis's repeated inappropriate conduct such as physically and verbally intimidating and threatening City officials and staff, as well as making inflammatory and public accusations against colleagues. Defendants argue that interventions to change Ms. Dennis's inappropriate behavior were unsuccessful, and that after Ms. Dennis had an aggressive outburst during a City Council meeting, the Council decided to formally censure her for exhibiting intimidating physical behaviors, making inflammatory and unfounded allegations, and excessively using City time and resources. Defendants agree that the March 6, 2023 censure limited Ms. Dennis's conduct, but argue that its purpose was not

4

discriminatory or retaliatory. Rather, Defendants contend the censure was intended to prevent further inappropriate behaviors by Ms. Dennis. As for the censure itself, the City contends that Ms. Dennis was treated fairly and was allowed to participate in debating and voting on the resolution as a councilmember. Defendants claim that when Ms. Dennis complained that the censure was discriminatory, the City retained an independent investigator to look into her complaints. The investigator concluded the City acted appropriately in censuring Ms. Dennis for her conduct as permitted by the City Council's governing rules.

In addition to this competing factual account, Defendants contend that Ms. Dennis's pleadings fail to state a viable claim for relief under the laws she cites for several reasons, and that her claims should be dismissed. Specifically, Defendants argue that the ADA, Title VII, 42 U.S.C. § 1981, and the MHRA claims found in Counts I, II, III, V, and VI apply only to Defendants' employee, not elected officials. Defendants thus claim that Ms. Dennis, as an elected councilmember, is not entitled to these state and federal protections. This is true of her claim under Minnesota Statute § 363A.15 as well concerning reprisal according to Defendants, as they argue that Ms. Dennis cannot have suffered employment reprisal where she is not an employee of the City.

As to claims that do not depend on Ms. Dennis's employment status, Defendants argue she still fails to allege a viable claim. Concerning access to public services and activities under the ADA and MHRA in Counts I and III, Defendants argue that Ms. Dennis has not pled facts that, if assumed true, demonstrate Defendants failed to reasonably accommodate her disability, or imposed the March 6, 2023 censure to discriminate against

her on the basis of her disability. They also argue that Ms. Dennis seeks relief under a statute that no longer exists, Minnesota Statute § 363.09, which thus cannot support her claim that Defendants refused to reasonably accommodate her disability.[1] As to Ms. Dennis's claim that she suffered reprisals from Defendants in their capacity as a public service under the MHRA, Defendants claim that she has not alleged that she engaged in protected conduct for which she suffered a materially adverse action. As to 42 U.S.C. § 1981 and the Civil Rights Act of 1991, Defendants contend that Ms. Dennis failed to allege race-based discrimination. She likewise failed to allege discriminatory compensation in order to sustain a claim under the Lily Ledbetter Fair Pay Act of 2009, which, Defendants argue, dooms that claim. As to Ms. Dennis's defamation claim, Defendants argue that she fails to plead facts with sufficient particularity under Minnesota law. Additionally, as to this claim and certain comments Ms. Norton made to an investigator, Defendants argue that even if those comments were defamatory, they are protected by qualified privilege because they were made during an investigation of a discrimination complaint that required candor. Defendants also claim Ms. Dennis has not alleged Ms. Norton's comments were made with actual malice, which provides another reason that her defamation claims fail. Defendants also assert that Ms. Dennis has not alleged a viable procedural due process claim under Minnesota Statute §§ 205.07 or 412.191, or under Articles 1 and 8 of the Minnesota Constitution, because she has not

---

[1] During the motion hearing, Defendants confirmed that if the relief Ms. Dennis seeks under this repealed statute has been incorporated into the current MHRA structure, they would not oppose construing Ms. Dennis's claim to seek such relief under that active statute.

alleged a liberty or property interest that Defendants deprived her of, nor does she allege what additional process she was due in her allegations. Finally, Defendants contend that Ms. Dennis has not alleged a First Amendment retaliation claim concerning her censure because not only is the censure absolutely immune from suit as a legislative act, but also, a council's censure is neither a materially adverse action for First Amendment purposes, nor was it causally linked to any protected conduct.

Apart from these arguments related to inadequately pled claims under particular federal and state laws, Defendants also argue that for several reasons Ms. Dennis's claims against individual Defendants Keane and Norton cannot survive a Rule 12 motion. Specifically, Defendants challenge Ms. Dennis's failure to allege that the individual Defendants took specific actions that violated Ms. Dennis's rights; that she can sue individuals under federal and state employment and public accommodation statutes that do not contemplate individual liability, only employer or public entity liability; and that she can sue the individual Defendants for performing their legislative functions—including preparing for, adopting, and accepting the adoption of Ms. Dennis's formal censure as city officials—when they are legally immune from suit for such actions.

In Ms. Dennis' memorandum opposing Defendants' motion, she claims that Defendants' counternarrative contains many errors, such as that the City reasonably accommodated her disability. She reiterates that the censure and the restrictions it imposed actually did the opposite of accommodating her disability, instead creating new hurdles that she had to overcome to function in her role despite her disability. Ms. Dennis also emphasizes that additional evidence can resolve some fact disputes raised by Defendants

because the private investigator's report contained subjective, misleading, and sometimes provably false information contradicted by video evidence of City Council meetings.

Ms. Dennis further contends that the ADA does not expressly exclude elected officials from its employee protections, and that Defendants' censure of her operated as an adverse action under the First Amendment and the ADA because it prevented her, as an elected official, from performing functions essential to her role. She also claims that more facts are needed to determine whether she is an employee as an elected official for purposes of the ADA and thus urges the Court not to recommend dismissal of her claims at this early stage based on this question.

Defendants filed a reply arguing that Ms. Dennis's lawsuit is not borne of her desire to right discriminatory wrongs, but rather, comes from her anger about being censured for her inappropriate conduct. Despite Ms. Dennis's claims about the symptoms of her ADHD, Defendants reiterate that the censure targeted intimidating behavior, disrespect for personal boundaries, and other conduct that are not symptoms of an ADHD disability.

As to the viability of Ms. Dennis's legal claims, Defendants argue that she failed to dispute a number of Defendants' arguments in her response, including: that individual Defendants Keane and Norton are immune from suit for legislative acts and discretionary functions that did not violate Ms. Dennis's clearly established rights; that she has not plausibly alleged retaliation where she suffered no adverse action for protected conduct; that she has not plausibly alleged race or pay discrimination under 42 U.S.C. § 1981, the Civil Rights Act of 1991, the Lilly Ledbetter Fair Pay Act, or Minnesota Statute § 363.09; that she is not an employee for purposes of Title VII, the ADA, or the MHRA; that the City

provided reasonable accommodations for her disability; and that the censure did not alter her role and responsibilities as a councilmember, but merely provided formal notice that she should abide by the same councilmember policies applicable to all councilmembers. Defendants also contend that Ms. Dennis's response sought to add a new claim for a violation of her due process rights because the public and city councilmembers received no advance notice of the censure vote, which should be disregarded.

## ANALYSIS

Defendants bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Motions brought under Rule 12(b)(6) raise a challenge that even if a court takes everything a plaintiff asserts as true, they have still "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a court considers a Rule 12(b)(6) motion, it construes the allegations in the light most favorable to the non-moving party— the plaintiff—and affords them all reasonable inferences from those allegations. *See, e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

To withstand a Rule 12(b)(6) motion, a plaintiff's complaint must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles described by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but [requires] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678

(cleaned up). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Finally, Ms. Dennis is proceeding pro se, and pro se pleadings are to be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction means that the court construes a pro se plaintiff's filings "in a way that permits the [plaintiff's] claim[s] to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (applying liberal construction to a pro se complaint). In other words, pro se litigants are not held to the same stringent standards as formal pleadings drafted by attorneys. *See Erickson*, 551 U.S. at 94. However, courts will not supply additional facts or create legal theories on behalf of a pro se plaintiff. *See Stone*, 364 F.3d at 914.

Having established the standard that the Court will use to review Ms. Dennis's pleadings in light of Defendants' motion to dismiss those pleadings, the Court will first consider two threshold matters: what is embraced by the pleadings for purposes of reviewing this motion, and what allegations are barred by legislative immunity.

