IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis,<br><br>Plaintiff,<br><br>v.<br><br>City of Rochester, Patrick Keane, and Kim Norton,<br><br>Defendants. | Case No. 24-cv-00426 (PJS/DLM)<br><br>**DEFENDANTS' OBJECTION TO THE OCTOBER 30, 2024 REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS**<br><br>FILED UNDER SEAL |

Under Local Rule 7.2.2(b), Defendants respectfully submit this Objection to Magistrate Judge Douglas L. Micko's October 30, 2024 Report and Recommendation (ECF No. 38) (the "R&R"). [1]

Plaintiff Molly Dennis is a Rochester City Councilmember who sued the City, a fellow City Councilmember, and the City's Mayor. The R&R correctly resolved many of Dennis's claims and recommended their dismissal. But the R&R erred in two material ways. First, it wrongly concluded that, as an elected official, Dennis stated a claim against the City of Rochester for discrimination in access to public services under the ADA and the MHRA (Counts I and III). Second, it erred in concluding that Dennis stated a claim for reprisal as to

---

[1] Magistrate Judge Micko temporarily filed the R&R under seal and set a timeline for the parties to address which portions of it should remain sealed and which should become public. Because this objection is due before the R&R's sealing is finalized, Defendants are filing the objection under seal; they will request unsealing as appropriate and consistent with the R&R and local rules.

Defendants Kim Norton and the City of Rochester (Count IV). This Court should grant Defendants' Motion to Dismiss in its entirety.

## ARGUMENT

**I.   The R&R erred in its analysis of state and federal public accommodation law (Counts I and III).**

The R&R's conclusion that Dennis adequately stated a claim for public accommodation discrimination under state and federal law did not appropriately apply public accommodation law or consider Dennis's status as an elected Councilmember. The R&R concluded that questions regarding whether Defendants adequately accommodated Dennis's disability "belong to much later procedural moments than a motion to dismiss." (R&R at 27.) But dismissal at this stage is appropriate. Taking Dennis's allegations as true—in the context of her role as an elected Councilmember and the rules and standards that apply to all councilmembers—she cannot state a disability discrimination claim.

**A.   The City did not discriminate by deciding not to give Dennis unfettered access to City staff, because Dennis had meaningful access, which is all the law requires.**

The R&R concluded that Dennis plausibly alleged that her access to City services and activities was different than that of non-disabled peer city councilmembers (R&R at 27–28), and thus that her public access disability claim could move forward. But the R&R's conclusion ignored the ADA and MHRA's plain

language and cases interpreting them, which require a failure to provide "meaningful access."

For a public services discrimination claim, it is not enough for Dennis simply to allege that she was treated "differently," as the R&R suggested; instead, she must allege that the City failed to provide her with "meaningful access" to its services. As the R&R noted, the ADA prohibits an individual from being "excluded" or "denied the benefits of the services, programs, or activities of public entity." 42 U.S.C. § 12l132. Similarly, the MHRA prohibits discrimination in the "access to, admission to, full utilization of or benefit from any public service." Minn. Stat. § 363A.12, subd. 1. Following that statutory language, courts require an individual to establish that a public entity excluded her from participating in or receiving the benefits of a public service, program, or activity. *See Manska v. Fabian*, No. A08-0025, 2008 WL 5215954, at *3 (Minn. Ct. App. Dec. 16, 2008). Courts interpreting this language have concluded that a person with a qualified disability must be given "meaningful access" to public services. *See, e.g., Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

Dennis's allegations that the City "made it harder" for her to perform her job (Am. Compl. ¶¶ 12, 15–16[2]) do not adequately allege a lack of public services

---

[2] The R&R properly concluded that the Censure is subject to absolute legislative immunity and cannot form the basis of Dennis's public services discrimination claim.

accommodation. First, the City's Council Rules of Procedure and Code of Conduct (the "Council Rules") do not permit Councilmembers unfettered access to City staff. (*See* Emory Decl. Ex. 6 [ECF No. 22-6].) The Council Rules make clear that the Council is the governing body, and that City staff handle the City's day-to-day administrative work:

> The Council as a whole is a policy-making board and, as such, it is not the Duty of the Council to administer the day-to-day operations of the City. . . . It is important that the Council and the City staff work together to differentiate between administrative duties which are relevant to staff, and those decisions which are of a policy-making nature and should come before the Council.

