# Memorandum

**To:** Mayor & City Council

**From:** Kelly K. Geistler, City Clerk
Michael Spindler-Krage, City Attorney

**Date:** Friday, September 13, 2024

**Subject:** Additional Council Rules Clarification & Advisement

Council President Carlson, Mayor Norton, & Councilmembers,

Following the Council meeting on Monday, September 9, 2024, in conjunction with the memorandum (memo) sent out Saturday, September 7, 2024, from the City Attorney and myself regarding your Rules of Procedure and Code of Conduct (Rules), I'd like to address a few additional points of clarity.

1. **Examples of Derogatory Remarks and Insinuations.** In Monday's meeting, Councilmember Dennis asked for clarification on what might be considered "derogatory remarks" or "insinuations" under Rule 3C. As the memo states:

    *"Derogatory remarks" and "insinuations" are not allowed. Derogatory remarks are comments that are explicitly disparaging and depreciatory. Insinuations use passive-aggressive language to imply or suggest wrong-doing. These comments and remarks generally criticize or undermine an individual or a group of people, and thereby fail to engage the body in any substantive dialogue aimed at understanding or correcting a process or decision.*

    a. <u>Examples.</u> The memo also invited Councilmembers to consult with me in my role as a parliamentarian for guidance and/or examples regarding what comments might be considered violations of Rule 3C (*noting again that this is ultimately a decision made by the Council body.*) In response to Councilmember Dennis's request for more details and examples, please review the above Rules language, and consider the following examples as possible violations, particularly when repeated over and over or said without context; "Rubber stamping," "destroying democracy," "wasteful spending," "closed door meetings," "hostile work environment," "targeting," "silencing me," "ostracizing," "conflict of interest," "abuse of power," "the City Administrator won't meet with me," "meetings are too long…" "meetings are too short…," "you don't like hard questions," "you don't want transparency," "we're wasting millions of dollars, every month," "stealing from tax payers," etc. This is not an exhaustive list.

    b. <u>Council is the final arbiter of its own Rules.</u> Please note, again, that the Council, acting as a unit, has final say on Rule interpretations and I would advise against Councilmembers consulting with me on this matter in the middle of an actual Council meeting. Decisions during the meeting are made by the presiding officer and the body

in accordance with your Rules.

# Memorandum

   c. <u>Cumulative impact matters.</u> Additionally, it's important to remember, as stated in the memo, that the cumulative effect of these types of remarks are part of the calculus in considering whether a particular remark violates the Rules, as well as the intent of their use. The repetition of these types of remarks, particularly after they have been addressed, disproven, or are just factually inaccurate on their face is also a key part of determining whether they violate Rule 3C. The cumulative impact is the issue at hand, and as already stated, the presiding officer, along with the Council as a body, decides what ultimately registers as a violation of Rule 3C.

2. **All Councilmembers have the right to call a "point of order."** Councilmember Dennis mentioned that she believes others have made statements about her that could be considered a Rule 3C violation. A reminder, all Councilmembers have a right to raise a "point of order" if they believe a rule violation is occurring.

3. **Council Rules on the pulling of consent items.** Regarding discussion at Monday's Council meeting about the Council Rule on pulled consent items, I'd like to be crystal clear on my interpretation of the intent of that rule as it was adopted. **Pulling items "for discussion," does <u>NOT</u> meet the spirit or intent of Rule 4C and Chapter 2.03(A)(iii).** The Rule intends for the Councilmember to offer *specific questions and/or concerns*, to allow City teammates the opportunity to answer questions ahead of time, and/or to assess which teammates may be needed to address questions during a meeting.

   a. <u>Consent agendas are a generally accepted best practice of effective governance.</u> Regarding the repeated reference to the Consent Agenda being a "rubber stamping" process: This is false. Consent agenda items are typically items that are considered part of the routine business of the City, are reoccurring functions such as the "accounts payable" item or various quarterly reports, etc., generally considered non-controversial, and/or items that are at various stages of the many ongoing projects or initiatives around the City on which the Council and City teammates have already exchanged significant insight and feedback.

   b. <u>Consent agendas are a communication tool for transparency and oversight.</u> Consent items go on a public agenda for Council review, serving to provide ongoing oversight and transparency, keeping the public informed on all the myriad moving parts of the City's business. Further, the consent agenda relies in some part on trust in the expertise of our City teammates who are executing the work as directed at some earlier date by the Council, often with high levels of technical complexity, and then bringing it forward to the Council in stages that are digestible and organized for the layperson's understanding. The discussion and consideration of most consent items has already occurred and it is a matter of efficiency and an accepted practice of good governance to group them together and move through them in block. →

# Memorandum

> *Of course, no single Councilmember can remain intricately educated on every City project over the course of time, so having queries or questions makes complete sense*; however, that doesn't mean it rises to the level of needing to rehash an entire project through pulling of the item. This is the essence of the Consent Agenda.

   c. <u>Expectations on timing.</u> With paragraph (b) in mind, the general expectation is that Councilmembers read the consent agenda portion of the packet and think through relevant concerns or questions well before 1:00p.m. on Monday. This is especially critical if a Councilmember is otherwise generally unavailable on Monday afternoons to meaningfully address lingering questions or concerns before the meeting. In the evolution of the agenda process since 2020, publishing was moved from Thursday afternoon or evening to Wednesdays at 5:00 p.m. to have both consistency and a full additional day of review for the Council. This process generally works quite well, evidenced by the trickle of questions and queries that start coming in from Councilmembers as early as Thursday afternoon.

4. **Separation of Powers concerns.** On Monday during the "other business" portion of the meeting, Councilmember Dennis suggested that there may be some type of "separation of powers" violation occurring in the City. *This assertion of an alleged violation is erroneous* and could likely be viewed as a disparaging remark or an insinuation of legal wrongdoing, in violation of Rule 3C.

   a. Separation of Powers rationale at the municipal level. The City Charter establishes the framework for working relationships between the City Council, Mayor, City Administrator, City Attorney, and the City enterprise. Courts have generally recognized that clear-cut distinctions between government branches, particularly at the municipal level, are neither possible nor practical. Instead, courts have determined that the separation of powers doctrine, as applied to municipalities, more accurately envisions "a system of separateness but interdependence, autonomy but reciprocity." (see Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952)) While reasonable people can disagree about certain aspects of how this shared responsibility is executed, it is not helpful to generically allege a constitutional violation. If a Councilmember believes that the "executive branch," (however defined) is "interfering" with the "legislative branch," they should make this argument to the Council relative to a specific agenda item or topic. Otherwise, the allegation is a misreading of the U.S. Constitution and is potentially a Rule 3C violation.

5. **The Mayor functions as part of the Council in application of the Rules.** Lastly, one additional clarification that I failed to provide in the memo from this past weekend. The Mayor functions as part of the Council during Council meetings and is generally covered by the same Rules and Code as the rest of Council. Remarks directed to the Mayor, or remarks by the Mayor, would also be governed by your Rules.

END OF DOCUMENT