IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis, | Case No. 24-cv-00426 (PJS/DLM) |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Molly Dennis seeks to weaponize the First Amendment to avoid the ordinary political consequences of her conduct and speech as a former public official. Her proposed First Amendment claims—which she seeks to add by asking this Court to permit her to amend her complaint a second time—rest on the flawed premise that the First Amendment requires elected officials to embrace each other's positions, second their motions, and engage with each other's preferred manner of political discourse.

The law demands otherwise. When public officials enter the political arena, they accept that vigorous debate—including criticism, disagreement, and political opposition—comes with the territory. The Supreme Court has long recognized that "[i]n this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue

exercising their free speech rights when the criticism comes." *Houston Comm. Coll. Sys. v. Wilson*, 595 U.S. 468, 479, 142 S. Ct. 1253, 212 L. Ed. 2d 303 (2022). The First Amendment protects robust political debate precisely because it "cannot be used as a weapon to silence other representatives seeking to do the same," particularly when "[e]veryone involved was an equal member of the same deliberative body," *id.*, or providing the same guidance to every member. Plaintiff seeks to upend that well-settled law, by amending her complaint to add a First Amendment retaliation and a First Amendment prior restraint claim.

Plaintiff's proposed retaliation claim fails because she cannot demonstrate that the alleged adverse actions would chill a person of ordinary firmness in her position as an elected official. The political process itself—including colleagues' refusal to second motions, disagreement with positions, and enforcement of neutral rules of decorum—cannot constitute actionable retaliation without eviscerating the democratic process and chilling the speech rights of other elected officials.

Similarly, Plaintiff's proposed prior restraint claim misconceives the nature of both the challenged conduct and the prior restraint doctrine. The Council Rules and related guidance do not constitute the type of "administrative and judicial orders forbidding certain communications when issued in advance" that the Supreme Court has carefully limited to the prior restraint doctrine. *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). Legislative bodies must

retain the authority to govern their own proceedings and maintain decorum, as recognized by both the United States and Minnesota Constitutions and Minnesota law.

The proposed amendment would be futile because Plaintiff's claims fail as a matter of law. The First Amendment does not shield public officials from the ordinary functioning of the political process, nor does it guarantee freedom from the political consequences of one's speech and conduct. To hold otherwise would paradoxically chill the very political debate the First Amendment is designed to protect. The proposed amendment would also fail to the extent it seeks to revive already dismissed claims against all defendants, and to add Councilmember Keane back as a defendant four months after his dismissal. This Court should deny Plaintiff's motion.

## FACTUAL BACKGROUND

### A.    Procedural Background

After initially filing a complaint in state court, Plaintiff Molly Dennis, *pro se*, filed a First Amended Complaint against Defendants City of Rochester, Patrick Keane, and Kim Norton, which Defendants moved to dismiss. ECF Nos. 13, 17-25. On October 30, 2024, this Court issued a Report & Recommendation, recommending that Defendants' motion be granted on all claims except Counts I and III (disability discrimination for denial of access to public services under the ADA and MHRA) and Count IV (retaliation under the MHRA). ECF No. 38. On

March 11, 2025, Chief Judge Schiltz issued an Order adopting the Report & Recommendation, dismissing all counts but I, III, and IV, and dismissing Defendant Keane. ECF No. 51.

Plaintiff then engaged counsel and, on June 30, 2025, Plaintiff filed a Motion to Amend Complaint ECF No. 73, Proposed Second Amended Complaint and Exhibit to Proposed Second Amended Complaint ECF No. 74, and Notice of Hearing ECF No. 75. On July 1, 2025, Plaintiff filed a Meet and Confer Statement ECF No. 77. Plaintiff did not file a memorandum nor a proposed order to accompany the motion. *See* L.R. 7.1(b)(1).

### B.    Allegations in Proposed Second Amended Complaint

The Proposed Second Amended Complaint seeks to assert two claims for First Amendment retaliation and First Amendment prior restraint against the three original Defendants.

