IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis, | Case No. 24-cv-00426 (PJS/DLM) |
| Plaintiff, | **DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| v. | |
| City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester, | |
| Defendants. | |

## INTRODUCTION

This Court should deny Plaintiff's motion to amend because she missed the Court-ordered deadline, lacks standing to seek the relief she now requests, and would fail on the merits anyway. Ten days after the July 1, 2025 deadline to file motions to amend, Plaintiff filed a *second* version of her proposed amended complaint seeking an entirely new remedy—declaratory relief—without explanation or good cause for the delay.[1] But as a former Rochester City Councilmember who lost her primary election, Plaintiff has no standing to challenge rules that apply only to current councilmembers, rendering her belated amendment futile. And even if she had standing, her new and untimely declaratory judgment

---

[1] Defendants do not challenge Plaintiff's decision to withdraw her request to file a First Amendment Prior Restraint claim.

request would fail because the Council Rules and Memo providing guidance are permissible time, place, and manner restrictions on speech during legislative proceedings. Furthermore, as argued in Defendants' memorandum in opposition to Plaintiff's motion, Plaintiff's First Amendment retaliation claim cannot meet the objective standard for chilling speech, and Defendants' actions are protected by legislative immunity. This Court should deny Plaintiff's motion to amend.

## BACKGROUND

On April 24, 2025, the parties submitted their Rule 26(f) report, in which they proposed to the Court a July 1, 2025 deadline by which the parties were required to move to amend the pleadings. ECF No. 64 at 11. On May 1, 2025, the Court adopted the parties' joint proposal, ordering the parties to file motions to amend the pleadings by July 1, 2025. ECF No. 70 at 4. Local Rule 15.1 requires motions to amend to be accompanied by a copy of the proposed amended pleading and a version of the proposed amended pleading that shows how the proposed amended pleading differs from the operative pleading through redlining. Local R. 15.1(b). Local Rule 7.1 requires motions to be accompanied by a memorandum, and this Court's Scheduling Order permitted reply memoranda to be filed by a moving party if the opposing party raised futility. ECF No. 70 at 4-5. Plaintiff did not follow the rules or this Court's order, but this Court permitted Plaintiff to file a combined opening

and reply memorandum after the deadlines.[2] ECF No. 87. This Court's order did not permit Plaintiff to file any other version of the proposed amended pleading. *Id.*

On July 11, 2025, 10 days after the July 1, 2025 deadline to file a motion to amend her complaint, Plaintiff filed a second version of a Proposed Second Amended Complaint. ECF No. 82-1. The second contained substantive changes. ECF No. 82. In particular, Plaintiff's second version of her Proposed Second Amended Complaint withdraws the prior restraint claim but also seeks to add an entirely new remedy: declaratory relief. ECF No. 82-1 at 22-23. Plaintiff seeks "declaratory relief that the City of Rochester's Code of Ethics and Conduct . . . and the September 13, 2024 Memorandum, are unconstitutional as vague, overbroad, and as impermissible content- and viewpoint-based restrictions on protected speech." *Id.* Plaintiff also substituted "content-based" for all factual references to "prior restraint." *Compare* ECF No. 74 ¶ 28 ("operates as a prior restraint by imposing restrictions") *with* ECF No. 82-1 ¶ 28 ("imposes vague and overbroad content-based restrictions").

Plaintiff's second version of the proposed Second Amended Complaint did not remove or clarify her position related to the claims previously dismissed by this Court, nor did she address the dismissed claims in her memorandum. Plaintiff did

---

[2] Although Plaintiff explained that she did not file an opening memorandum because she did not know about a thirteen-year-old amendment to the local rules, she did not explain why she did not file her reply brief timely under the Court's Scheduling Order. ECF No. 83 at 1-2.

not attach the "City of Rochester's Code of Ethics and Conduct for Elected and Appointed Officials," nor clarify what document she quotes in either version of the proposed amended complaint.

