IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis,<br><br>Plaintiff,<br><br>v.<br><br>City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester,<br><br>Defendants. | Case No. 24-cv-426 (PJS/DLM)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PSYCHOTHERAPY RECORDS** |

Plaintiff Molly Dennis seeks over $250,000 for allegedly "severe," "profound," and "debilitating" emotional injuries—yet she refuses to authorize the disclosure of the psychotherapy records documenting those very injuries. But the law does not permit her to have it both ways.

Dennis claims "irreversible health impacts," recounts multiple stress-related hospitalizations, and describes "weekly trauma therapy" for depression, anxiety, and PTSD, all allegedly caused by Defendants' actions. Having weaponized her psychiatric treatment to seek over a quarter-million dollars in damages, she cannot now hide behind privilege to shield those same records from scrutiny. Defendants are entitled to test whether Dennis's medical history—including her psychotherapy records—reveals alternative causes for her distress or undermines her allegations of

causation, and to evaluate the credibility of her damage claims more generally. This Court should compel Dennis to authorize release of her psychotherapy records.

## FACTUAL BACKGROUND

### A. Dennis alleges significant emotional and psychological distress as damages.

Dennis placed her mental health conditions at issue in asserting claims for disability discrimination and retaliation (ECF No. 13, Am. Compl., Counts I, III, & IV), and seeking damages for severe physical and psychological distress. For example, in her initial disclosures, Dennis stated that "[r]etaliation against the Plaintiff has had severe physical and psychological impacts on the Plaintiff's health and well-being." (Ex. 1, Pl.'s Rule 26(1)(A) Initial Disclosures at 8.[1]) Dennis asserted that she "will claim over $250,000 in damages for emotional, physical and mental distress." (*Id.*)

In her discovery responses, Dennis emphasized her alleged severe distress:

> Plaintiff has had severe physical, profound emotional, and debilitating psychological impacts on [her] health, well-being, and future. The lasting effects of the retaliation have caused irreversible health impacts and harm to [her] personal relationships and public life. The plaintiff will claim over $250,000 in damages for severe emotional, physical, and mental distress.

---

[1] All references to exhibits are Exhibits to the Declaration of Farah Famouri filed in support of this brief.

2

(Ex. 2, Pl.'s Answers to Interrogatories at 18.) In responding to an interrogatory regarding mitigation, Dennis attested to yet more alleged significant physical and psychological impact:

> The plaintiff went to the hospital on several occasions with debilitating impacts to her psychological and physical health after the censure that were deemed stress related. These physical, mental, and emotional damages have created huge barriers for employment. The Plaintiff has tried to mitigate the devastating effects of situations of depression, anxiety and PTSD caused by the retaliatory abuse by attending weekly trauma therapy and getting job coaching.

(*Id.* at 19.)

Finally, Dennis disclosed one of her medical providers as a witness, and noted that the provider will testify about "the medical and health impacts on Plaintiff resulting from the stress of retaliatory actions" (Ex. 1 at 6) and "the severe physical medical and psychological health impacts on Plaintiff resulting from the stress stemming from retaliatory actions by the City of Rochester." (Ex. 2 at 7.)

> **B.   Defendants sought information related to Dennis's alleged psychological distress, yet Dennis refused to authorize the release of psychotherapy records.**

In discovery, Defendants requested information regarding Dennis's "healthcare provider[s] who provided a diagnosis or treatment of the disability related to your claims in this lawsuit" and asked that Dennis sign releases for her medical providers to share her records. (*Id.* at 19.) Dennis disclosed the names of her

3

providers and Dennis agreed to sign releases for certain information.[2] (Ex. 3, Nov. 14, 2025 Email Thread Between P. Ostrow and J. Gassman-Pines, at 3; Famouri Decl. ¶ 3.) But she refused to sign a release for any psychotherapy records. (Ex. 3 at 2-3.) In support of her refusal, Dennis asserted that her psychotherapy records are "not discoverable" because they are subject to the "patient-therapist privilege," and Dennis is claiming only "garden-variety" emotional distress damages." (Ex. 3, at 2-3.) Defendants disagreed. (*Id.*) The parties were unable to resolve the disagreement after a meet and confer.