10

# I.    THE COURT CONSIDERS ONLY MATERIALS THAT THE PLEADINGS EMBRACE.

The parties have submitted many exhibits in connection with Defendants' motion. (*See, e.g.*, Docs. 22–23 (Emory declaration with exhibits 1–6); 28–29 (Plaintiff's declaration with exhibits A–J).) Ordinarily, if matters outside of the pleadings are considered by the Court on a motion to dismiss under Rule 12(b)(6), the motion is converted into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100, 1108 (D. Minn. 2017). That said, the Court may consider "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999) (internal citations and quotations omitted). Documents are necessarily embraced by the pleadings when the pleadings allege the contents of those documents and no party questions their authenticity. *See Cup Foods Inc. v. Travelers Cas. Ins. Co. of Am.*, 652 F. Supp. 3d 1012, 1016 (D. Minn. 2023) (citing *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)).

After careful review, the Court finds that the following exhibits are either part of the public record or are necessarily embraced by the operative complaint and will be considered: Defendants' exhibits 1, 2, 4, 5 and 6, and Plaintiff's exhibits F and G. The remaining exhibits are excluded from the Court's review of this motion, including Defendants' exhibit 3, and Plaintiff's exhibits A, B, C, D, E, H, I, and J, because these materials are not publicly available, nor are the contents of these materials alleged in—and therefore embraced by—the pleadings.

## II.   DEFENDANTS KEANE AND NORTON HAVE ABSOLUTE IMMUNITY FROM LIABILITY FOR LEGISLATIVE ACTIONS.

Defendants argue that individual Defendants Keane and Norton are immune from Ms. Dennis's claims because their alleged actions occurred within the scope of their legislative duties as elected officials—a city councilmember and a mayor, respectively. Therefore, the Court first addresses whether immunity bars some or all of Ms. Dennis's allegations about these individual Defendants' actions.

The Supreme Court has held that state and regional officials, including city officials, are absolutely immune from § 1983 suits for their legislative actions, including all actions in the sphere of legitimate legislative activities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). In *Bogan*, a former director of a city department sued a city and its officials—including the mayor and vice president of the city council, among others—under 42 U.S.C. § 1983, claiming that their passage of an ordinance that eliminated her position was a retaliatory action that violated her First Amendment rights because she had filed a complaint against another city employee shortly before the ordinance's passage. *Id.* at 46–47. The Supreme Court unanimously held that not only were the city officials absolutely immune from suit for their vote on the ordinance, they were also immune for acts leading up to and following that vote, including the mayor's preparation of a budget calling for the elimination of the plaintiff's position beforehand, as well as his ratification of that ordinance as law after the vote. *Id.* at 46, 55–56. The Court also held that, because of that absolute immunity for legislative acts, the lower court could not consider the plaintiff's claims about the defendant's underlying motives for the ordinance. *Id.* at 55–56.

Reviewing Ms. Dennis's allegations through the lens of *Bogan*, the Court finds that some acts alleged are clearly legislative in nature, are immune from suit, and are thus unreviewable by this Court. As to Mr. Keane, the Court finds that Mr. Keane's motives or intent for preparing for a vote on the March 6 censure and voting on that censure (Doc. 13 ¶ 14 (alleging Mr. Keane's participation in Ms. Dennis's censure and his motives for the censure), ¶¶ 41–53 (Count IX alleging Mr. Keane's participation in Ms. Dennis's censure, retaliatory motives for the censure, and violation of Ms. Dennis's constitutional rights by their censure, including her First Amendment rights)), are not reviewable by this Court because Mr. Keane, as a city councilmember, has absolute legislative immunity for such legislative actions. Likewise, as to Ms. Norton, her actions[2] and motives as Rochester's mayor in ratifying Ms. Dennis's censure are also immune from suit and unreviewable (*id.* ¶ 14 (alleging Ms. Norton censured Plaintiff because of Ms. Dennis's disabilities), ¶¶ 41–53 (Count IX alleging Ms. Norton's participation in Ms. Dennis's censure, retaliatory motives for the censure, and violation of Ms. Dennis's constitutional rights by their censure, including her First Amendment rights)). The Court therefore recommends that Count IX of Ms. Dennis's claim be dismissed for failure to state a claim against Defendants Keane and Norton, and that the portions of Ms. Dennis's Counts I, III, IV, and VIII that

---

[2] While Ms. Dennis's operative pleading alleges Ms. Norton participated in Ms. Dennis's censure, the city council meeting minutes for March 6, 2023, do not show Ms. Norton cast any vote on the resolution. (*See* Doc. 22, Emory decl., Ex. 1 at 11–12, agenda item H.3.) However, Ms. Norton as mayor signed the ultimate ratification of the resolution after the city council adopted it. (*See id.*, Ex. 2 at 3.)

relate to Defendants Keane and Norton's censure of Ms. Dennis likewise be dismissed for that same reason.

### III.  MS. DENNIS CANNOT PREVAIL ON CLAIMS DEPENDENT UPON AN EMPLOYMENT RELATIONSHIP.

It is undisputed that Ms. Dennis was an elected official of the City of Rochester during the events alleged in her pleadings. Ms. Dennis's claims in Counts I, II, III, V, and VI all depend, in whole or in part, on whether she has plausibly alleged that Defendants employed her during the alleged events. The Court will take each of these claims in turn.

***Ms. Dennis was not Defendants' employee under the ADA.***

To plausibly allege an ADA claim, Ms. Dennis "must show that [s]he (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003)). At issue is whether Ms. Dennis was Defendants' employee such that she could suffer an adverse employment action for purposes of the Act.

Ms. Dennis pleads that she "was an employee within the meaning of state and federal statutes," and that Defendants as her employers unlawfully discriminated against her in violation of "the provisions of the Americans with Disabilities Act ('ADA'), 42 U.S.C. Sec. 12101, *et seq.*, by intentionally discriminating against Dennis on account of her disability." (Doc. 13 ¶¶ 1, 23.) Defendants argue that as an elected official, Plaintiff was not Defendants' employee for purposes of the ADA, and therefore, even if the

allegations are taken as true, Ms. Dennis fails to state an ADA employment discrimination claim for which this Court can grant relief.

The ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employment compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). An employee under the ADA is defined as "an individual employed by an employer." 42 U.S.C. § 12111(2).

The plain statutory language of the ADA is silent about whether it applies to elected officials. Neither the Supreme Court nor the Eighth Circuit have opined on whether an elected city official is an employee of their city under the ADA. The legislative history of the Act records the deletion of language excepting elected officials from the definition of an employee found in other federal statutes. *See, e.g.*, H.R. Rep. No. 101-485(II), at 54 (1990) (reprinted in 1990 U.S.C.C.A.N. 303, 1990 WL 125563, at 336) ("The exception set out in title VII of the Civil Rights Act of 1964 for elected officials and their employees and appointees has been deleted."); H.R. Rep. No. 101-485(III), at 32 (1990) (reprinted in 1990 U.S.C.C.A.N. 445, 1990 WL 121680, at 455) (The exception set out in title VII for elected officials and their employees and appointees is not incorporated in the ADA.") When Congress fails to provide a definition of "employee" that provides guidance in enacting a statute, the Supreme Court has defined it in "the conventional master-servant relationship as understood by common-law agency doctrine." *Clackamas*

*Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–45 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)). Under this doctrine, courts typically examine a number of factors to determine whether an employment relationship exists, foremost of which is "the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323.

In analyzing cases with similar facts to Ms. Dennis's case, several district courts have found that city councilmembers are not subject to their city's control because they act independently in their legislative functions, and thus cannot be considered employees under the ADA. *See, e.g.*, *Martin v. City of Mill Creek*, No. 18-cv-781 (RSL), 2019 WL 1556186, at *3 (W.D. Wash. Apr. 10, 2019); *Spencer v. Morningside Police Dep't*, No. 8:01-cv-3746 (PJM), 2002 WL 32356380, at *2 (D. Md. July 24, 2002); *Dintelmann v. Vill. of Freeburg, Ill.*, No. 14-cv-855 (SMY/DGW), 2015 WL 5176418, at *2 (S.D. Ill. Sept. 3, 2015). Additionally, Rochester's City Charter states that "[a]ny person who is elected to a city office cannot serve in that office and be simultaneously employed by the city." City of Rochester Minnesota, Minn. Code § 3.026, https://perma.cc/6YT3-GXXH (last visited Oct. 17, 2024).