(*Id.* at 11.) The Council Rules detail how the Council may and may not interact with staff. (*Id.* at 15.) The Council—not individual Councilmembers—provides direction to City staff; City staff are not obligated to pursue items for only one Council Member, and the Council as a whole must consent to staff work that will require more than thirty minutes if requested by an individual Councilmember. (*Id.*) Thus, individual Councilmember access to City staff is not unlimited, and *all* Councilmembers are restricted in how they may interact with City staff. And unfettered access to City staff or communication with City staff in person versus via video conference was not, in any event, encompassed by Dennis's accommodation request. (*See* Dennis Decl. Ex. G.)

Second, the City did not need to provide Dennis with communication forms that are "identical" to those that other Councilmembers used, as long as her

4

communication mechanisms were effective. *See Loye v. Cnty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010) (analyzing a public entity's reasonable accommodations); 28 C.F.R. § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others.").

Finally, as the R&R noted, there are serious "questions about how public accommodation laws apply to someone who would generally be considered on the public entity side of a dividing line between the public entity and the public it serves." (R&R at 25.) To the extent the R&R permitted Dennis's public accommodation claim to move forward because of a concern that she has no legal recourse for disability discrimination (R&R at 26), that concern is not one that should animate the Court's decision-making. It is the province of the Minnesota legislature and U.S. Congress—not this Court or any other court—to determine whether discrimination does or doesn't apply to elected officials and, if so, how. When a public official like Dennis has meaningful access to public services, programs, and activities—as Dennis did—dismissal of her claim is warranted.

### B. The City's denial of Dennis's request for hourly breaks in Council meetings is insufficient to state a claim.

Dennis's allegation that the City failed to provide her with an "hourly break" is also insufficient to state a claim. The Council as a whole takes a break every 90 to 120 minutes (Emory Decl. Ex. 6 at 5), and individual councilmembers can—and

5

do—take more frequent breaks. And, more importantly, the City Council considered whether to take formal meeting breaks every hour but voted against it out of a concern that adding additional breaks would make the meetings run longer—and potentially late into the night. (*See* Emory Decl. Ex. 4 at 43 ¶ 1.4 [ECF No. 22-4].) The R&R erred in considering this vote, which is itself a legislative action and absolutely immune from suit. *See Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (vote on a municipal ordinance was "quintessentially legislative" act).

In short, the R&R erred in concluding that Dennis's allegations that she was treated differently from other Councilmembers is sufficient to state a claim. Dennis is not a typical member of the public, she is an elected official. And the Council Rules govern her and all Councilmembers' conduct. Dennis had meaningful access to the City's services. Her public accommodation discrimination allegations do not state a claim and this Court must dismiss them.

**II.     The R&R erred in its analysis of reprisal under the MHRA (Count IV).**

The R&R recommended allowing Dennis's reprisal claim against the City and Mayor Norton. But Dennis did not adequately allege that she engaged in protected conduct, she did not adequately allege an adverse action, and she did not adequately allege a causal connection between the two.

### A. Dennis did not adequately allege that she engaged in protected activity.

The R&R properly discarded most of Dennis's allegations of protected conduct, but it improperly concluded that her complaints about being disciplined for her disability and opposing the censure were protected conduct.[3] First, Dennis's opposition to the censure cannot be protected activity because the censure was not unlawful. Indeed, as the R&R properly concluded, the censure was protected by absolute legislative immunity, so Dennis's belief that it was unlawful cannot be and was not reasonable. *See Bahr v. Capella Univ.*, 788 N.W.2d 76, 84 (Minn. 2010) ("If a practice is not unlawful under the plain terms of the MHRA, a party's belief that the practice is unlawful cannot be reasonable."). Second, Dennis alleged that she complained about being disciplined for her disability, but she did not allege any facts or circumstances *about* those complaints. Indeed, she stated only that she "frequently and repeatedly complained to Defendants, as well as their employees and agents, about their intentional discrimination against her on account of her disability." (Am. Compl. ¶ 18.) That bare-bones allegation is not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason alone, Dennis's MHRA retaliation claim fails.