In Count X (First Amendment Retaliation), Plaintiff alleges that she engaged in speech which included, "[o]bjecting to violations by the Mayor, City Council Members, and City staff of state law prohibiting the use of frequent flyer miles and discounts accrued on city-funded travel for personal use"; "[o]bjecting to the use of the Plummer House and the absence of a live recording of  the strategic planning meeting held on February 27, 2023"; requesting reasonable accommodation for her ADHD; "[d]isagreeing with majority positions of the Council on issues;" and

"[c]onducting her public duties in a manner consistent with her ADHD[.]" ECF No. 74 at 16, 25.

Plaintiff alleges that the Defendants took the following actions in retaliation for her protected speech, the result of which was to chill her speech: (1) "Prohibit[ed] Plaintiff from direct communication with City staff, limiting her to virtual meetings with department heads, and requiring written submissions through the City Attorney"; (2) "Banish[ed] [Plaintiff] from City Council Meetings," (3) "Exclud[ed] Plaintiff from critical Council discussions and refusing to engage with her questions or motions"; and (4) "[A]dopted a policy of refusing to second any Council-initiated action motioned by Plaintiff motions and frequently interrupted or refused to recognize her during Council debates". *Id.* at 25-26. Plaintiff also refers to a document titled, "Code of Ethics and Conduct for Elected and Appointed Officials," but Plaintiff did not attach that code as an exhibit. *See id.* at 15, 18-20. Plaintiff also alleges that Defendants retaliated against her by (5) "Arbitrarily enforcing the Code of Ethics and Conduct's vague and overbroad prohibitions, as clarified in the September 13, 2024, Memorandum, to target Plaintiff's critical speech." *Id.* at 25-26.

Plaintiff alleges that because the "Court previously found that exclusions from relevant workplace communications by Plaintiff was a plausible allegation of an adverse action ADA disability-related retaliation. The Plaintiff alleges that

exclusions outlined above similarly constitute an adverse action relative to her claim for First Amendment retaliation." *Id.* at 26.

In Count XI (First Amendment Prior Restraint), Plaintiff alleges that the Code seeks "to restrain the speech and conduct of Council Members by prohibiting behavior deemed by the majority of Council Members as violating decorum, a failure to compromise, disparagement of other Council Members, making unwanted gestures, and other behaviors." *Id.* at 15. Plaintiff alleges that "Section 5.06 of the Code provides that a majority of Council Members may 'punish their members for cause,'" and further quotes the Code "that Council Members are subject to sanctions for violating the Code, including forfeiture of committee assignments or 'other privileges afforded by the Council.'" *Id.*

Further, Plaintiff alleges that the Council Rules "as applied through the September 13, 2024, Memorandum . . . constituted an unconstitutional prior restraint on Plaintiff's First Amendment rights by imposing vague and overbroad restrictions that precluded her from fulfilling her core responsibilities as an elected official." *Id.* at 27. Specifically, Plaintiff alleges that "[t]he Code as applied in the Memorandum prohibited 'derogatory remarks' and 'insinuations,' such as 'rubber stamping,' 'destroying democracy,' 'conflict of interest,' or 'abuse of power,' without clear definitions, allowing the Council majority to arbitrarily deem Plaintiff's speech as violating decorum." *Id.* By "prohibiting Plaintiff from using" those terms "without

objective standards," the Code constituted a prior restraint on Plaintiff's speech. *Id.* at 27-28.

### C. Council Rules and Memorandum of which this Court may take judicial notice

The City of Rochester has had its Rules of Procedure & Code of Conduct ("Rules" or "Council Rules") for the Rochester City Council before Plaintiff's election to the City Council. *See* Exhibit 1.[1] The Rules were in place the entirety of Plaintiff's tenure on the City Council, and the City Council most recently revised them on January 8, 2024. *See* Exhibit 2. These are the only Rules of Procedure or Code of Conduct that have been adopted and revised by the Rochester City Council.