## ARGUMENT

### I. This Court should reject Plaintiff's effort to seek declaratory relief as both untimely and futile.

This Court should deny Plaintiff's motion to amend her complaint to add declaratory relief through her untimely filed second version of the Proposed Second Amended Complaint. First, Plaintiff did not establish good cause for her untimely addition and should not be given the opportunity for yet another attempted amendment. Second, amendment would be futile because Plaintiff lacks standing to seek declaratory relief as a former member of the Rochester City Council. Third, amendment would also be futile because the Council Rules constitute permissible time, place, and manner restrictions on speech to effectuate City Council meetings.

### A. Plaintiff's attempt to add declaratory relief is untimely and she did not establish good cause for its filing.

This Court should reject Plaintiff's effort to seek a new remedy through her untimely filing of a second version of the Proposed Second Amended Complaint. The Pretrial Scheduling Order set a deadline of July 1, 2025, to amend the Complaint. ECF No. 70 at 4. Although the Court permitted Plaintiff to file a combined opening and reply memorandum in support of her motion to amend, it did not permit Plaintiff to file another version of the proposed amended complaint,

nor did it permit Plaintiff to move to add claims or remedies after the July 1, 2025 deadline. Despite the clear deadlines and orders from this Court, on July 11, 2025, Plaintiff filed the second version of her proposed Second Amended Complaint that added new, substantive allegations. ECF No. 82-1. The Pretrial Scheduling Order does not permit Plaintiff to add a new claim or remedy in a reply brief and exhibit two weeks after the deadline.

Plaintiff made no effort to explain why she has "good cause" to add new claims or remedies outside of the Court-ordered deadlines. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Indeed, Plaintiff provided no explanation whatsoever regarding why she did not include declaratory relief in the first version of her Proposed Second Amended Complaint, or what changed in the two weeks that followed. Failing to show good cause alone warrants denial of an untimely motion to amend. *See Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2008); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (noting that Rule 16(b)'s good-cause standard "is not optional"). This Court should, therefore, deny Plaintiff's untimely request to add declaratory relief.

### B. Plaintiff's untimely amendment would be futile because she does not have standing to seek declaratory relief.

Apart from being untimely, Plaintiff's attempt to add declaratory relief fails for another independent reason: amendment would be futile because she does not

have standing to seek declaratory relief. Plaintiff lost the primary election for her City Council seat on August 13, 2024, and a new City Council member took office in 2025.[3] Plaintiff is not currently a member of the Rochester City Council. She may not, therefore, seek declaratory relief regarding the September 13, 2024 Memorandum and Council Rules.

To demonstrate standing, Plaintiff must demonstrate three elements: "(1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). Further, Plaintiff "must establish standing for each type of remedy sought, including declaratory and injunctive relief." *Digit. Recognition Network v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015).

The Eighth Circuit has held that "declaratory relief is limited to *prospective* declaratory relief," *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019) (citation omitted) (emphasis preserved), but Plaintiff cannot establish

---

[3] This Court may take judicial notice of the election results, available at the Minnesota Secretary of State's website:https://electionresults.sos.mn.gov/results/Index?ErsElectionId=169&scenario=LocalMunicipality&FipsCode=54880&show=Go. *See Pavek v. Simon*, 467 F. Supp. 3d 718, 731 n.4 (D. Minn. 2020) ("The Court takes judicial notice of Minnesota's election results published by the Minnesota Secretary of State on its website.").

entitlement to prospective relief or a redressable injury because she is no longer a member of the City Council. Indeed, her request will not "define the legal rights and obligations of the parties in anticipation of some future conduct." *Id.* Declaratory relief is unavailable because Plaintiff has no cognizable interest in determining the constitutionality of the Council Rules. *See, e.g., Lackie v. Minn. State Univ. Student Ass'n, Inc.*, Case No. 24-cv-1684 (LMP/LIB), 2025 WL 416764, at *2-4 (D. Minn. Feb. 6, 2025) (dismissing former student's request for lack of standing because she was no longer a student). Unlike the plaintiff in *Griffin v. Bryant*, the only case Plaintiff cites to support her entitlement to declaratory relief,[4] Plaintiff is not at risk of a "recurring injury" because the Memo and Council Rules apply only to Council Members, not to members of the public. *Cf. Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1176 (D.N.M. 2014) (concluding that the plaintiff's injury was redressable because the invalidation of the regulation would protect the plaintiff from recurring injury).