## ARGUMENT

This Court should compel Dennis to comply with her discovery obligations and produce signed authorizations for her psychotherapy records. *See* Fed. R. Civ. P. 37(a)(3)(B). The discoverability of medical records is governed by Rule 26's relevancy standard. *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 342 (D. Minn. 2011). Accordingly, Defendants may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

---

[2] The Amended Stipulated Protective Order requires all medical records to be designated "Attorneys' Eyes Only," and prohibits disclosure to any representative, employee, staff member, or elected official of the City of Rochester absent a court order or written agreement from Plaintiff's counsel. (ECF No. 95 at 4.)

Dennis's psychotherapy records are highly relevant. She has squarely placed her mental status and emotional distress at issue in this case, claiming significant emotional and psychological damages that go well beyond nominal damages or "garden variety" emotional distress. Her psychotherapy records are relevant to her damages claims and her burden of establishing causation; indeed, to test Dennis's theory that Defendants' treatment of her—and not some other factor—caused her alleged psychological damages, Defendants must gain access to the records that will show how her providers treated the psychological damages and what she told them during such treatment. Finally, Dennis cannot use the psychotherapist-patient privilege as both a sword and a shield, alleging significant distress but shielding Defendants from the information that could shed light on it.

I. **Dennis's allegations of severe emotional distress put her psychotherapy records at issue in this litigation.**

Dennis's decision to allege severe emotional distress and to claim more than $250,000 in damages places her psychotherapy records squarely at issue. *See* ECF No. 13, Am. Compl. at 14, ¶ 21. Indeed, her medical records are relevant and discoverable because she has placed her "emotional condition at issue by claiming more than nominal emotional distress damages." *Doverspike v. Chang O'Hara's Bistro, Inc.*, No. 03-CV-5601 (ADM/AJB), 03-6549 (RHK/AJB), 2004 WL 5852443, at *2 (D. Minn. July 13, 2004). "[A] defendant has the right to present evidence that calls into question a claim of emotional damages under a Minnesota statutory cause

5

of action, such as MHRA." *Kutz v. NGI Cap., Inc.*, No. 22-CV-1623 (NEB/ECW), 2023 WL 3790766, at *18 (D. Minn. June 2, 2023) (citing *Navarre v. S. Washington Cnty. Sch.*, 652 N.W.2d 9 (Minn. 2002)).

Here, Dennis does not seek a "nominal amount" of emotional distress damages; she seeks more than $250,000. As recently as a month ago, Magistrate Judge Docherty determined that "$50,000 is not a nominal amount." *Gadbois v. Arrow Int'l Inc.*, Case No. 24-cv-1662 (JMB/JFD), 2025 WL 3187343, at *3-4 (D. Minn. Nov. 14, 2025) (granting motion to compel medical records related to plaintiff's emotional distress). Thus, Dennis's $250,000 in claimed emotional distress damages goes well beyond "nominal" damages, entitling Defendants to review Dennis's psychotherapy records. As this Court has stated, where a plaintiff "intends to seek anything more than nominal damages for any alleged emotional distress, then he is placing his mental condition at issue in th[e] case, and [defendant] is entitled to explore any evidence, including Plaintiff's mental records, which may be relevant to such a claim." *Walker v. Nw. Airlines Corp.*, No. Civ. 00-2604 (MJD/JGL), 2002 WL 32539635, at *4 (D. Minn. Oct. 28, 2002).

**II.   Dennis's allegations far exceed "garden variety" emotional distress damages.**

Despite her assertions to the contrary, Dennis is not merely seeking "garden variety" emotional damages. "Garden variety" emotional distress is "the distress that any healthy, well-adjusted person would likely feel as a result of being so

victimized." Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 5552 (1st ed. 2025). That is, garden variety emotional distress damages are claims of "generalized insult, hurt feelings, and lingering resentment" that "do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life." *Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 179 (N.D. Iowa 2001). Garden variety emotional distress damages are typically based on emotions like "sadness, anger, grief and loneliness." *Schaadt v. St. Jude Med. S.C., Inc.*, Civil No. 05-1167 RHK/JSM, 2006 WL 7090866, at *3 (D. Minn. Apr. 4, 2006).