The Court agrees with other courts that an elected city councilmember is not a city employee in the conventional common-law agency doctrine sense. Under the most significant *Darden* factors, Ms. Dennis, as a city councilmember, was neither hired by the City, nor did the City have the right to control the manner and means by which she serves as a councilmember. In other words, Ms. Dennis was not a servant of the City, but of the

people who elected her, as confirmed by the City's code concerning the status of elected officials as categorically separate from City employees.

Ms. Dennis was simply not an employee of the City of Rochester at the time of the alleged events because she served as an elected official. She asks the Court to permit additional fact discovery on her employment status, but does not explain what additional facts could change the Court's conclusions here, nor can the Court conceive of any set of discovered facts that would alter this analysis.

Separate from Ms. Dennis's elected-official status, the Court's analysis as it relates to Defendants Keane and Norton is simple: the ADA does not support employment claims against individuals. *Nahal v. Allina Health Sys.*, No. 18-cv-631 (DWF/KMM), 2018 WL 6729660, at *5 (D. Minn. Oct. 4, 2018), *R. & R. adopted*, 2018 WL 6727066 (D. Minn. Dec. 21, 2018). As such, Ms. Dennis's individual-liability claims in Count I ought to be dismissed.

Because Ms. Dennis's pleadings fail to plausibly allege a violation of the ADA for employment discrimination against any defendant, the Court recommends that Count I of Plaintiff's operative complaint be dismissed as to her employment discrimination claim.

***Ms. Dennis was not Defendants' employee under the MHRA.***

Ms. Dennis brings two claims under the MHRA that require an employment relationship: one for disability discrimination, and one for failure to accommodate her disabilities.[3] *Compare* Minn. Stat. § 363A.08, subd. 2 (making it an unfair employment

---

[3] The Court distinguishes this failure-to-accommodate claim related to an employment relationship to Ms. Dennis's denial of meaningful access to a public service or program

practice to discriminate based on protected characteristics, such as disability) *with id.* §
363A.08, subd. 6[4] (making it an unfair employment practice not to provide a reasonable
accommodation to an employee or applicant with a disability). Ms. Dennis pleads that she
"was an employee within the meaning of state and federal statutes," and that Defendants
as her employers unlawfully discriminated against her in violation of "the provisions of
Minn. Stat. Sec. 363A.08 by intentionally discriminating against Dennis on account of her
disability." (Doc. 13 ¶¶ 1, 25.) Defendants counter that as an elected official, Plaintiff was
not Defendants' employee for purposes of the MHRA, and thus, that even if the allegations
are taken as true, Ms. Dennis fails to state an MHRA disability discrimination claim for
which this Court can grant relief.

To plead a sufficient claim for disability discrimination under the MHRA, Ms.
Dennis must plausibly allege facts showing that "(1) she has a 'disability' as the MHRA
defines that term; (2) she was 'qualified to perform the essential functions of h[er] job, with
or without reasonable accommodation,' and (3) she 'suffered an adverse employment

---

under Counts I and III pursuant to the ADA and MHRA, which the Court will discuss later
in this R&R.

[4] Ms. Dennis's operative complaint misidentifies the relevant statute for her failure-to-
accommodate claim as Minnesota Statute § 363.09, subdivision 6, a subdivision of a statute
repealed in 1967 that was related to sanctions for contempt of court. *See* Carl A. Auerbach,
*The 1967 Amendments to the Minnesota State Act against Discrimination and the Uniform
Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and
Evaluation*, 52 Minnesota Law Review 358–59 (1967), https://perma.cc/Z7HB-HD7J (last
visited Oct. 8, 2024). Such a statute, even if current, does not appear related to Ms. Dennis's
allegations. Based on the context of her allegations, the Court understands Ms. Dennis'
claim to be brought under Minnesota Statute § 363A.09, subdivision 6, which relates to
reasonable accommodations. Ms. Dennis's failure to include the letter "A" in the statutory
citation appears to this Court to be a minor typographical error.

action because of h[er] disability.'" *Mell v. Minnesota State Agric. Soc'y*, 557 F. Supp. 3d 902, 919 (D. Minn. 2021) (quoting *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019)). To plead a sufficient claim for failure to accommodate under the MHRA, Ms. Dennis must plausibly allege that (1) she had a disability under the MHRA; (2) she was qualified to perform her role's essential functions, with or without reasonable accommodation; and (3) her employer knew of her disability and failed to make reasonable accommodation for it. *See, e.g.*, *Lee v. Seasons Hospice*, 696 F. Supp. 3d 572, 584 (D. Minn. 2023); *Jung v. City of Minneapolis*, 187 F. Supp. 3d 1034, 1045 (D. Minn. 2016). At issue is whether Ms. Dennis was Defendants' employee under the MHRA such that she could suffer an adverse employment action, and such that her employer could have known about—yet failed to reasonably accommodate—her disability.

The portions of the MHRA at issue in Counts II and V only apply to employment or unfair employment practices relating to employees (or prospective or former employees). *See generally* Minn. Stat. § 363A.08; *see also id.* § 363A.02, subd. 1(1) (explaining the MHRA's scope borne of Minnesota's public policy to secure freedom from discrimination in employment, housing, public accommodations, public services, and education); *see also Hanson v. Friends of Minnesota Sinfonia*, No. A03-1061, 2004 WL 1244229, at *3 (Minn. Ct. App. June 8, 2004) ("claims of employment discrimination under [subdivisions 1, 6, and 7 of] the MHRA can only be brought by an employee") (citing *Farrington v. City of Richfield*, 488 N.W.2d 13, 15 (Minn. App. 1992)). Among other things, the MHRA makes it unlawful for an employer to discriminate against a person with respect to hiring, tenure, compensation, terms, conditions, or privileges of employment

because of a disability. *See* Minn. Stat. § 363A.08, subd. 2. It also makes it an unfair employment practice for employers of a certain size to fail to provide a reasonable accommodation for an applicant or employee with a disability unless the employer can show such an accommodation would impose an undue hardship on the employer. *See id.* § 363A.08, subd. 6. Courts typically construe the MHRA in accordance with Title VII, though the MHRA historically has "provided more expansive protections to Minnesotans." *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 229 & n.2 (Minn. 2020) (describing differences).

The MHRA defines an "employee" as "an individual who is employed by an employer and who resides or works in this state." Minn. Stat. § 363A.03, subd. 15. While the plain language of the MHRA does not address whether elected officials are included in the definition of an employee, Minnesota's Court of Appeals has given a clear answer on this question, expressly affirming the state trial court's conclusion that city councilmembers are not employees for purposes of the MHRA:

> Election to a City Council is a political position, separate and distinct from any employer/employee relationship. The Council's task is to represent their constituent's interests. In no way are they employed by any entity or person within the governmental structure of the City . . . . Thus, a City council appointee is not an "employee" for the purpose of applying the [MHRA].

*Farrington*, 488 N.W.2d at 16.

*Farrington* bars both of Ms. Dennis's MHRA claims dependent on an employment relationship. As an elected official, she cannot—by definition—suffer employment discrimination by Defendants who are part of "the governmental structure of the City" wholly apart from the constituency Ms. Dennis served at the time of the alleged events. *Id.*

20

While Ms. Dennis argues again that discovery may alter the Court's conclusion, it is not clear how additional fact discovery on this question could change matters. Additionally, while the MHRA does contemplate individual liability in some sections, it does not contemplate individual liability related to employment discrimination under § 363A.08. *See Mehl v. PortaCo, Inc.*, 859 F. Supp. 2d 1026, 1034 (D. Minn. 2012). As such, Ms. Dennis cannot pursue claims against Defendants Keane and Norton. Because Ms. Dennis's pleadings fail to plausibly allege a violation of the MHRA for disability discrimination and a failure to reasonably accommodate her disability, and the Court recommends that Counts II and V of Plaintiff's operative complaint be dismissed.