---

[3] The R&R concluded that Dennis's allegations that she opposed discrimination of others were not protected conduct. (R&R at 32–33.) The Defendants do not object to that conclusion.

### B. Dennis did not adequately allege adverse action.

Even if Dennis had adequately alleged that she engaged in protected conduct, her MHRA retaliation claim would fail for a second, independent reason: she has not sufficiently alleged an adverse action. The R&R erred in concluding otherwise, particularly in its reliance on *Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967 (2024). *Muldrow* has no application to this case. First, unlike the Title VII claim at issue in *Muldrow*, Dennis's reprisal claim is based in state law. Minnesota courts have not applied *Muldrow*'s reasoning to the MHRA. Second, unlike the claim at issue in *Muldrow*, Dennis's reprisal claim is *not* based on her employment status because she is not an employee, so *Muldrow*'s holding is not binding or even advisory. Thus the R&R's reliance on *Muldrow* was misplaced. Third, *Muldrow*'s reasoning makes little sense in the context of Dennis's status as an elected official, engaging with other elected officials and City employees. Dennis alleges she experienced canceled meetings, unanswered or unkind emails, and refusal to meet with her. (*See* Am. Compl. ¶¶ 15, 18.) But these allegations do not suffice to establish an injury or a harm, particularly in the context of Dennis's work in a legislative body on the City's behalf. The City Council governs itself through the Council Rules. (Emory Decl. Ex. 6.) Although Councilmembers should "strive to work as a team in achieving the best outcome for the community" (*id.* at 11) they—like other elected officials—may choose to focus their communication and engagement in Council meetings and

8

study sessions, rather than in extensive email communications or additional meetings.

### C. Dennis did not adequately allege a causal connection.

Finally, Dennis did not and cannot allege a causal connection between her protected activity and the adverse actions. As the R&R stated, "it is extremely difficult to discern the interval between Dennis's alleged protected conduct and the alleged adverse actions." (R&R at 35.) In fact, Dennis's complaint does not include *any* allegations to establish the timeline for her complaints and the alleged adverse action. She did not, therefore, establish a temporal connection at all. This alone is fatal to her claim. But even if she had established a temporal connection, the Eighth Circuit generally requires "*more* than a temporal connection between the protected conduct and adverse . . . action," *Mell v. Minn. State Agric. Soc'y*, 557 F.Supp.3d 902, 917 (D. Minn. 2021) (emphasis added), as the R&R properly noted (R&R at 35). Despite recognizing that requirement, the R&R then tossed it out the window. (R&R at 36.) Dennis did not allege anything more than conclusory statements that she complained, and that Defendants retaliated. This is not enough.

## CONCLUSION

Dennis fails to state a claim on any count. This Court should dismiss her Amended Complaint in its entirety.

Dated:  November 13, 2024　　　　**GREENE ESPEL PLLP**

　　　　　　　　　　　　　　　　 s/ *Erin R. Emory*
　　　　　　　　　　　　　　　　Jenny Gassman-Pines, Reg. No. 0386511
　　　　　　　　　　　　　　　　Erin R. Emory, Reg. No. 0401215
　　　　　　　　　　　　　　　　222 S. Ninth Street, Suite 2200
　　　　　　　　　　　　　　　　Minneapolis, MN  55402
　　　　　　　　　　　　　　　　jgassman-pines@greeneespel.com
　　　　　　　　　　　　　　　　eemory@greeneespel.com
　　　　　　　　　　　　　　　　(612) 373-0830

　　　　　　　　　　　　　　　　Attorneys for Defendants City of Rochester, Patrick Keane, and Kim Norton