Article 1 contains rules of procedure, including Rule 3, which covers the rules around remarks and debate. Rule 3C provides that "[m]embers of the council shall be courteous in their language and demeanor in the discussion, comments, or debate of any matter, and shall not engage in disorderly behavior, make personal

---

[1] All references to exhibits are Exhibits to the Declaration of Farah Famouri filed in support of this brief. This Court may consider the Rules because they were incorporated by reference and the contents of the Rules are alleged in the Proposed Second Amended Complaint. *See Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928, 931 n.3 (8th Cir. 2012) (noting that courts are typically constrained to the pleadings when ruling on a motion to dismiss, but the court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case ... without converting the motion into one for summary judgment."); *see also Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir. 2012) (noting that courts may specifically consider "documents whose contents are alleged in a complaint.").

comments, derogatory remarks, or insinuations in respect to any other member of the council, staff, or public." Ex. 2 at 6.

Article 2 of the Rules governs the City Council Code of Conduct, and includes four chapters: (1) Roles and Responsibilities; (2) Internal Council Conduct; (3) Council Conduct with City Staff; and (4) Council Conduct with the Public. Ex. 2 at 2.

The only reference to discipline provides that "[i]f a member of the council violates these rules, the presiding officer shall call such member to order, in which case such member shall be silent except to explain or continue in order . . . Additional discipline may include, but is not limited to, a verbal admonition, public reprimand, and expulsion from the meeting at which the conduct is occurring." Ex. 2 at 6. The Rules also provide for any member to challenge any such action. *See id.*

None of the quoted language from the Proposed Second Amended Complaint's "Code of Ethics" appears in the Rules that the City Council adopted. The Council Rules do not use the term "punish." There is no "Section 5.06 of the Code." *Compare* Ex. 2 at 1-2 *with* ECF No. 74 at 15, ¶ 22.

Plaintiff attached a September 13, 2024 Memorandum to the Mayor and City Council from the City Clerk and City Attorney in response to Plaintiff's request for clarification for what would be considered "derogatory remarks" or "insinuations" mentioned in Rule 3C of the Council Rules (the "Memo"). *See* ECF No. 74-1 at 1. In

that memo, the City Clerk and City Attorney provide examples regarding "what comments might be considered violations of Rule 3C *(noting again that this is ultimately a decision made by the Council body.)*" *Id.* (emphasis preserved). The Memo states that the City Clerk and City Attorney provided these examples "[i]n response to Councilmember Dennis's request for more details and *examples*[.]" *Id.* (emphasis added). The Memo states that specific phrases, "when repeated over and over or said without context," may be "possible violations." *Id.*

The Memo notes that the City Council was responsible for enforcement of the Rules because "the Council, acting as a unit, has final say on Rule interpretations." *Id.* at 1. The Memo also notes that this is particularly the case while in the middle of a City Council meeting, because "[d]ecisions during the meeting are made by the presiding officer and the body." *Id.*

The Memo also reminded the Council Members that if they "believe[d] others have made statements about her that could be considered a Rule 3C violation," then they had "a right to raise a 'point of order' if [she] believe[d] a rule violation is occurring," because all councilmembers have that right. *Id.* at 2.

## LEGAL ARGUMENT

Plaintiff may not amend her complaint without the court's leave. Fed. R. Civ. P. 15(a)(2). And there is no "absolute right to amend." *Ferguson v. Cape Girardeu Cnty.*, 88 F.3d 647, 650–51 (8th Cir. 1996). Here, this Court should deny Plaintiff's motion to amend because doing so would be futile as to all counts and would cause

undue prejudice as to the counts this Court previously dismissed and as to Keane. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (noting futility of duplicative and unchanged claims).

## I.    The Court should deny Plaintiff's Motion For Leave to File a Second Amended Complaint because the amendment would be futile.