Plaintiff also lacks standing to assert the rights of third-party elected officials or voters generally, and fails to plead facts sufficient to support third-party standing. The District of Maryland's opinion in *Dyer v. Maryland State Bd. of Ed.*, 187 F. Supp. 3d 599 (D. Md. 2016), is informative. In that case, a former member of a county

---

[4] Plaintiff repeatedly cites to pages 1123 and 1124, but *Griffin v. Bryant* begins on page 1139 and does not include pages 1123 or 1124. *See Griffin v. Bryant*, 30 F. Supp. 3d 1139 (D.N.M. 2014). Plaintiff also appears to cite *Griffin* through reference to the citation 2023 WL 8892483. That citation does not link to *Griffin* on Westlaw, nor does it link to any other case.

board of education brought an action against the board seeking declaratory relief stemming from alleged violations of his due process, equal protection, and First Amendment rights in connection with his removal from office. *Id.* at 605-07. The *Dyer* Court found that declaratory relief was inappropriate because plaintiff was no longer a member of the board and any declarations "would have no concrete remedial effect, because . . . Plaintiff was voted out of office by the . . . electorate." *Id.* at 609-610. The court rejected Plaintiff's argument that the removal process "constitutes an ongoing intimidation and suppression of political speech of currently serving duly elected members of local boards of education," and that the process provided standing to him as a voter because the process "constitutes a nullification of a properly conducted election." *Id.* at 610. The court concluded that the plaintiff had no standing to assert the rights of third-party elected officials or "voters" generally. *Id.* Here, too, the electorate voted Plaintiff out of office. As in *Dyer*, Plaintiff lacks standing to assert the rights of third-party elected officials or voters generally. *See Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (noting plaintiff may litigate the interests of a third party where (i) the plaintiff has Article III standing in his or her own right, (ii) the plaintiff has a "close relation to the third party," and (iii) there is "some hindrance to the third party's ability to protect his or her own interests."); *see also Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978) ("[W]e

have declined to grant standing where the harm asserted amounts only to a generalized grievance shared by a large number of citizens in substantially equal measure.").

### C.    Even if Plaintiff had standing, the Council Rules and Memo are narrowly tailored, permissible time/place/manner restrictions.

Finally, Plaintiff's proposed amendment would be futile even if she had timely filed it and she had standing, because the Council Rules and Memo, on their face, constitute narrowly tailored, permissible time, place, and manner restrictions.

The right to free speech enshrined in the First Amendment is not without limitation and is "subject to reasonable time, place, and manner restrictions." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). Such restrictions depend on the nature of the forum. City Council meetings are generally considered a "limited public forum," wherein the government has the right to impose certain restrictions on speech, such as who is allowed to speak, the amount of time for speech, or the topics of speech. *See Arkansas Educ. Television Comm. v. Forbes*, 523 U.S. 666, 678, 118 S. Ct. 1633, 140 L. Ed. 2d 875 (1998). The City can enforce regulations of the time, place, and manner of expression or communication at its City Council meetings so long as its regulations are content-neutral, are narrowly tailored to serve a significant government interest, and leave open alternative channels of communication. *Heffron*, 452 U.S. at 648.