More significant emotional distress allegations demonstrate that a plaintiff seeks damages beyond "garden variety" emotional distress. In *Schaadt v. St. Jude*, for example, the plaintiff complained she had been wrongfully terminated based on gender discrimination and, as a result, experienced sleep issues, weight loss, and acne; she felt "depressed and melancholy;" and was "withdrawn socially." *Id.* The court concluded that those allegations went beyond garden variety damages and instead recognized that the plaintiff was claiming "unusually severe emotional distress." *Id.*

The same is true here. By Dennis's own words, she has claimed that she suffers from significant emotional distress and physical manifestations of that distress. She has described her emotional distress as "severe," "profound," and "debilitating," with

7

"lasting effects" which "have caused irreversible health impacts and harm[.]" (Ex. 2, at 18.) Dennis's sworn description of her emotional distress describes more than just lingering resentment or a temporary disruption—she allegedly developed PTSD and "irreversible health impacts." *Id.* Dennis also alleges that she developed depression and anxiety because of Defendants' actions. *Id.* at 19; *see Ewald v. Embassy*, Civil No. 11–CV–2116 (SRN/SER), 2014 WL 12598867, at *6 (D. Minn. Apr. 15, 2014) (considering whether plaintiff "alleged a specific mental disorder or medical treatment arising from her claims against defendant[s].").

Moreover, Dennis has acknowledged that she has received psychotherapy from multiple providers and spoke with them regarding the incidents underlying this lawsuit. (Ex. 2, at 19.) Dennis stated that she "went to the hospital on several occasions with debilitating impacts to her psychological and physical health after the censure that were deemed stress related. These physical, mental, and emotional damages have created huge barriers for employment." *Id.* at 19 (describing her conditions as "depression, anxiety, and PTSD" caused by Defendants' actions and listing providers she has seen). Just as in *Schaadt*, each of these allegations go beyond "garden variety" emotional distress.

### III. Defendants are entitled to test Plaintiff's allegation that Defendants' conduct caused her alleged psychological distress.

Defendants are entitled to independently obtain and review records regarding Dennis's treatment history to determine whether her alleged distress might have

8

causes other than the events at issue in this litigation. "[A] defendant has the right to present evidence that calls into question a claim of emotional damages under a Minnesota statutory cause of action, such as MHRA." *Kutz*, 2023 WL 3790766, at *18. Defendants have a right to determine whether Dennis has a "medical history that indicates [her] emotional distress was caused in part by events and circumstances independent of [D]efendants' conduct." *See Doverspike*, 2004 WL 5852443, at *2.

"It goes without saying that a defendant is entitled to discovery of its adversary's theory or measure of damages, its calculations under that theory, and" separately "expert opinions on the subject of damages." *Henne v. Great River Reg. Lib.*, 19-cv-2758 (WMW/LIB), 2021 WL 6804560, *18 (D. Minn. Jan. 4, 2021); *Heaton v. Weitz Co., Inc.*, 534 F.3d 882, 891 (8th Cir. 2008) (recognizing that an emotional distress claim "must be supported by competent evidence of genuine injury"); *Schaadt*, 2006 WL 7090866, at *5 ("[R]egardless of whether [plaintiff's] mental or emotional condition has been placed in controversy, her mental health records may nonetheless be relevant if they shed light on other contributing causes of her claims of emotional distress"). Without access to Dennis's psychotherapy records, Defendants cannot adequately investigate whether her mental health history reveals pre-existing conditions, intervening causes, or other factors that contributed to her alleged distress. *See Schaadt*, 2006 WL 7090866, at *5 (holding mental health

records relevant "if they shed light on other contributing causes of her claims of emotional distress").

This is consistent with the procedural rules favoring liberal discovery while acknowledging that claims of emotional distress not tied to a physical injury often require expert testimony to establish causation. *See, e.g., Stewart v. Norcold, Inc.*, No. 18-CV-2114 (NEB/DTS), 2020 WL 1244787, at *7-8 (D. Minn. Mar. 16, 2020) ("Without any medical expert testimony, [plaintiff's] testimony as to the cause of her emotional distress fails to provide the guarantees of trustworthiness necessary to overcome the speculative nature of this claim because the Court cannot be certain of the extent of her distress and can only speculate as to its source.") (quotations omitted). At the very least, courts permit discovery of relevant medical records to determine the extent to which causation is in dispute and whether expert testimony is necessary. *See id.* at *8 ("To further buttress the point that expert testimony is necessary, [plaintiff's] medical records indicate several plausible causes of her emotional distress."). Defendants' need for Dennis's psychotherapy records is even more important here because Dennis has already disclosed that she intends to call her provider as a damages witness. *See* Ex. 1 at 6 (noting that provider "will testify as to the medical and health impacts on Plaintiff resulting from the stress of retaliatory actions"); Ex. 2 at 7 (noting that provider "will also testify to the severe physical

medical and psychological health impacts on Plaintiff resulting from the stress stemming from retaliatory actions by the City of Rochester").