### Ms. Dennis pleads no facts to support a Title VII claim.

Ms. Dennis also brings a claim for discrimination under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Doc. 13 ¶ 33.) To sufficiently plead a claim for discrimination under Title VII, Ms. Dennis must plausibly allege "(1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

Ms. Dennis cannot prevail on a Title VII claim for at least two reasons. First, her complaint alleges she was subjected to disability discrimination. This is not within the class of traits protected by Title VII. *See* 42 U.S.C. § 2000e-2 (Title VII's coverage extends to an "individual's race, color, religion, sex, or national origin"). Second, Title VII expressly states that "the term 'employee' [does] not include any person elected to public office in

21

any State or political subdivision of any State by the qualified voters thereof." *Id.* At least one other court in this District has considered whether a city councilor is an employee for purposes of Title VII and concluded that they are not. *Doward v. City of Kettle River*, No. 23-cv-1798 (ECT/LIB), 2024 WL 779730, at *1–2 (D. Minn. Jan. 31, 2024), *aff'd*, No. 24-1391, 2024 WL 3927657 (8th Cir. Apr. 5, 2024). This Court agrees and concludes that because Ms. Dennis was an elected official of Rochester—a political subdivision of the State of Minnesota—she was not an employee of the City for purposes of Title VII, and no additional fact discovery could change this legal conclusion. The Court thus recommends that Count VI be dismissed in part as it relates to a Title VII claim.

## IV.   PLAINTIFF HAS ADEQUATELY ALLEGED A CLAIM FOR DENIAL OF ACCESS TO PUBLIC SERVICES BECAUSE OF HER DISABILITY AGAINST THE CITY OF ROCHESTER.

Ms. Dennis next pleads that Defendants discriminated against her on the basis of her disability as it relates to her access to public services and activities in violation of the ADA and MHRA. The Court understands this claim to be separate from her failure-to-accommodate claim as it relates to her alleged employment, because here Ms. Dennis alleges that Defendants as public entities prevented her meaningful access to public services and activities because of her disability. Specifically, Ms. Dennis claims that Defendants' actions prevented her from carrying out the duties of her elected office, and that this "prevents her from fully accessing public services." (Doc. 13 ¶ 27.) Some of the "basic functions of her job" that Ms. Dennis alleges Defendants interfered with include "verbal in-person communication," "meeting with essential City staff," and "access[ing] . . . once easily accessible information/resources." (*Id.* ¶ 12; *see also id.* ¶¶ 14–15.) She also

claims that the City failed to provide her with an "hourly break" during meetings. (*Id.* ¶ 12.) Ms. Dennis describes Defendants' discrimination as tied to the "gag-order censure" that limited her ability to speak with "nearly a thousand City employees" and limited her ability to "[o]btain[] accurate and timely information." (*Id.* ¶ 14.) Ms. Dennis also claims that Ms. Norton, along with two individuals not named in this lawsuit as defendants, "refused to continue to meet with [her]," "ostracized [her] from important conversations and dismissed her City questions without answering," and forced her to follow steps to receive answers to her questions "no other Council members were required to jump through." (*Id.* ¶ 15.)

Defendants argue that Ms. Dennis has failed to allege any facts showing that either Defendants Keane or Norton failed to accommodate her access to public services or activities, and that she has not shown that the City failed to reasonably accommodate her disability. Defendants further argue that Ms. Dennis fails to allege discrimination relating to her access to public services and activities because while she may not have received the accommodations or access she prefers, the City responded to her accommodation requests by providing reasonable accommodations. Defendants also claim that the imposed limitations in response to Ms. Dennis's inappropriate conduct did not result in harm and did not disturb her meaningful access to public services and activities. Additionally, Defendants contend there is no causal link between the alleged limitations to Ms. Dennis's access and her disability because the censure is a permissible sanction for Ms. Dennis's misconduct.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity." 42 U.S.C. § 12132. Similarly, the

MHRA forbids discrimination "in the access to, admission to, full utilization of or benefit

from any public service because of . . . disability." Minn. Stat. § 363A.12, subd. 1. The

ADA and the MHRA are generally construed to require the same pleading elements. *See*

*Somers v. City of Minneapolis*, 245 F.3d 782, 788 (8th Cir. 2001); *Thao v. City of St. Paul*,

481 F.3d 565, 567 n.3 (8th Cir. 2007). The failure-to-accommodate claim elements under

the ADA and MHRA require Ms. Dennis to plausibly allege facts showing that: (1) she is

a qualified individual with a disability; (2) a public entity excluded her from participating

in or receiving the benefits of a public service, program, or activity; and (3) such exclusion

was because of her disability. *See Bahl v. Cnty. of Ramsey*, 597 F. Supp. 2d 981, 985 (D.

Minn. 2009). "An individual with a disability is 'qualified' if [they] 'meet[] the essential

eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)). "[T]he phrase

'services, programs, or activities' encompasses virtually everything that a public entity

does." *Id.* (quoting *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)). Finally,

only public entities providing public services can be held liable under the MHRA. *See*

Minn. Stat. § 363A.12.

Defendants Keane and Norton are individuals, and therefore cannot be held liable

as a public entity denying equitable access to services. However, there is no dispute that

the City of Rochester qualifies as a public entity. *See* 42 U.S.C. §§ 12131(1) (defining

public entity). There is also no dispute that Ms. Dennis's ADHD is a disability, as

Defendants' motion to dismiss distinguishes between the alleged improper behaviors she

was censured for and her "unrelated . . . disability." (Doc. 20 at 1.) Construing Ms. Dennis's pro se pleadings liberally, *see Erickson*, 551 U.S. at 94, the Court understands Ms. Dennis to allege in Counts I and III that she had the same right as any other non-disabled elected city councilor in the City of Rochester to have access to speak to and meet with City administrators, officials, and staff, and to have adequate breaks during city council meetings such that she is able to meaningfully participate in these City services and activities. The Court understands Ms. Dennis to be alleging that the City deprived her of meaningful access by failing to accommodate her disability and by discriminatorily punishing her for her disability. As a result, the Court construes Ms. Dennis's operative pleading to allege that she was excluded from receiving the benefits of, and participating in, the City's services and activities available to non-disabled members in her elected councilor peer group.

But that does not end matters. First, to the extent that Plaintiff alleges the individual Defendants excluded her from receiving the benefits of a public service—communicating with city administrators and staff—based on their vote to censure her, those legislative actions are absolutely immune from suit as the Court has noted above.

Second, the fact that Ms. Dennis is not any member of the City of Rochester's public—but an elected councilmember—creates questions about how public accommodation laws apply to someone who would generally be considered on the public entity side of a dividing line between the public entity and the public it serves. Neither party has pointed to caselaw with similar facts to demonstrate whether an elected official

may avail themselves of these public access law protections from the public entity to which they belong.

On the one hand, the types of claims brought in public access cases appear unlike Ms. Dennis's. *See, e.g.*, *Bahl*, 597 F. Supp. 2d at 985 (city police officers allegedly failed to provide deaf arrestees with an American Sign Language interpreter or auxiliary aides to communicate); *Segal v. Metro. Council*, 29 F.4th 399, 402 (8th Cir. 2022) (public transit drivers allegedly failed to stop at designated stops and announce the bus route for deaf and blind bus rider); *Loye v. Cnty. of Dakota*, 625 F.3d 494, 496 (8th Cir. 2010) (county allegedly failed to provide interpreters to deaf community members during a county's mercury decontamination efforts on the night of the emergency and at subsequent public and individual family meetings); *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1130 (D. Minn. 2008) (school district allegedly failed to train its personnel to provide injections to a diabetic student). Under the facts in the caselaw above, the member of the public bore no relationship to the public entity.

On the other hand, the Court has concluded that Ms. Dennis has no legal recourse under federal and state laws intended to protect employees from disability discrimination because she is a public official, and this raises the question of how an elected official *is* legally protected—if at all—from disability discrimination. Neither the ADA nor the MHRA expressly exclude elected officials from bringing a public access claim related to their disability. The Court is concerned that such an early stage in the proceedings is an inappropriate place to draw any legal distinction between who is a member of the public

(protected by the ADA and MHRA in their right to meaningful access to city services and activities regardless of their disability), and who is not.