Plaintiff's proposed amendment would be futile because the proposed amended complaint cannot survive a motion to dismiss under Rule 12(b)(6). *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014). Both of Plaintiff's first amendment claims fail to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Indeed, Plaintiff's claims do not rise above the "speculative level," *see Twombly*, 550 U.S. at 555, of "[t]hreadbare recitals," "labels and conclusions[,] or a formulaic recitation of the elements of a cause of action," are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

### A.    The Proposed Second Amended Complaint does not state a First Amendment Retaliation claim.

Plaintiff did not plead First Amendment retaliation sufficient to withstand a motion to dismiss. To successfully plead a First Amendment retaliation claim, a plaintiff must show that (1) the plaintiff engaged in some protected activity; (2) one or more government officials took some action that would chill a reasonable person

from continuing in the activity; and (3) there is a causal connection between the protected activity and adverse action. *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). But Plaintiff's allegations do not demonstrate that the conduct alleged would chill the speech of a person of ordinary firmness as measured by the standard applicable to elected officials, particularly in the context of applicable immunities; Plaintiff's speech was not chilled; and Plaintiff did not sufficiently allege causation.[2]

### 1. The alleged adverse actions would not chill the speech of an elected official.

When analyzing whether an alleged adverse action would chill the speech of a person of ordinary firmness from engaging in future First Amendment speech, *see Houston Comm. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, 142 S. Ct. 1253, 212 L. Ed. 2d 303 (2022), courts apply a heightened standard to public officials, requiring the conduct to entirely "prevent [the elected official] from doing his job." *Id.* at 479. Plaintiff seeks to avoid that reality by alleging that because the "Court previously found that exclusions from relevant workplace communications by Plaintiff was a plausible allegation of an adverse action ADA disability-related retaliation" so too do they "constitute an adverse action relative to her claim for First Amendment

---

[2] Although some of Plaintiff's allegations regarding her exercise of speech do not meet a motion to dismiss standard, Defendants do not raise that argument for the purposes of this opposition.

retaliation." ECF No. 74 at 26. Plaintiff is incorrect. Criticism will not meet the standard for an elected official because "[i]n this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Wilson*, 595 U.S. at 478 While the First Amendment protects the plaintiff, "it cannot be used as a weapon to silence other representatives seeking to do the same," particularly when "[e]veryone involved was an equal member of the same deliberative body." *Id.* at 478–79. While the First Amendment protects the speech of an elected official, it does not immunize her from the political fallout of what she says or how she says it. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir. 2010) (noting the First Amendment "does not succor casualties of the regular functioning of the political process").

The heightened standard applies for several reasons: (1) the adverse action is "a rather minor indignity" compared to the "prototypical plaintiff"; (2) "more is fair in electoral politics than in other contexts," and there is "little difference between what the [governing body's] internal vote against [the plaintiff] accomplished and what voters in a general public election might do if they too were dissatisfied by [the plaintiff's] advocacy"; and (3) the plaintiff "isn't the only party . . . whose interests implicate First Amendment concerns" because the other members "have a protected interest in speaking out and voting their conscience." *Kleis v. City of Becker,* Civ. No.

16–1005 (ADM/JSM), 2016 WL 4007573, at *3 (D. Minn. July 26, 2016) (citing *Blair*, 608 F.3d at 546).

Plaintiff claims five adverse actions: (1) "Prohibiting Plaintiff from direct communication with City staff, limiting her to virtual meetings with department heads, and requiring written submissions through the City Attorney"; (2) (2) "Banish[ed] [Plaintiff] from City Council Meetings"; (3) "Excluding Plaintiff from critical Council discussions and refusing to engage with her questions or motions"; (4) "Adopting a policy of refusing to second Plaintiff's motions and interrupting or refusing to recognize her during debates"; and (5) "Arbitrarily enforcing the Code of Ethics and Conduct's vague and overbroad prohibitions, as clarified in the September 13, 2024, Memorandum, to target Plaintiff's critical speech." ECF No. 74 at 17, 25-26. But Plaintiff's claimed actions were mere byproducts of the political process. *See, e.g., Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir. 1999) (noting that this prong is context-specific and that "[p]ublic officials may need to have a thicker skin than the ordinary citizen when it comes to attacks on their views."). These adverse actions are insufficient to meet the heightened requirements applicable to public officials.

Indeed, the political process dictates that other elected officials, such as Mayor Norton and Councilmember Keane, are not required by the First Amendment to engage in conduct with candidates whose speech or views they don't embrace.