First, the Council Rules[5] and the Memo are content-neutral. The Council Rules of Procedure and Code of Conduct are generally aimed at conduct, not speech. Rule 3C arguably touches on speech or expression by addressing *how* councilmembers engage with each other:

> [Councilmembers] shall be courteous in their language and demeanor in the discussion, comments, or debate of any matter, and shall not engage in disorderly behavior, make personal comments, derogatory remarks, or insinuations in respect to any other member of the Council, any City teammate, or the public.

ECF No. 80-2 at 6. Courts have held that this is not a viewpoint-based regulation. "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). That is, "[a] regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* The City Council's objectives make clear that the purpose of the Council Rules is unrelated to the content of a speaker's message. Rather than

---

[5] Plaintiff concedes in her memorandum that the September 13, 2024 Memorandum interprets "the Code of Conduct, Rule 3C." ECF No. 81 at 17. Her concession doesn't save either version of her proposed amended complaint, because neither version refers to "Rule 3C;" instead, Plaintiff's versions of the proposed Second Amended Complaint refer to "Section 5.06 of the Code." ECF Nos. 82-1 at ¶ 23, 74 at ¶ 23. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) (citation omitted).

focusing on what City Councilmembers say, the Council Rules focus on the manner in which they say it.

Plaintiff's reliance on *Griffin v. Bryant* is misguided and the case is easily distinguished.[6] The *Griffin* Court determined that the rule in that case related to "any negative mention . . . of any Village personnel, staff, or of the Governing Body," was viewpoint-based because the prohibition of "any negative mention" "permits praise and neutral feedback, but not criticism, of both government employees, and worse, the Governing Body itself." 30 F. Supp. 3d at 1173. But in critiquing the "negative mention" rule in *Griffin*, the court acknowledged that a "ban on rude or slanderous remarks," or a "proscription against becoming abusive to the board," were "[l]ess burdensome alternatives [that] would achieve this end just as effectively." *Id.* at 1187. Rule 3C here much more closely resembles those permissible alternatives than the rule articulated in *Griffin*.

---

[6] Citing to *Griffin*, Plaintiff argued that "[e]nforcement is similarly administrative rather than legislative: here, the City Clerk and City Attorney impose restrictions without council vote." ECF No. 81 at 17. First, this argument mischaracterizes *Griffin*, in which the court did not discuss administrative enforcement. Second, the Council Rules and Memo themselves contradict Plaintiff's factual allegation, making clear that only the Council may discipline another if they violate the rules, and provide all members the right to challenge any action or ruling by the presiding officer or member, ECF No. 80-2 at 6, and explicitly stating, "this is ultimately a decision made by the Council body," because "the Council, acting as a unit, has final say on Rule interpretations." ECF No. 74-1 at 1.

Like the Council Rules, the Memo is not a viewpoint-based restriction. It does not prohibit any particular speech or prevent any Councilmember from using specific phrases. Instead, it states that repeated use of such phrases *could,* under certain circumstances, be considered a potential violation of Rule 3C. "The repetition of these types of remarks, *particularly after they have been addressed, disproven, or are just factually inaccurate on their face* is also a key part of determining whether they violate Rule 3C." ECF No. 74-1 at 2 (emphasis added). More importantly, however, the Memo neither prohibited nor imposed any punishment for a Councilmember's use of those phrases. Instead, it referred back to the Council Rules, which may be enforced only through legislative action.

Second, the Council Rules and Memo are narrowly tailored to serve a significant government interest. "Narrow tailoring" does not mean that the government must use the least restrictive or least intrusive means to achieve its end; rather, in this context, the requirement is satisfied so long as the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *U.S. v. Albertini*, 472 U.S. 675, 689, 105 S. Ct. 2897, 86 L. Ed. 2d 536 (1985).

The Council Rules and Memo are intended to enable the City Council to fulfill its substantial interest in conducting orderly and efficient meetings, and ensuring that it has adequate time to hear from the individuals over whom it has jurisdiction.