Furthermore, although Dennis has produced some medical records, she cannot selectively disclose only those medical records she deems helpful to her case while withholding records that may undercut her claims. The very records she refuses to produce—her psychotherapy records—are the most directly relevant to the emotional and psychological injuries she alleges. Dennis claims she developed "depression, anxiety, and PTSD" as a result of Defendants' conduct and that she attends "weekly trauma therapy" to address these conditions. Yet she has withheld the therapy records that would document the diagnosis, treatment, and progression of these conditions.

Producing some medical records while withholding the most probative ones is not substantial compliance with discovery—it is strategic gamesmanship. Courts routinely reject such selective disclosure. *See Henne*, 2021 WL 6804560, at *12 (rejecting plaintiff's offer to produce only some medical records subject to protective order and ordering production of all mental health records because relevancy "extends to all her medical records, including her physical, as well as mental health records"). The fact that Dennis has produced some medical records does not excuse her refusal to produce the therapy records that go to the heart of her claimed injuries. If anything, her willingness to produce other records while specifically

11

withholding the psychotherapy records suggests she recognizes their significance—and their potential to reveal information unfavorable to her claims.

## IV. Dennis cannot prevent exploration of her psychotherapy records by invoking the psychotherapist-patient privilege.

Dennis seeks to avoid disclosure of her psychotherapy records by invoking the psychotherapist-patient privilege. But the Eighth Circuit has held that a plaintiff waives the psychotherapist-patient privilege when she places her medical condition at issue. In *Schoffstall v. Henderson*, for example, the plaintiff claimed "extreme emotional distress" due to alleged discrimination and sexual harassment. 223 F.3d 818, 821-22 (8th Cir. 2000). The defendant requested medical authorizations from the plaintiff's medical providers, including mental health providers. *Id.* at 822. The plaintiff responded by providing limited releases for only two providers. *Id.* The district court granted defendant's motion to compel the signed authorizations. *Id.* On appeal, the plaintiff argued that the district court erred because her counseling records were protected by the psychotherapist-patient privilege. *Id.* at 823. The Eighth Circuit rejected that argument, stating that "a plaintiff waives the psychotherapist-patient privilege by placing [her] own medical condition at issue," and concluded that the plaintiff had done so by seeking emotional distress damages. *Id.* The Eighth Circuit has since relied on *Schoffstall* to hold that evidence of prior mental condition and treatment is admissible when a plaintiff places her mental condition at issue by claiming "emotional suffering, mental anguish and loss of

12

enjoyment of life" due to alleged discrimination. *See Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2008) (citing *Schoffstall*, 223 F.3d at 823). When a plaintiff like Dennis affirmatively seeks substantial damages for emotional and psychological injuries, she assumes the burden of substantiating those claims and cannot hide behind privilege to prevent the opposing party from testing their validity.

## CONCLUSION

Given the above, Defendants respectfully request that the Court grant its motion to compel discovery. Specifically, Defendants move the Court to compel Plaintiff to provide signed health authorizations enabling Defendants to obtain her psychotherapy records, within one week from the date of the Court's order, from the following clinics/providers:

- Mayo Clinic
- Thomson Memory & Attention
- Nystrom & Associates
- Northfield Dynamic Therapy
- Center for Effective Living

Dated:  December 23, 2025     **GREENE ESPEL PLLP**

*s/Farah Famouri*

Jenny Gassman-Pines, Reg. No. 0386511
Erin Emory, Reg. No. 0401215
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jgassman-pines@greeneespel.com
eemory@greeneespel.com
ffamouri@greeneespel.com
(612) 373-0830

Attorneys for Defendants