Moreover, Ms. Dennis plausibly alleges that her access to City services and activities was different than other non-disabled peer city councilmembers, and that the reason was because of her disability. She claims that the City knew of her disability but failed to accommodate it such that she was excluded from meaningful access to the same benefits of, and participation in, the City's services and activities available to non-disabled members in her elected councilor peer group. The Court finds at this early stage in the litigation that this is enough to satisfy Rule 8(a)'s liberal pleading standard as to her allegations concerning the City.

The Court is persuaded of this conclusion despite Defendants' attempts to demonstrate that the City reasonably accommodated Ms. Dennis such that she had meaningful access to City services and activities. The problem is that these proffered arguments, buttressed by exhibits, create fact questions about what a "reasonable" accommodation is such that "meaningful" access to the same benefits and participation has been preserved. Such questions belong to much later procedural moments than a motion to dismiss. *See Segal*, 29 F.4th at 404 ("In the public accommodation context, at the summary judgment stage, courts examine whether meaningful access was provided to a disabled individual by comparing the service provided to non-disabled individuals."); *id.* at 405 ("We conclude that the question of whether Segal was provided meaningful access within the context of state or federal law is a fact-intensive issue, and one that is to be determined by a jury."); *see also Loye*, 625 F.3d at 496. Indeed, Defendants' case that they claim is on

point here, *Chew v. Legislature of Idaho*, 512 F. Supp. 3d 1124, 1129 (D. Idaho 2021), opines not on a motion to dismiss, but on a motion for a temporary restraining order—a distinct mechanism for relief with a different standard of review. Whether Ms. Dennis is likely to prevail on the merits of her claim is not, unlike in *Chew*, the question here; the question is whether she has plausibly alleged her public access claim. Because the Court finds that Ms. Dennis has met the liberal pleading standard, the Court recommends that Defendants' motion be denied as to Ms. Dennis's public access claims in Counts I and III against the City of Rochester only, and granted as to Defendants Norton and Keane.

## V.   PLAINTIFF FAILS TO ALLEGE FACTS SHOWING PAY OR RACE DISCRIMINATION.

In Count VI of Ms. Dennis's operative complaint, in addition to alleging that Defendants violated Title VII, she also alleges that Defendants violated the Lilly Ledbetter Fair Pay Act, 42 U.S.C. § 1981, and the Civil Rights Act of 1991. The Court will consider each in turn.

### Ms. Dennis does not allege facts about a pay discrepancy.

Ms. Dennis alleges that "Defendants, and each of them, have . . . violated the provisions of . . . the Lil[l]y Ledbetter Fair Pay Act of 2009." (Doc. 13 ¶ 33.) As to pay, Ms. Dennis alleges in her operative complaint only that Rochester pays its city councilmembers a similar annual salary to non-elected city employees (*id.* ¶ 4), and that "her paychecks have an employee number" (*id.* ¶ 10.) Defendants argue that Ms. Dennis does not allege that she suffered discriminatory compensation and that her claim under the Ledbetter Act thus fails.

Congress passed the Ledbetter Act in 2009 to address discriminatory compensation and when a claim can be timely alleged. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5 (2009) (codified at 42 U.S.C. § 2000e-5(e)(3)(A)). To state a claim under the Act, Ms. Dennis must plausibly allege that she was compensated for her work at a different rate than similarly situated colleagues, and that the difference was because of her membership in a protected class (i.e., gender, national origin, and so forth). *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 962–63 (D. Minn. 2009).

Ms. Dennis alleges no facts that, taken as true, demonstrate that she suffered pay discrimination because of her membership in a protected class. Because she fails to state a claim for relief as to discriminatory compensation, the Court thus recommends that Count VI be dismissed in part as it relates to her pay discrimination claim.

### Ms. Dennis does not allege facts about race-based discrimination.

Ms. Dennis alleges that "Defendants, and each of them, have . . . violated the provisions of . . . the Civil Rights Act of 1991 . . . and 42 U.S.C. § 1981." (Doc. 13 ¶ 33.) Her complaint neither references her own race nor the race of any other person involved in the alleged events. Defendants argue that § 1981 and the Civil Rights Act of 1991 protect against race-based discrimination and that Ms. Dennis' operative pleading fails to allege any facts showing that she was discriminated against based on her race.

Codified as part of the Civil Rights Act of 1991, 42 U.S.C. § 1981 derives from § 1 of the Civil Rights Act of 1866. *See* 14 Stat. 27–30 (1866). Section 1981 entitles all people the same right to, among other things, "make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Based on this right, an employee can recover legal and

equitable relief if they are discriminated against in employment based on their race. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). To state a claim under § 1981 and the Civil Rights Act of 1991, Ms. Dennis must plausibly allege that but for her race, she would not have suffered an adverse employment decision. *See, e.g.*, *Walton v. Medtronic USA, Inc.*, No. 22-cv-50 (PJS/JFD), 2023 WL 3144320, at *8 (D. Minn. Apr. 28, 2023).

Ms. Dennis alleges no facts that link her race to any adverse employment decision. Because she fails to state a claim for relief as to race-based discrimination, the Court thus recommends that Count VI be dismissed in part as it relates to this claim, and therefore that the entirety of Count VI be dismissed for failure to state a claim.

## VI. PLAINTIFF HAS PLED SUFFICIENT FACTS TO MAINTAIN AN MHRA REPRISAL CLAIM AGAINST DEFENDANTS NORTON AND THE CITY OF ROCHESTER.

Ms. Dennis next pleads that Defendants retaliated against her for raising claims of discrimination by Defendants against herself and others in violation of the MHRA under Minnesota Statute § 363A.15. (Doc. 13 ¶¶ 14, 15, 18, 19, 29.) Specifically, Ms. Dennis claims that when she spoke up against her March 6, 2023 censure as discriminatory, Ms. Norton began refusing to meet with her, ostracized her from important conversations, and refused to answer her questions. (*Id.* ¶ 15.) She also alleges that, in reprisal for her complaints about discrimination, Defendants have made "it virtually impossible for [Ms. Dennis] to discharge her duties as an elected public official." (*Id.* ¶ 18.) Ms. Dennis pleads that she has opposed Defendants discrimination against "any protected party" but

"Defendants refuse to recognize that discrimination in any form exists in Rochester." (*Id.* ¶ 19.)

Defendants argue that as a non-employee, Ms. Dennis has no claim for reprisal under Minnesota Statute § 363A.15. As to the remaining possible claim—that Defendants retaliated against her in their capacity as public service providers—Defendants argue Ms. Dennis failed to meet Rule 8(a)'s pleading standard because she does not allege facts plausibly demonstrating that she engaged in any protected conduct, nor that she experienced a materially adverse action causally connected to that protected conduct.

Minnesota Statute § 363A.15 protects against reprisals for a person who opposes a practice forbidden by the MHRA, or has filed a charge, or participated in an investigation, related to such a forbidden practice. *See* Minn. Stat. § 363A.15. The entity effecting the reprisal may be "a perpetrator [of an alleged discriminatory act], employer, labor organization, employment agency, public accommodation, public service, educational institution, or owner, lessor, lessee, sublessee, assignee or managing agent of any real property, or any real estate broker, real estate salesperson, or employee or agent thereof." *Id.* To state a claim for relief under § 363A.15, Ms. Dennis must plausibly allege that "(1) [she] engaged in protected activity, (2) the defendant[s] took adverse action against [her], and (3) that there is a connection between the two." *Johnson v. Schulte Hosp. Grp., Inc.*, 66 F.4th 1110, 1115 (8th Cir. 2023) (quotation omitted).

Taking the protected activity element first, Ms. Dennis must allege facts showing that she "opposed a practice forbidden under [the MHRA]." Minn. Stat. § 363A.15. Here, Ms. Dennis alleges that she generally opposed discrimination against others. She also

claims that she specifically opposed certain topics or City councilmembers or staff during City Council meetings. The Court also understands her operative complaint to generally allege that her censure was itself a retaliatory action stemming from Ms. Dennis's requests for disability accommodations, followed by complaints that she was being discriminatorily disciplined for having a disability. Ms. Dennis also claims that she opposed her censure as itself discriminatory.