Therefore, whether a councilmember wishes to engage with the Plaintiff's council work, including Council-Initiated Actions or motions, is that councilmembers prerogative—not conduct required by the First Amendment. Other circuits have acknowledged this. *See, e.g., Camacho v. Brandon*, 317 F.3d 153, 162 (2d Cir. 2003) (concluding that a city councilmember's aide could not bring a First Amendment retaliation claim for his dismissal, in part, because it would "subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials."); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions."). And the Ninth Circuit has held that retaliation against an elected official is largely not actionable when it is at the hands of her peers in the political arena. *See Blair*, 608 F.3d at 543. This Court should reach the same conclusion here.

Furthermore, the Rules existed before Plaintiff ran for office, and did not substantively change throughout her Council tenure. The Rules also applied to all councilmembers. Though Plaintiff alleges that Defendants "banned direct conversations with over nine hundred City employees," the Council Rules establish that no council member may have direct communications with City employees. *See* Ex. 2 at 6 (stating that "all interactions with staff members should flow through the city administrator").

Nor did the Memo alter anything about the Rules or Plaintiff's ability to do her job. As demonstrated by myriad Council Meeting Minutes that are publicly available,[3] Plaintiff consistently participated in discussion of agenda items and voted on motions. *See* October 21, 2024 City Council Meeting Minutes (available at: https://rochestermn.granicus.com/MinutesViewer.php?view_id=1&clip_id=4417&doc_id=2c1c3f8d-90aa-11ef-ab4b-005056a89546); November 4, 2024 City Council Meeting Minutes (available at: https://rochestermn.granicus.com/MinutesViewer.php?view_id=1&clip_id=4432&doc_id=0fafd10a-9bd8-11ef-ab4b-005056a89546) ; and November 18, 2024 City Council Meeting Minutes (available at: https://rochestermn.granicus.com/MinutesViewer.php?view_id=1&clip_id=4443&doc_id=715d09f8-a6b4-11ef-ab4b-005056a89546).

### 2.    Legislative and qualified immunities apply.

Furthermore, although the Proposed Second Amended Complaint states that the alleged adverse actions "include non-legislative, administrative, and procedural

---

[3] This Court may take judicial notice of Rochester City Council Meeting minutes and video archives under Federal Rule of Evidence 201, as the videos and minutes constitute information from a government website whose authenticity is beyond dispute. Fed. R. Evid. 201; *see, e.g., Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 n.24 (7th Cir. 2016) ("We may take judicial notice of the City Council's meeting minutes because they are a document in the public record."); *Stuart v. City of Scottsdale*, No. CV-17-01848-PHX-DJH (JZB), 2024 WL 1299643, at *1 n.4 (D. Ariz. Mar. 27, 2024) (taking judicial notice of city council meeting video archives).

measures," Plaintiff's allegations include actions that could only have been performed by a majority vote of the Rochester City Council. *See* ECF No. 74 at 26 ¶ 55. For example, the City Council as a body is the only entity that can enforce its Council Rules. *See* ECF No. 74-1. And the City Council is the only body that may engage in "motions," or "debates" and is the only body that can "second Plaintiff's motions," join her in a Council-Initiated Action, or enact a "policy". *Id.* ¶ 54. Accordingly, all such actions are entitled to "absolute legislative immunity." *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013) (quoting *Bogan v. Scott Harris*, 523 U.S. 44, 54 (1998)).

Additionally, the individual defendants are public officials and are entitled to qualified immunity. Qualified immunity shields a government official from suit when his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Mayor Norton and Councilmember Keane are entitled to qualified immunity unless the right asserted by Plaintiff was established "beyond debate." *Achcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

Here, reasonable officials would not understand that Mayor Norton and Councilmember Keane's conduct would violate a "clearly established" right. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Indeed, case law

suggests that other elected officials do not violate the First Amendment by engaging in the political process as Plaintiff alleged. *See, e.g., Blair*, 608 F.3d at 541 (finding public defendants did not retaliate against an elected school board member when the board removed him as vice president after being critical of the district's superintendent because "the First Amendment doesn't shield public figures from the give-and-take of the political process").