There is a significant government interest in a legislative body enforcing its own rules. *See Davis v. Hennepin Cnty.*, Civil No. 08-5320 (JNE/AJB), 2010 WL 1507618, at *16 (D. Minn. Mar. 10, 2010) (stating there is a legitimate government interest in ensuring city council meetings are efficiently conducted) (citation omitted).

Further, courts have acknowledged the discretionary enforcement of legislative bodies, as "it is well-accepted principle of law that legislative bodies are not bound by their own rules of procedure. . . . Such rules are created by the legislative body to insure [sic] the orderly conduct of business and the same body which makes them can also waive or simply disregard them at pleasure." *Mobley v. Tarlini*, 641 F. Supp. 2d 430, 434 n.2 (E.D. Penn. 2009) (quoting *State ex rel. Todd v. Essling*, 128 N.W.2d 307, 318 (Minn. 1964)).

Third, the Council Rules and Memo leave open ample alternative channels of communication. Every member of the Rochester City Council could say whatever they wanted from the dais, unless the member repeats "derogatory remarks or insinuations" "particularly after they have been addressed, disproven, or are just factually inaccurate on their face." ECF Nos. 80-2 at 6, 74-1 at 1.

The Council Rules and Memo do not prohibit respectful disagreement or inhibit complaints. Rather, they include the type of time, place, and manner restrictions that courts have held as permissible. *See, e.g., Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433-34 (6th Cir. 2009) (upholding policy which gave

presiding officer "the authority to terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole" was a valid reasonable manner restriction); *Scroggins v. City of Topeka, Kan.*, 2 F. Supp. 2d 1362, 1372 (D. Kan. 1998) (upholding a provision that speakers at a city council meeting may not "mak[e] personal, rude or slanderous remarks, or . . . become[] boisterous, while addressing the Council" as a reasonable manner restriction).

## II.  Amendment to add a First Amendment Retaliation Claim would be futile.

Plaintiff's proposed First Amendment Retaliation Claim (regardless of version) would be futile because the proposed amended complaint cannot survive a motion to dismiss under Rule 12(b)(6), *see Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014), because she cannot meet the standard for chilling speech and because the Defendants' actions are protected by legislative immunity.

### A.  Plaintiff's First Amendment Retaliation claim fails to state a claim because she cannot meet the standard for chilling speech.

Plaintiff's arguments in her combined memorandum cannot save her First Amendment claim because (1) she has not demonstrated that the adverse actions would chill the speech of a person of ordinary firmness; (2) she cannot change the standard from an objective one to a subjective one; and (3) Justice Jackson did not urge lower courts to change their analysis in her non-precedential dissent in *Libby v. Fecteau*, as Plaintiff contends.

14

### 1.    Plaintiff has not demonstrated that the adverse actions would chill the speech of a person of ordinary firmness.

Plaintiff attempts to evade the standard of whether an alleged adverse action would chill the speech of a person of ordinary firmness from engaging in future First Amendment speech by identifying inapposite caselaw and ignoring the myriad cases articulating the long history of legislative bodies governing themselves.

For example, Plaintiff relies on facts that are materially different from this case and mischaracterizes the court's analysis in *Temple v. Lower Elkhorn Nat. Res. Dist.*, No. 4:23-cv-3198, 2023 WL 8934916 (D. Neb. Dec. 27, 2023). The *Temple* Court focused its analysis on whether the "sanction is a common form of discipline imposed by a political body on its own members," and if the sanction is common, "that sanction is unlikely to chill a person in Temple's position from engaging in future First Amendment activity." *Id.* at *4. The sanctions considered by the *Temple* Court are materially different from those alleged here. In *Temple*, the court concluded that the board's actions were unlawful because the board purported to prevent reimbursements afforded by Nebraska law, which could not be abrogated. *Id.* at *4-5. In contrast, here Plaintiff did not allege that the Defendants engaged in any actions that were explicitly required by Minnesota law. Instead, the alleged adverse actions were either regular workings of the democratic process, or have been common sanctions against councilmembers for disruptive activity.