Protected activity is an activity that it is objectively reasonable to understand as unlawful under the MHRA, and therefore, legally actionable. *See Becker v. Jostens, Inc.*, 210 F. Supp. 3d 1110, 1120 (D. Minn. 2016).[5] Even if the action is not legally actionable, it is sufficient for a plaintiff to have had an objectively reasonable, good-faith belief that it was unlawful. *See id.* at 1120 (citing *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008)). That said, "[i]f a practice is not unlawful under the plain terms of the MHRA, a party's belief that the practice is unlawful cannot be reasonable." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 84 (Minn. 2010).

Taking her allegations in turn, as to Ms. Dennis's claim that she opposed discrimination against others, she does not allege any facts about the circumstances or type of alleged discrimination she opposed such that the Court could infer she had a good-faith, objective belief it was actionable. Without sufficient facts, her allegations are conclusory

---

[5] The Court notes that, while this case concerns the employment context—which is inapplicable to Ms. Dennis because the Court finds that she was not Defendants' employee under the MHRA—the Court nevertheless adopts as instructive the reasoning of cases analyzing the elements of a claim for relief under § 363A.15. *See, e.g.*, *Johnson*, 66 F.4th at 1117 (analyzing a race discrimination claim in public service context brought under § 363A.15 using caselaw from the employment context).

and fail to state a claim for relief. *Iqbal*, 556 U.S. at 678. Likewise, her allegation that she opposed certain topics or City councilmembers or staff during City Council meetings fails to allege facts showing that she opposed conduct unlawful under the MHRA. *Id.* However, as to her claims that she sought accommodation for her disability, complained about being discriminatorily disciplined for her disability, and opposed her censure as discrimination based on her disability, these facts plausibly allege protected conduct that opposes actions unlawful under the MHRA. *See Hanson v. N. Pines Mental Health Ctr., Inc.*, No. 16-cv-2932 (DWF/LIB), 2018 WL 1440333, at *11 (D. Minn. Mar. 22, 2018) ("[W]hen the employee specifically ties a request for work assistance to a disability, the employee engages in protected activity under the MHRA.") (quoting *Hoover v. Norwest Priv. Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001)); *see also id.* ("In addition, making a report of alleged discrimination to a supervisor may also qualify as protected.") (citing *Helton v. Southland Racing Corp.*, 600 F.3d 954, 961 (8th Cir. 2010); *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011)).

Next, Ms. Dennis must plausibly allege that Defendants took an adverse action against her. The Supreme Court's decision in *Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967 (2024), significantly lowers the bar for what may qualify as an adverse employment action. There, the Supreme Court "obviated the requirement—replete in [Eighth Circuit] case law—that the claimed injury be 'significant,' 'material,' or 'serious.'" *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow*, 144 S. Ct. at 975 n.2). Rather, a plaintiff need only "plead 'some harm respecting an identifiable term or condition of employment.'" *Id.* (quoting *Muldrow*, 144 S. Ct. at 974). And while

*Muldrow* involved a Title VII employment retaliation claim, 144 S. Ct. at 971, there is no reason to believe the adverse-action analysis would not extend to reprisal claims under the MHRA. *Accord Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1053 (8th Cir. 2024) (remanding § 1981 discrimination and retaliation claims with instructions for the district court to "consider them anew in light of *Muldrow*"); *Farmer v. FilmTec Corp.*, No. 22-cv-2974 (KMM/DLM), 2024 WL 4239552, at *11–12 (D. Minn. Sept. 19, 2024) (analyzing plaintiff's ADA and MHRA claims by reference to *Muldrow*).

Excluding allegations about nonparties, Ms. Dennis alleges that after seeking disability accommodations, Defendants punished her and made it difficult for her to perform her job by limiting her communication forms and recipients (Doc. 13 at ¶ 12); reprimanded, punished, and criticized her (¶ 13); and censured her, resulting in her demotion "to employee status" and a gag-order preventing her "from carrying out her constitutional and statutory duties as an elected public official" by limiting her ability to speak to City staff or criticize the City (¶¶ 14, 18). Ms. Dennis also claims that Ms. Norton refused to meet with her and excluded her from important conversations after she sought disability accommodations. (*Id.* ¶ 15).

To begin with, the formal censure is, as noted above, absolutely immune from suit as a legislative action by Defendants Keane and Norton. However, exclusions from relevant workplace communications are plausible allegations of an adverse action. *See, e.g.*, *Ewald*, 902 F. Supp. 2d at 1218 (finding that a plaintiff being "frozen out of virtually all communication lines" contributed to finding a cumulative adverse action); *Fercello*, 612 F.3d at 1079 ("exclusion from workplace meetings and management email lists could

be materially adverse employment action"); *Weger v. City of Ladue*, 500 F.3d 710, 728 (8th Cir. 2007) ("excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination"). Ms. Dennis has also plausibly alleged examples of how the limitations placed on her materially impacted her ability to do her job of communicating with constituents and representing her constituents in City proceedings. This is particularly clear in the wake of *Muldrow. See Cole*, 105 F.4th at 114 (reversing Rule 12 dismissal based where plaintiff alleged employer's treatment subjected her to scorn, ridicule, and work-setting reassignment). The Court finds enough in Ms. Dennis's operative pleadings under Rule 8 to plausibly allege that she experienced what could qualify as adverse actions.

The remaining question is whether, under § 363A.15, Ms. Dennis has pled a plausible causal link between her sufficiently alleged protected activity (seeking disability accommodations, complaining of being disciplined for seeking disability accommodations) and Defendants' adverse actions (excluding her, limiting her permitted communication). In the employment context, the Eighth Circuit generally requires more than a temporal connection between the protected conduct and adverse action, although a close temporal connection can be sufficient. *Mell*, 557 F. Supp. 3d at 917 (collecting cases suggesting two weeks may be short enough, but two months is too long without more evidence of a causal link between the protected conduct and the adverse action).

On the allegations provided, it is extremely difficult to discern the interval between Ms. Dennis's alleged protected conduct and the alleged adverse actions that she suffered

generally, let alone for each Defendant.[6] Nonetheless, the Court is mindful once again of its obligation to liberally construe pleadings from pro se parties such as Ms. Dennis. Doing so here, one could conclude that Ms. Dennis alleges she engaged in protected conduct by: asserting her right to a reasonable disability accommodation (Doc. 13 ¶ 12); complaining that her March 6, 2023 censure was discriminatory (¶ 15); "frequently and repeatedly" complaining that she was being subjected to disability discrimination (¶ 18); and opposing Defendants' discrimination of her and others (¶ 19). Ms. Dennis's protected conduct, she alleges, resulted not in corrective action but retaliation that included ostracization, blocked communications, and other cumbersome protocols that impeded her ability to do her job. (*Id.* ¶¶ 15–18.) At least at this early stage, these allegations demonstrate a sufficient temporal link to proceed with Ms. Dennis's MHRA reprisal claims, with one exception: the allegations implicate Defendants Norton and the City of Rochester, but none (save for the absolutely-immune censure itself) concern Defendant Keane. As such, the Court recommends that Defendant Keane's motion be granted as to Ms. Dennis's reprisal claim under § 363A.15, and Count IV of the operative pleading be dismissed for failure to state a claim for relief as to him. The Court recommends denial of Defendants' motion to dismiss Ms. Dennis's reprisal claim as to Defendants Norton and the City of Rochester.

---

[6] While Ms. Dennis has submitted a timeline of events in her exhibits to briefing on this motion, the Court cannot consider her exhibit because it was not fairly embraced by her pleadings and seeks to assert facts not pled in her operative complaint itself. (*See* Doc. 28, Ex. B.)

## VII.    PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD A VIABLE FIRST-AMENDMENT RETALIATION CLAIM AGAINST ANY DEFENDANT.

Ms. Dennis alleges that Defendants Norton and Keane, acting in their individual and official capacities, violated her First Amendment rights by imposing the March 6, 2023 censure in retaliation for her protected activity. (*Id.* ¶¶ 44, 45.) She alleges that this was intended to, and did, chill her robust participation in council meetings and interactions with other councilmembers and staff. (*Id.* ¶¶ 46, 48.)