### 3. Plaintiff's speech was not chilled.

Furthermore, contrary to her allegations, Plaintiff's speech was not, in fact, chilled. The Eighth Circuit has held that this Court may consider a plaintiff's own actions as evidence of whether conduct would have chilled a reasonable person. *See Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). For example, in *Kleis v. City of Becker*, a city council censured its mayor multiple times and removed him from serving on the golf committee in direct response to comments he made that were critical of the city's golf course. 2016 WL 4007573 at *1. For a period of one year, the city council voted that the mayor was: (1) prohibited from having contact with specific individuals; (2) prohibited from discussing issues regarding the golf course with any council member, city administrator, or the golf course committee; (3) prohibited from serving on the golf committee; and (4) prohibited from making any decision as it relates to the employment of city employees. *Id.* This Court held that this censure, which included committee removal, did not violate the mayor's First Amendment rights. *Id.* at *3. The court likewise held that the plaintiff's

allegations, including his removal from the golf committee, would not chill a person of ordinary firmness. *Id.* at *2. The *Kleis* court found it significant that the mayor "continued to speak about the golf course" and concluded that a reasonable elected official would not have been chilled by the censure. *Id.* at *3.

Similarly, here, Plaintiff's speech was not in fact chilled by the Rules or the Memo. Video of the City Council Meeting following the September 13, 2024 Memo plainly demonstrates that Plaintiff was afforded the same, if not more, speaking time on the dais than the other members of the City Council, and that Plaintiff was able to engage in debate, make and join motions, and vote. In fact, Plaintiff complained about the September 13, 2024 Memo and the Council's "subjective discipline situations that [Plaintiff thought] infringe[d] on the First Amendment" at the September 23, 2024 City Council Meeting, during the "Other Business" portion of the agenda. *See* September 23, 2024 City Council Meeting at 1:29:29 (video available at: https://rochestermn.granicus.com/player/clip/4373?view_id=1&redirect=true). Plaintiff spoke for around four minutes on this topic before Acting Council President Wahl cautioned Plaintiff against making claims of constitutional violations and Councilmember Palmer reminded Plaintiff that the Council Rules were passed by the whole body. *Id.* at 1:33:10. Plaintiff continued to speak on the topic, including after being reminded that she has been speaking for 10 minutes on the item. *Id.* at 1:38:01.

This Council Meeting is illustrative that the guidance and examples Plaintiff received through the memorandum did not chill Plaintiff from criticizing the City or expressing her opinions while on the dais. While a court takes all factual allegations in the complaint as true on a motion to dismiss, the court is not obligated "to accept a version of events that is 'blatantly contradicted by the record.'" *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023) (citation omitted). Accordingly, Plaintiff has failed to demonstrate this prong of the prima facie case for First Amendment retaliation.

### 4. Plaintiff's conclusory allegations do not establish a causal connection between the protected speech and the alleged adverse actions.

Furthermore, Plaintiff's allegations do not sufficiently establish a causal connection between the Defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.* at 260. Indeed, Plaintiff cannot show that the "protected conduct played a part, substantial or otherwise," in the Defendants' wrongdoing, *Nieves v. Bartlett*, 587 U.S. 391, 399,

139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019), because she cannot show a temporal connection between the two.

Plaintiff's claim of causal connection is conclusory and vague. Plaintiff's claim of causal connection is contained in its entirety in Paragraph 58 of the Proposed Second Amended Complaint: "A causal connection exists between Plaintiff's protected speech and the adverse actions, evidenced by the temporal proximity between her objections (e.g., February 27, 2023, meeting and ongoing accommodation requests) and the imposition of restrictions, exclusions, and rule enforcement (e.g., March 6, 2023, censure-related restrictions and September 13, 2024 Memorandum)." ECF No. 74 at 26, ¶ 58.