The *Temple* Court reiterated that "Temple, as an elected official, is expected to shoulder 'a degree of criticism' about her public service from her peers." *Id.* at *4. Accordingly, the court determined that removal from committees was "a common sanction employed by political bodies," and it did not "infringe on the benefits and privileges of her office," because Temple could "still vote on all matters," and could "engage in discussions and represent her constituents' interests." *Id.* at *6. Similarly, here, every alleged adverse action against Plaintiff was a common sanction employed by political bodies, and did not infringe on the benefits and privileges of her office because Plaintiff was able to vote, engage in discussions, and represent her constituents' interests. *See* Minn. Stat. § 412.191, subd. 2 (A city council "may preserve order at its meetings . . . [and] shall have power to regulate its own procedure."); U.S. Const. Art. 1 § 5, cl. 2 (The House as a governing body "may determine the Rules of its Proceedings, punish its Members for disorderly [behavior,] and . . . expel a Member."); *accord* Minn. Const. Art. IV, Sec. 7; *see also Monserrate v. New York State Senate*, 599 F.3d 148, 156 (2d Cir. 2010) ("[E]very legislative body in which is vested the general legislative power of the state, has the implied power to expel a member for any cause which it may deem sufficient.") (citation omitted).

16

Further, as argued in Defendants' initial memorandum, the Council Rules and the Memo did not in fact chill Plaintiff's speech at the City Council meetings following the September 13, 2024 Memo. *See* ECF No. 79 at 17-19.

### 2. The standard is that which would chill the speech of a person of ordinary firmness, not a person with ADHD.

Plaintiff seeks to avoid the standard imposed by the First Amendment for chilling speech by blurring the distinction between First Amendment law and the Americans with Disabilities Act. In particular, Plaintiff asks this Court to "take into account Plaintiff's known disability and her formally submitted accommodation requests," arguing that "certain procedural restrictions" are not benign when applied "to an elected official with ADHD," because "even otherwise permissible measures may rise to the level of an adverse action due to their specific impact." ECF No. 81 at 9. Put another way, Plaintiff argues that the standard the Court should apply is not that which would chill the speech of a reasonable person, but instead that which would chill the speech of a person with ADHD.

Plaintiff provided no support for this argument because she cannot do so. To find otherwise would contradict both First Amendment and disability-discrimination caselaw. The test for whether a person of "ordinary firmness" would be deterred from speaking out is well-established and "designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir.

2003). "The test is an objective one, not subjective. *The question is not whether the plaintiff herself was deterred*[.]" *Id.* at 729 (emphasis added).

Further, Plaintiff provides an example of a "core function" of her office as "the ability to communicate in real time or interact directly with staff." ECF No. 81 at 9-10. This cannot be a "core function" of her office because no city councilmember had that ability. *See* ECF No. 80-2 at 15 ("[A]ll interactions with staff members should flow through the City Administrator . . . to ensure that staff resources are allocated in accordance with overall Council priorities.").

Plaintiff's theory thus fails on two levels: it seeks to subjectively redefine an objective constitutional standard, and her example elevates a non-existent "core function" that was never permitted for any councilmember to constitutional significance.

### 3. Plaintiff misconstrued Justice Jackson's dissent to the majority's grant of a preliminary injunction in *Libby v. Fecteau*.