Generally speaking, a First Amendment retaliation claim requires a showing that (1) the plaintiff engaged in some protected activity; (2) one or more government officials took some action that would chill a reasonable person from continuing in the activity; and (3) there is a causal connection between the protected activity and adverse action. *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Citing *Houston Community College Sys. v. Wilson*, 595 U.S. 468 (2022), Defendants assert that "[a] board's censure is not an adverse action as a matter of law." (Doc. 20 at 34.) Defendants are correct, at least insofar as a First Amendment claim would rest *solely* on a standalone censure without any accoutrements. That was the issue that reached the Supreme Court in *Wilson*, after all. *Wilson*, 595 U.S. at 471. By the time certiorari was granted, the question presented was whether Mr. Wilson had a First Amendment claim "arising from the Board's purely verbal censure?" *Id.* at 474. In answering in the negative, the Court characterized its decision as "a narrow one," which did not involve "expulsion, exclusion, or any other form of punishment." *Id.* at 482. Of course, Ms. Dennis alleges that

her censure *was* accompanied by restrictions on her ability to do her job as councilmember. (Doc. 13 ¶ 14.) Particularly given the Supreme Court's more recent adverse-action analysis in *Muldrow*—albeit in the context of Title VII—the Court cannot agree with Defendants that *Wilson* stands for anything more than it says: a standalone censure is not actionable. But this was not, according to Ms. Dennis, a standalone censure.

Nonetheless, Ms. Dennis's First Amendment claim fails for another reason. In her operative complaint, Ms. Dennis specifically pleads what adverse action she suffered as a result of her First-Amendment protected activity: a censure. (*Id.* ¶ 45.) The Court has broadly construed this allegation to Ms. Dennis's benefit, assuming her reference to the censure includes the tangible results of the censure, including restrictions on Ms. Dennis's communications. (*See id.* ¶ 14.) Ms. Dennis has alleged that the censure was willful, malicious, reckless, and intended to chill her exercise of First Amendment rights. (*Id.* ¶¶ 46, 50–51.) Ms. Dennis may well be right, but the more salient question is whether the censure was nonetheless legislative. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Ms. Dennis does not contest the fact that the censure was an apparently legislative act, taken up by the city council as a whole. As such, Defendants Keane and Norton are entitled to absolute immunity for their involvement in act of censuring Ms. Dennis. *Bogan*, 523 U.S. at 54–56. The Court thus recommends granting Defendants' motion to dismiss Count IX of Ms. Dennis's operative complaint.

## VIII. PLAINTIFF HAS FAILED TO ADEQUATELY STATE A CLAIM FOR DEFAMATION AGAINST ANY DEFENDANT.

Ms. Dennis alleges that Defendants regularly and maliciously defamed her by providing false information about Ms. Dennis to the news media. (Doc. 13. ¶ 20.) She alleges as an example that Ms. Norton defamed her by falsely claiming she was abusing her position of power to "fix parking tickets," a false claim that was shortly thereafter published in a newspaper. (*Id.* ¶¶ 20, 35–37.) She alleges that Ms. Norton acted with actual malice (*id.* ¶ 37) when Ms. Norton stated that Ms. Dennis committed a crime under Minnesota Statute § 609.43 by fixing the alleged tickets (*id.* ¶ 36), and thus Ms. Dennis claims that she is entitled to recover both punitive and special damages (*id.* ¶¶ 36–37).

Defendants argue that Ms. Dennis fails to allege any specific defamatory actions taken by Mr. Keane, and that her allegations against Ms. Norton are protected by a qualified privilege that shields communications where candor is especially required. Defendants contend that Ms. Norton's comments were given in response to a good faith internal City investigation into Ms. Dennis's claims about disability discrimination, and that protecting the integrity of such investigations requires her candid statements be shielded from later lawsuits. Defendants argue that because Ms. Dennis fails to allege that Ms. Norton had improper motives or an intent to injure, Ms. Dennis has failed to overcome Ms. Norton's qualified privilege.

"To state a claim for defamation in Minnesota, a plaintiff must allege that the defendants made statements that were false, that were communicated to another person, and that harmed the plaintiff's reputation." *Lopez Prater v. Trustees of Hamline Univ. of*

*Minnesota*, 693 F. Supp. 3d 1009, 1028 (D. Minn. 2023) (citing *Chang v. Cargill, Inc.*, 168 F. Supp. 2d 1003, 1011 (D. Minn. 2001); *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009)). Along with these elements, "a public official plaintiff must allege facts from which a jury could find that the speaker acted with actual malice in making the defamatory statement." *Michaelis v. CBS, Inc.*, 119 F.3d 697, 700 (8th Cir. 1997) (citing *New York Times Company v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Actual malice requires a public official to "show that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for its truth." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)). "Actual malice 'may be alleged generally,' Fed. R. Civ. P. 9(b), but 'to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred.'" *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012)).

Here, Ms. Dennis alleges that during an interview with a firm hired to investigate Ms. Dennis's discrimination complaints, Ms. Norton falsely told an investigator that Ms. Dennis had abused her power by attempting to "fix parking tickets." (*Id.* ¶ 20.) The exact excerpt from the investigation report states:

> Normally, when a Councilmember gets a complaint about something from the public, they direct the person to the right Department for assistance. It is not their role to get personally involved in fixing the problem but to direct the constituent to the staff person who can fix the problem. Dennis micromanages and abuses her authority. Dennis has demanded information on incidents involving confidential police matters. She has tried to fix parking tickets. Norton has told her that she has no special privileges as a Council member. If someone calls Dennis on her behavior, she responds by saying [redacted].

(Doc. 22, Emory decl., Ex. 4 at 16, § 2.9.) Ms. Dennis alleges that Ms. Norton's statement about "fixing parking tickets" was then published in a local newspaper. (Doc. 13 ¶ 20.)

The Supreme Court of Minnesota has held that statements that are "defamatory per se include 'false accusations of committing a crime and false statements about a person's business, trade, or professional conduct.'" *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 875 (Minn. 2019) (quoting *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987)). Ms. Dennis alleges that it would be unlawful for her to "fix parking tickets" under Minnesota Statute § 609.43,[7] as Ms. Norton suggested she tried to do. (Doc. 13 ¶ 36.)

At the early pleading stage, the Court finds that, as to Ms. Norton's alleged defamatory remarks, Ms. Dennis has alleged enough to meet Rule 8's pleading standard. However, the Court must still consider Defendant's argument that Ms. Norton's comments were shielded by a qualified privilege that can be invoked when statements are made in a context that requires unique candor—here, during an independent investigation by a law firm hired to investigate Ms. Dennis's discrimination complaints.

Under Minnesota law, an individual who makes a defamatory statement may be shielded from liability by a qualified privilege if a court finds that they made their statement in a particular context where candor should be encouraged. *See Bol v. Cole*, 561 N.W.2d

---

[7] Minnesota Statute § 609.43 governs the misconduct of public officers or employees and provides penalties for any public officer or employee who, among other things, "in the capacity of such officer or employee, does an act knowing it is in excess of lawful authority or knowing it is forbidden by law to be done in that capacity." Minn. Stat. § 609.43(2).

143, 149 (Minn. 1997). "For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and 'must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.'" *Id.* (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn. 1980)).

There is a strong public interest in candid responses to an independent investigation into claims of discrimination. If individuals fear liability for statements made to investigators during a good faith investigation into discrimination claims, individuals would weigh the candor of their responses against the prospect of protracted litigation for providing them, thereby deterring complete and accurate responses during investigations of discrimination complaints. Such a result would be counter to public interest. *See, e.g.*, *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 1000 (D. Minn. 2013), *aff'd*, 823 F.3d 462 (8th Cir. 2016) (finding qualified privilege shielded allegedly defamatory statements made during an employer's investigation into employee misconduct from liability); *Issaenko v. Univ. of Minnesota*, 57 F. Supp. 3d 985, 1032 (D. Minn. 2014) (finding qualified privilege shielded allegedly defamatory statements made by state university officials during an investigation of a research assistant's misconduct); *Bahr*, 766 N.W.2d at 923 (finding qualified privilege shielded allegedly defamatory statements made during an employer's investigation into an employee's harassment complaint). The Court therefore finds that Ms. Norton's statements, made during the course of an investigation about discrimination complaints, are protected by a qualified privilege.