To the extent Plaintiff's allegations attempt to connect the February 27, 2023 meeting and the March 6, 2023 censure, this court has already determined that the censure is legislatively immune from suit. *See* ECF No. 38 at 12-14. And if Plaintiff's causal connection is between the February 27, 2023 meeting and the September 13, 2024 Memorandum, too much time has passed to find an inference of causality. In fact, the Eighth Circuit has recognized that the greater the passage of time between the protected speech and the adverse action, the weaker the inference of retaliation becomes. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). "The inference vanishes altogether when the time gap . . . is measured in months." *Id.* Put another way, Plaintiff claims the allegedly adverse actions were caused by her

protected speech despite over a year of time passing between Plaintiff's first claimed objection and the imposition of Defendants' restrictions. There is no inference of retaliation when the alleged adverse action is so distant from the protected speech— simply too much time has passed. *See Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 643, 645 (8th Cir. 2009) (holding that a seven-month gap was not close enough to establish causation). Because Plaintiff has not shown a causal connection, Plaintiff has failed to make a prima facie case to support this prong.

In conclusion, the Proposed Second Amended Complaint filed by Plaintiff fails to state a claim for First Amendment Retaliation, and amendment permitting that claim would be futile.

**B.    The Proposed Second Amended Complaint does not state a claim for First Amendment Prior Restraint.**

Plaintiff's First Amendment Prior Restraint Claim is also insufficient and amendment would be futile. The United States Supreme Court has defined prior restraint to be "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) (emphasis preserved) (internal quotation marks omitted).

Plaintiff claims that the Council Rules "as applied through the September 13, 2024, Memorandum . . . constituted an unconstitutional prior restraint on Plaintiff's First Amendment rights by imposing vague and overbroad restrictions that

precluded her from fulfilling her core responsibilities as an elected official." ECF No. 74 at 27, ¶ 62. Plaintiff appears to challenge the Rules themselves, as well as the Memo. Regardless, Plaintiff's allegations are insufficient to state a claim of prior restraint for three reasons. First, Plaintiff did not plead any facts regarding prior restraint against either of the individual defendants. Second, neither the Council Rules nor the Memo are "administrative or judicial order[s]." And third, neither forbids communication or speech.

### 1.    Plaintiff plead no facts to support claims against the individual defendants.

As an initial matter, Plaintiff did not allege any facts to support a claim of First Amendment prior restraint against the individual defendants. Plaintiff merely stated in conclusory fashion, "By their actions, Norton and Keane have in numerous respects violated the provisions of 42 U.S.C. § 1983, all to Dennis's damages." ECF No. 74 at 28, ¶ 68. This falls well short of the particularized pleading necessary to sustain a claim against the individual defendants. *See U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009) (affirming the district court's denial for leave to amend complaint because proposed amended complaint did not plead with particularity the details of the claim against the defendant). Accordingly, this count does not state a claim against Mayor Norton and Councilmember Keane, and amendment would be futile.

2.    **The Council Rules and the September 13, 2024 Memorandum are not administrative or judicial orders.**

For the prior restraint claim against the City, the Supreme Court has carefully limited the prior restraint doctrine to administrative and judicial orders. Classic examples of these are "[t]emporary restraining orders and permanent injunctions," which are "court orders that actually forbid speech activities." *Alexander*, 509 U.S. at 550. These orders tend to "forbid [a party] from engaging in any expressive activities in the future," or "require him to obtain prior approval for any expressive activities." *Id.*

The Council Rules are not an administrative or judicial order. The Council Rules do not provide sanctions, and only states that "If a member of the council violates these rules, the presiding officer shall call such member to order, in which case such member shall be silent except to explain or continue in order . . . Additional discipline may include, but is not limited to, a verbal admonition, public reprimand, and expulsion from the meeting at which the conduct is occurring." Ex. 2 at 6. The Rules also provide for any member to challenge any such action. *See id.*, Rule 3E. Although it was a legislative document that was adopted by the City Council, that does not make the Council Rules into the type of administrative order contemplated to "actually forbid speech activities." *Alexander*, 509 U.S. at 550.

Similarly, the Memo was just that—a memorandum. The Memo itself established no sanctions, did not require Plaintiff to obtain approval before using

any particular phrases, and instead reiterated that any violation would be handled by the City Council. The Memo in no way constituted either an administrative or judicial order. Accordingly, Plaintiff has failed to state a claim for prior restraint under the First Amendment. *See, e.g., Minn. Voters All. v. Ellison*, 749 F. Supp. 3d 983, 991 (D. Minn. 2024) (dismissing plaintiff's prior restraint claim because the challenged statute was not an administrative or judicial order).