Finally, Justice Jackson did not urge lower courts to alter the standard for evaluating a First Amendment adverse action in her nonprecedential dissent in *Libby v. Fecteau*, 605 U.S. ----, 145 S. Ct. 1378 (2025) (Jackson, J. dissenting). In that case, Justice Jackson would deny the application for a preliminary injunction[7]

---

[7] Plaintiff ignores the procedural posture of this case and argues that "Here, neither condition ["critical and exigent circumstances" where the right to relief is "indisputably clear"] is met." ECF No. 81 at 15. The only reason Justice Jackson

pending appeal. *Id.* at 1378-79. While Plaintiff states that Justice Jackson "forcefully urges that lower courts be allowed to fully address the complex constitutional issues raised," ECF No. 81 at 15, in reality, Justice Jackson posed a series of hypothetical questions that "[t]his Court has *neither addressed nor answered*," including "What are the limits on a state legislature's ability to bind its members to ethics rules?" and "Does a federal court have the power to enjoin state representatives from enforcing a state legislature's ethics rules?" 145 S. Ct. at 1379-80 (emphasis added). Justice Jackson concluded that "*in the absence of binding precedent on any of these issues,* [the applicant's] right to relief is not clear, let alone indisputably so." *Libby*, 145 S. Ct. at 1380 (emphasis added). This court should not apply the conditions for injunctive relief as the standard for determining a motion for leave to amend nor alter its analysis based on Justice Jackson's dissent, as Plaintiff suggests.

**B.    Legislative immunity protects Defendants' actions.**

Plaintiff's proposed First Amendment Retaliation claim is also futile because legislative immunity protects Defendants' actions. Legislative actions are entitled to absolute legislative immunity. *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013). Legislative immunity attaches to all actions taken in the sphere of legitimate

---

discussed "critical and exigent circumstances," is because that is the standard for injunctive relief. *Libby*, 145 S. Ct. at 1378-79 ("We have long recognized that this injunctive relief is appropriate only when 'critical and exigent circumstances' exist necessitating intervention 'in aid of our jurisdiction,' and the applicants' entitlement to relief is 'indisputably clear.'").

legislative activity, and the "hallmarks of traditional legislation . . . reflect[] a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Bogan v. Scott Harris*, 523 U.S. 44, 55-56, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998).

The Court should not revisit its immunity decision regarding the March 6, 2023 censure despite Plaintiff's arguments. Plaintiff ignores the long history of legislative censures to claim that the March 6, 2023 censure "imposed a range of individualized restrictions not traditionally associated with legislative rebuke." ECF No. 81 at 13. Courts have repeatedly found that a governing body's decision to discipline one of its members is a core legislative act. *See, e.g.*, *Whitener v. McWatters*, 112 F.3d 740, 741 (4th Cir. 1997) (affirming dismissal of lawsuit and holding that "legislative body's discipline of one of its members is a core legislative act"); *Skillicorn v. Dickey*, No. CV-24-01074-PHX-DWL, 2024 WL 3992692, at *11 (D. Ariz. Aug. 29, 2024) (denying motion for preliminary injunction and concluding that legislative immunity would preclude claims against fellow councilmembers for disciplinary decision).

Defendants' actions beyond the censure itself were legislative in form and function, and are traditionally associated with legislative rebuke. "Legislative bodies may censure, suspend or otherwise discipline a member. They have done so under English and American law for centuries." *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir.

1994); *see also Monserrate,* 599 F.3d at 156 ("[E]very legislative body in which is vested the general legislative power of the state, has the implied power to expel a member for any cause which it may deem sufficient.") (citation omitted). The alleged adverse actions against Plaintiff are in line with the centuries of American and English legislators imposing restrictions on each other.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to File a Second Amended Complaint.

Dated: July 18, 2025                 **GREENE ESPEL PLLP**

                                     *s/Jenny Gassman-Pines*
                                     Jenny Gassman-Pines, Reg. No. 0386511
                                     Erin Emory, Reg. No. 0401215
                                     Farah N. Famouri, Reg. No. 0403295
                                     222 S. Ninth Street, Suite 2200
                                     Minneapolis, MN 55402
                                     jgassman-pines@greeneespel.com
                                     eemory@greeneespel.com
                                     ffamouri@greeneespel.com
                                     (612) 373-0830

                                     Attorneys for Defendants