This does not end the Court's analysis, however. "A qualified privilege is overcome if the plaintiff demonstrates that the defendant made the statement with malice." *Maethner*,

929 N.W.2d at 873. As to the "actual malice" requirement, Ms. Dennis has not alleged enough facts to create a reasonable inference that Ms. Norton knew her alleged parking ticket-related statement was false, and nonetheless made the statement with an actual malicious intent to harm Ms. Dennis. *See Nelson*, 951 F.3d at 958. Ms. Dennis claims that, among other things, Ms. Norton's defamatory statements were not made for the purposes of candor, but instead were made with a motive to harm Ms. Dennis's chances for reelection. (*Id.* at 20–21.) Yet Ms. Dennis fails to allege any facts to support her supposition about Ms. Norton's motives, rendering her claim of actual malice conclusory. *Iqbal*, 556 U.S. at 678. The Court therefore finds that Ms. Dennis has not overcome the qualified privilege, and thus recommends that Defendants' motion be granted as to Ms. Dennis's defamation claim, and Count VII of the operative pleading be dismissed for failure to state a viable claim for relief.

## IX.    PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT A PLAUSIBLE DUE PROCESS CLAIM.

Ms. Dennis also alleges that Defendants denied her the protections of due process under Minnesota Statutes §§ 205.07 and 412.191, as well as Articles 1 and 8 of the Minnesota Constitution. (Doc. 13 ¶ 40.) Specifically, Ms. Dennis claims that Defendants ambushed her by "[t]he harshly restrictive censure" that "was presented without prior warning" and was not "publish[ed] in the Council packet." (*Id.* ¶ 14.) Ms. Dennis thus claims that the censure "issued without required public notification and without following due process." (*Id.*) She alleges that the censure's intended goals were "silencing, controlling, and further demoting Dennis to employee status" and that the censure

"prevented Dennis from carrying out her constitutional and statutory duties as an elected public official." (*Id.*) Such actions included preventing her from "directly asking questions to over 900 City staff member" or "criticiz[ing] the government or policy in City Council meetings" and requiring her "to jump through . . . cumbersome and demeaning hoops" to communicate with City staff. (*Id.* at 14–15; *see also* Doc. 22, Emory decl. Ex. 2 (containing the resolution adopting a formal censure of Ms. Dennis that is fairly embraced by the pleadings).)

Defendants argue first that Ms. Dennis fails to state a claim for relief under Minnesota Statutes §§ 205.07 or 412.191. They contend that neither statute creates an independent cause of action: § 205.07 sets out the process for municipal elections, and § 412.191 explains city councils' duties, powers, and composition in Minnesota. As to the due process protections found in the Minnesota Constitution, Defendants claim that Ms. Dennis has not identified a liberty or property interest of which she was deprived, nor alleged how process was insufficient related to the censure.[8]

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall . . .  deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Minnesota's Constitution has been interpreted to protect this

---

[8] Defendants also contend that Ms. Dennis's response to their motion sought to add a new claim for a violation of her due process rights because the public and city councilmembers received no advance notice of the censure vote, and that the Court should disregard claims outside the operative pleadings. While it is difficult to reason how a failure to provide notice *to others* could give rise to a due process claim for Ms. Dennis, the Court finds it unnecessary to reach that issue because Ms. Dennis's due process claim fails on the whole for other reasons.

same due process right. *See Yanke v. City of Delano*, 393 F. Supp. 2d 874, 879 (D. Minn. 2005) ("The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the U.S. Constitution.") (citing *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988)), *aff'd sub nom. Yanke v. City of Delano, Minnesota*, 171 F. App'x 532 (8th Cir. 2006). To allege a viable due process claim, Ms. Dennis must plead facts that, taken as true, demonstrate that (1) she had a protected liberty or property interest at stake and (2) Defendants deprived her of that interest without due process of law. *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011).

Here, as best the Court can tell, Ms. Dennis alleges that she had an interest in being treated like any other Rochester city councilperson in her elected role, which she claims involves reprimands that are less harsh and limiting than the formal censure she received, and that she had a right to perform her city council role free from restrictions imposed by city officials. (Doc. 14 ¶ 14–15.) Setting aside the fundamental problem that Defendants Keane and Norton are absolutely immune from legislative actions such as preparing for, voting to adopt, or ratifying an adopted censure, Ms. Dennis provides no authority establishing a liberty or property right to be treated identically to past or present peer elected officials, or to be subject to only certain types of discipline from a city council, and the Court has found no grounding for such a proposition. Without establishing a liberty or property right, Ms. Dennis fails to plausibly allege that Defendants deprived her of that right without due process.

Even entertaining the notion that Ms. Dennis might have a protected liberty or property interest—which the Court has not found—Ms. Dennis has not shown that the

notice given to her was any different from the notice that was typical or was given to any other member of the city council.[9] "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). The Supreme Court has held that notice is also required, as "[t]his right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for [themselves] whether to appear or default, acquiesce or contest." *Id.*

Here, Ms. Dennis attended the March 6, 2023 city council meeting, and had the right to object to the censure, as she did. Specifically, the Court has reviewed the City Council's agenda for March 6, 2023, and notes that item H.3. lists "Formal Censure of Ward 6 Councilmember Molly Dennis." (Doc. 28, Ex. F at 4, agenda item H.3.) This agenda is now publicly available as part of an agenda packet on the City of Rochester's website. City of Rochester Minnesota, *City Council Meetings*, March 6, 2023 Agenda Packet, https://perma.cc/DD7Q-TC58 (last visited Oct. 16, 2024). According to the publicly available minutes for the March 6, 2023 Rochester City Council Meeting, early in the agenda there is an "Order of Agenda" item proposing a "[m]otion to approve the order of the Agenda with addition of Item H.3 – Formal Censure of Ward 6 Council Member Molly Dennis." (Doc. 22, Emory decl., Ex. 1 at page 3, agenda item E.) Ms. Dennis was present

---

[9] Defendants claim that Ms. Dennis did not allege deficient notice in her pleadings, but the Court disagrees. The Court understands Ms. Dennis to allege in her operative complaint that she had the right to more advanced notice of her censure than she received—including prior public warning that involved publication in the City Council's upcoming agenda materials before the meeting at which she was censured. (Doc. 13 ¶ 14.)

for the vote and was able to vote "nay" on the agenda item. (*See id.*) Ms. Dennis was also present for and able to vote "nay" on the motion to adopt the censure resolution alongside her fellow councilmembers. (*See id.* at page 12, agenda item H.3.) Ms. Dennis therefore appears to have had an opportunity to be heard entailing at least some notice.

Drawing every inference in Ms. Dennis's favor based on her operative complaint and the materials it fairly embraces, the Court cannot conclude that she has adequately pled that the notice she received was inadequate, nor that the procedures related to the censure were improper. The Court therefore finds that Ms. Dennis has failed to state a claim for relief as to her due process claim, and it recommends that Count VIII of her operative complaint be dismissed.

## RECOMMENDATION

Based on all of the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Defendants City of Rochester, Patrick Keane, and Kim Norton's Motion to Dismiss pro se Plaintiff Molly L. Dennis's Amended Complaint (Doc. 17) be **GRANTED IN PART** and **DENIED IN PART**,

2. Defendants' motion be granted as to all claims and counts **except** that it be denied as to Ms. Dennis's public services access claim brought under the ADA and MHRA in Counts I and III against the City of Rochester, as well as Ms. Dennis's MHRA reprisal claims in Count IV as to Defendants Norton and the City of Rochester; and

3. This Report and Recommendation be unsealed in its entirety 45 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be needed to protect confidential information referred to in this Report and Recommendation and shall file a joint letter and proposed redacted order within 30 days from the date this Report and

Recommendation is filed, identifying with specificity the redactions they believe are required and the basis for those redactions.

Date: October 30, 2024                           _s/Douglas L. Micko_____
                                                 DOUGLAS L. MICKO
                                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).