### 3. The Council Rules and the Memo did not forbid speech.

Plaintiff's prior restraint claim fails for a separate, independent reason: the Council Rules and Memo did not forbid speech. Indeed, the City Council as a public body must be able to govern itself. Minnesota law provides that a city council "may preserve order at its meetings . . . [and] shall have power to regulate its own procedure." Minn. Stat. § 412.191, subd. 2. Minnesota law is consistent with the U.S. Constitution, which provides that the House as a governing body "may determine the Rules of its Proceedings, punish its Members for disorderly [behavior,] and . . . expel a Member." U.S. Const. Art. 1 § 5, cl. 2; *accord* Minn. Const. Art. IV, Sec. 7. While the Rules govern conduct, the Rules do not forbid speech.

Further, the Memo does not constitute an order that forbade Plaintiff from engaging in any expressive activities in the future. The Memo did not forbid any particular speech, nor did it forbid any member of the Council from using any particular phrases. Instead, the Memo stated that repeated use of such phrases could be considered possible violations of Rule 3C under specific circumstances. "The

repetition of these types of remarks, *particularly after they have been addressed, disproven, or are just factually inaccurate on their face* is also a key part of determining whether they violate Rule 3C." *Id.* at 2 (emphasis added). But, more importantly, the Memo neither prohibited nor imposed a punishment for any Councilmember's use of those phrases. Instead, it referred back to the Rules, which could be enforced only through legislative action.

Additionally, Plaintiff specifically "asked for clarification on what might be considered 'derogatory remarks' or 'insinuations' under Rule 3C" at the Monday, September 9, 2024 City Council meeting, and the specific phrases in the Memo were included with the guidance "[i]n response to Councilmember Dennis's request for more details and examples[.]" ECF No. 74-1 at 1.

## II. To the extent the Proposed Second Amended Complaint realleges the previously dismissed counts, amendment would be futile as this Court already dismissed those claims.

Plaintiff's Proposed Amended Complaint includes Counts that this Court previously dismissed. To the extent Plaintiff is asking this Court to revisit its prior dismissal of those claims, this Court should decline the invitation: Plaintiff fails to state a claim for the same reasons as argued in Defendant's Motion to Dismiss the Amended Complaint, ECF Nos. 17-23, and as adopted by this Court through the Report and Recommendation and Dismissal Order.

III.    **The Court should deny Plaintiff's Motion for Leave to File a Second Amended Complaint because of undue prejudice to Defendants.**

Finally, Defendants will suffer undue prejudice if this Court permits an amendment to revive previously dismissed claims against any of the defendants, or to assert any new claims against Councilmember Keane. "Simply filing a timely motion to amend does not preclude a finding that the non-moving party would be prejudiced." *United States v. Boston Sci. Corp.*, No. 11-cv-2453 (JNE/SER), 2018 WL 5617565, at *6 (D. Minn. Oct. 30, 2018). This Court dismissed Councilmember Keane from this suit four months ago, following the Order Adopting this Court's Report & Recommendation. ECF Nos. 38, 51. It is prejudicial to attempt to rejoin a previously-dismissed defendant. *See Alholm v. American S.S. Co.*, 167 F.R.D. 75, 77 (D. Minn. 1996) (denying motion for leave to rejoin defendants). Similarly, to the extent that the Plaintiff is attempting to revive dismissed claims, this too is unduly prejudicial to the Defendants to re-litigate claims that have not been revised in any way to cure the deficiencies.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Second Motion to Amend Complaint.

Dated:  July 7, 2025

**GREENE ESPEL PLLP**

_s/Farah Famouri_

Jenny Gassman-Pines, Reg. No. 0386511
Erin Emory, Reg. No. 0401215
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jgassman-pines@greeneespel.com
eemory@greeneespel.com
ffamouri@greeneespel.com
(612) 373-0830

Attorneys for Defendants