IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis,<br><br>                          Plaintiff,<br><br>v.<br><br>City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester,<br><br>                          Defendants. | Case No. 24-cv-00426 (PJS/DLM)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND TO MODIFY SCHEDULING ORDER** |

## INTRODUCTION

Plaintiff Molly Dennis asks this Court for yet another opportunity to plead a First Amendment retaliation claim that she has never adequately alleged. The amendment deadline in this case was July 1, 2025—a deadline Plaintiff herself proposed and agreed to. When Plaintiff's counsel appeared in April 2025, they had nearly three months to investigate and develop the factual record for any claim they wished to assert. Plaintiff instead chose to file a barebones proposed complaint on the eve of the deadline, lacking the specific dates, triggering events, and factual context that the *Iqbal*/*Twombly* standard requires. Chief Judge Schiltz identified those deficiencies in his March 23, 2026 Order and denied Plaintiff's motion to amend. Plaintiff now returns with a proposed Third Amended Complaint that she

1

claims cures those deficiencies, and asks this Court to treat her belated investigation as "diligence" sufficient to satisfy Rule 16(b).

It is not. Good cause is measured against a party's diligence in meeting the Court's scheduling order, not against their responsiveness to an adverse ruling. Every fact Plaintiff now relies upon was available before the July 1, 2025 deadline. Plaintiff's failure to develop and timely plead those facts instead demonstrates her lack of diligence.

Even setting aside the threshold question of good cause, this Court should deny the proposed amendment because it would be futile. The proposed Third Amended Complaint fails to cure the specific deficiencies Chief Judge Schiltz identified in the prior proposed First Amendment claim. That is, even on Plaintiff's fourth try at pleading a First Amendment claim, she still has not sufficiently done so. Finally, granting amendment at this stage would prejudice Defendants, because fact discovery closes on June 1, 2026, and any amendment would necessarily impact expert and dispositive motion deadlines. The Court should deny the motion.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed this action pro se in Olmsted County state court. After removal, Plaintiff filed a First Amended Complaint as a matter of course on March 7, 2024, adding (among other claims) a First Amendment retaliation claim. ECF No. 13 at 17-19. Defendants filed a motion to dismiss, which the Court granted in part and denied

2

in part, dismissing the First Amendment claim (among others). On April 14, 2024, counsel for Plaintiff filed a notice of appearance. ECF No. 63. As part of the Rule 26 meet and confer process, Plaintiff proposed the July 1, 2025 deadline for amending the pleadings. Ex. 1, April 15, 2025 Email from P. Ostrow to F. Famouri Re: Rochester/Dennis: Draft Rule 26(f) Report & Scheduling Meet and Confer; Ex. 2, Plaintiff's Proposed Rule 26 Report at 11 (proposing July 1, 2025).[1] On April 24, the parties jointly filed a Rule 26(f) report, including the July 1, 2025 deadline for motions to amend pleadings (ECF No. 64 at 11), which the Court entered as part of its Pretrial Scheduling Order. ECF No. 70 at 4.

On June 30, 2025, Plaintiff filed a motion to amend her complaint and attached a Second Amended Complaint, again seeking to add a First Amendment claim. ECF No. 74 at 25-28. After Defendants filed their opposition to Plaintiff's motion, Plaintiff filed a second version of that proposed complaint[2] on July 11, 2025, modifying the First Amendment claim. ECF No. 82-1 at 21-22. Plaintiff did not seek an extension of the amendment deadline or represent to the Court that she needed additional time to investigate the factual basis for any claim.

---

[1] All references to exhibits are Exhibits to the Declaration of Farah Famouri filed in support of this brief.

[2] This second version of the proposed Second Amended Complaint constituted Plaintiff's third attempt at stating a First Amendment Claim.

While the Court's decision on the motion to dismiss was pending, the Court entered an Amended Pretrial Scheduling Order on October 1, 2025, ECF No. 92, which did not alter the July 1, 2025 amendment deadline. This Court issued its Report and Recommendation on January 22, 2026, recommending that the motion be granted in part to allow a First Amendment retaliation claim. ECF No. 106. Defendants objected to that portion of the Report and Recommendation. On March 23, 2026, Chief Judge Schiltz sustained Defendants' objection and denied Plaintiff's motion in its entirety, identifying specific deficiencies in the proposed Second Amended Complaint as it related to the First Amendment retaliation claim. ECF No. 108.

On May 1, 2026, Plaintiff filed the instant Motion for Leave to File Third Amended Complaint, seeking to modify the court's scheduling order as to the deadline for motions to amend and to amend the complaint, and attaching a Proposed Third Amended Complaint. ECF Nos. 114, 114-1. Discovery is currently set to close on June 1, 2026, with expert discovery to follow, and dispositive motions to be filed by October 23, 2026. ECF No. 92 at 1-2.

**B.   Allegations in Proposed Third Amended Complaint**

Plaintiff's Proposed Third Amended Complaint again seeks to assert a claim for First Amendment retaliation—her fourth attempt at stating a First Amendment claim. ECF No. 114-1 at 1 n.2. The Proposed Third Amended Complaint is "an entire

rewrite" of the operative complaint, though it includes the counts previously dismissed for purposes of appeal. ECF No. 114 at 2; ECF No. 114-1 at 25 n.6, 29-31.

The Proposed Third Amended Complaint rewrites all factual allegations, removing certain factual details from the operative complaint, and adding details related to Plaintiff's removal from City Council meetings. *See generally* ECF Nos. 114-1, 114-2. The Proposed Third Amended Complaint cites Council meeting minutes and video. ECF No. 114-1 at 18-25.

In Count IV (First Amendment Retaliation), Plaintiff alleges that she engaged in speech that included "matters of public concern, including government transparency, fiscal accountability, and City policy." *Id.* at 25, ¶149. Plaintiff alleges that the Defendants found Plaintiff "out of order" during discussions at meetings and that she violated the Council Rules,[3] and removed Plaintiff from City Council meetings on May 20, 2024; October 7, 2024; and December 2, 2024 in retaliation for her protected speech. *Id.* at 18, 20, 22.

---

[3] This Court may consider the Rules because they were incorporated by reference and the contents of the Rules are alleged in the Proposed Third Amended Complaint. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (noting that courts are typically constrained to the pleadings when ruling on a motion to dismiss, but the court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case … without converting the motion into one for summary judgment."); *see also Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (noting that courts may specifically consider "documents whose contents are alleged in a complaint.").

## LEGAL ARGUMENT

**I.    Plaintiff did not and cannot demonstrate good cause to modify the scheduling order under Fed. R. Civ. P. 16(b)(4) and L.R. 16.3.[4]**

Plaintiff cannot demonstrate "good cause" required to modify this Court's scheduling order, let alone the "extraordinary circumstances" required by this District's Local Rules. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); D. Minn. L.R. 16.3(d) ("Except in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order."). The "good cause" standard "is an exacting one," *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009), and its "primary measure" is "the movant's diligence in attempting to comply with the *scheduling* order." *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 740 (8th Cir. 2017) (emphasis added). And because the deadline to amend pleadings has already passed, this District's Local Rules impose an additional, independent hurdle: Plaintiff must show "extraordinary circumstances" justifying modification of a scheduling order deadline after the fact. L.R. 16.3(d). Plaintiff did not meet either requirement.

---

[4] Although the Court accepted Plaintiff's May 1, 2026 filing, ECF No. 116, the submission still does not fulfill the requirements of Local Rule 7.1, which also requires the movant to simultaneously submit a proposed order.

### A.   Plaintiff did not act diligently in meeting the scheduling order's requirements.

Plaintiff cannot establish good cause to modify the deadline for amending pleadings because she did not act diligently to meet the Scheduling Order's deadlines. First, Plaintiff should have been able to meet the pleading standard because the *Iqbal/Twombly* standard and the elements of her First Amendment claim have not changed. Second, the facts underlying the Proposed Third Amended Complaint were available to Plaintiff well before the deadline, yet she did nothing to include them in her Proposed Second Amended Complaint within the schedule. Third, Plaintiff (while represented by counsel) proposed the very deadline she now asks this Court to excuse her from missing, without any attempt to modify the schedule before that deadline passed. She cannot now claim good cause and diligent compliance with the scheduling order for a failure of her own making.

### 1.   Plaintiff did not act diligently in meeting the Court's scheduling order because the *Iqbal/Twombly* legal standard has not changed.

Plaintiff had all the information she needed to amend the complaint before the scheduling order deadline, yet she failed to do so. "Good cause" is measured against the movant's diligence in complying with the Court's *scheduling order*. Courts have found that a party lacked diligence when there was "no change in the law, no newly discovered facts, or any other changed circumstance [to make the claim or defense] more viable after the scheduling deadline for amending

pleadings." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 718 (8th Cir. 2008); *see also IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 526-27 (D. Minn. 2018) ("[T]he focus of Rule 16(b) [is] on the diligence of the party seeking to modify a Scheduling Order, as opposed to . . . unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend.").

The elements of Plaintiff's First Amendment claim did not change between the July 1, 2025 deadline and today. Indeed, the elements of a First Amendment retaliation claim are settled. *See Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (noting elements of First Amendment retaliation claim). As recently as December 2025, this Court has concluded that there is "no change in the law" when the "requirement of the pleading the elements of a plaintiff's alleged [claim] is not new." *See Glob. Commodities, Inc. v. Cap. Distribs., LLC*, No. 24-CV-00216 (JMB/EMB), 2025 WL 3496581, at *4 (D. Minn. Dec. 5, 2025) (finding no good cause). Thus, Plaintiff cannot rely on a so-called change in the law to excuse her failure to file her motion to amend within the deadline. Because Plaintiff did not show diligence in meeting the deadline, she has not established good cause.

Plaintiff seeks to avoid that reality by arguing that she acted diligently because she did not know the "precise level of factual specificity required" to meet the pleading standard. ECF No. 115 at 4. She also asks this Court to credit her "diligence

8

. . . following the Court's March 23, 2026, Order[,]" pointing to the steps she took after receiving the adverse ruling to compile transcripts and video recordings of City Council Meetings. *Id.* at 3-4. Plaintiff's arguments fail on all fronts.

First, this Court must measure Plaintiff's diligence against the *scheduling order*, not the Court's order on her motion to dismiss. If prompt action in response to an adverse ruling satisfied Rule 16(b), scheduling orders would lose all force. Any party could file a deficient pleading, absorb an adverse ruling, and use that ruling as a trigger for a "diligent" second attempt, effectively converting every dismissal order into a new amendment deadline. Courts in this Circuit have declined to adopt such an approach. *See, e.g., Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, Case No. 19-cv-719 (JNE/ECW), 2022 WL 1684017, at *4 (D. Minn. May 26, 2022) (holding that the Eighth Circuit's reversal of the district court's interpretation of the parties' agreement was not "a change in the law," nor a change in "circumstances" sufficient to establish good cause).

The decision in *Unity Healthcare, Inc. v. Cnty. of Hennepin* is on point. There, the court denied a third motion to amend where plaintiffs sought to "specifically address concerns raised by the [District] Court" in an order dismissing claims from their second amended complaint. Civil No. 14-114 (JNE/JJK), 2015 WL 12977020, at *2 (D. Minn. Mar. 10, 2015). The court determined that the plaintiffs' desire to clarify the allegations after dismissal was insufficient, noting that "the plaintiffs' 'reaction

9

to the District Court's dismissal Order appears to show 'a delayed appreciation of the relevant law,' *which is not a basis for finding good cause* under Rule 16(b)." *Id.* (emphasis added) (quoting *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1009 (D. Minn. 2013)). The court rejected the plaintiffs' attempt to "[go] back and [dig] up the additional factual support" that was missing from their earlier pleadings, noting that they "had a full and fair opportunity to respond" when they were previously granted leave to amend, and squandered it. *Id.* "When a motion to dismiss is granted and claims are dismissed, the complainant does not have license to keep repleading until it can overcome whatever deficiencies lead to the dismissal unless the court ordering dismissal specifically grants such permission. That did not happen here." *Id.*

That conclusion applies with equal force here. Plaintiff may not replead to address concerns and deficiencies that this Court identified based on her delayed appreciation of *Iqbal/Twombly* or their interplay with the elements of a First Amendment claim. Like the plaintiffs in *Unity Healthcare*, she had a full and fair opportunity to cure those deficiencies—she simply chose not to, filing a "barebones" Second Amended Complaint the day before the deadline. Her "mere desire to revive those claims to address the problems identified in the District Court's dismissal does not establish good cause." *Id.* (citing *Target Corp.*, 960 F. Supp. 2d at 1009).

Second, the pleading standard from *Twombly* and *Iqbal* have been settled law since 2007 and 2009 respectively. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, Plaintiff had all of the information she needed regarding pleading a First Amendment claim within the existing deadline. This case is thus entirely different from *Inge v. Rock Fin. Corp.*, 281 F.3d 613 (6th Cir. 2002), on which Plaintiff relies. *Inge* is not only non-precedential in this Circuit, but a close reading of its analysis cuts directly against Plaintiff's position. The good cause finding in *Inge* turned on a genuinely novel legal question—an issue on which the Sixth Circuit emphasized there was a "dearth of authority" and "no published judicial opinion." *Id.* at 626. Here, Chief Judge Schiltz identified no such novel or unresolved legal question. He applied the well-established *Iqbal/Twombly* standard and concluded that the complaint lacked specific dates, triggering events, and factual context—deficiencies that Plaintiff could have and should have cured before the July 1, 2025 deadline using facts that were already available.

### 2. Plaintiff had access to the underlying facts before the deadline passed.

Plaintiff's failure to include the required factual detail—even though she had those facts available to her—demonstrate that she did not act with diligence. The Eighth Circuit has repeatedly affirmed the conclusion that a party was not diligent in meeting a scheduling order's deadline where—as here—the movant had access

11

to the relevant facts before the deadline, but failed to investigate or plead them. *See, e.g., Sherman*, 532 F.3d at 718 ("Here, no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings."); *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020) (finding no diligence when facts alleged in proposed amendment were available before the deadline); *Davis v. City of St. John*, 182 Fed. Appx. 626, 627 (8th Cir. 2006) ("Here, the plaintiffs have not shown such diligence. Almost all of the information that the Davises sought to add to their complaint had been in their possession well before the suit began, and yet they did not seek its inclusion[.]").

Plaintiff herself was present at the Council meetings and personally experienced the events that she alleges form the basis of her First Amendment claim. The Council meeting minutes and videos on which Plaintiff now relies are public records available on the City's website, available shortly after the meetings. Plaintiff does not and cannot allege that these materials were unavailable or unknown before the deadline passed. Plaintiff acknowledged this, stating, "The facts underlying the amendment are not new." ECF No. 115 at 6. Despite that, on June 30, 2025—the day before the amendment deadline—Plaintiff filed a Second Amended Complaint that Chief Judge Schiltz later concluded was "barebones," lacking specific dates, triggering events, or factual context. ECF No. 108 at 3-4. Plaintiff could have

12

incorporated details from her experience, the meeting minutes, and video into her June 30 filing, but she simply did not do so.

### 3. Plaintiff proposed the July 1, 2025 amendment deadline and made no attempt to further amend the scheduling order.

Furthermore, the July 1, 2025 deadline was not a surprise to Plaintiff and the Court did not impose it on her. Instead, the parties agreed to it. ECF Nos. 64, 70. Plaintiff's counsel appeared on April 14, 2025, and Plaintiff proposed the deadline. *See* Exs. 1, 2. Plaintiff thus had two and a half months before the agreement deadline, with representation by counsel, to investigate the factual basis for the claims she wished to assert. Courts in this district have found no good cause when counsel was aware of and agreed to the deadlines in the scheduling order. *See, e.g., Alexander v. 1328 Uptown, Inc.*, Case No. 18-cv-1544 (ECT/ECW), 2019 WL 9514655, at *3 n.5 (D. Minn. June 20, 2019) (finding no good cause to amend in part because the deadlines in the Pretrial Scheduling Order "were agreed to by all parties in the Rule 26(f) report"). Had Plaintiff needed additional time, she could have requested it. Her failure to do so demonstrates that she does not have good cause to alter the deadline. *See, e.g., Barstad v. Murray Cnty.*, 420 F.3d 880, 883 (8th Cir. 2005) (upholding district court's finding that there was no good cause to amend the scheduling order because new counsel had sufficient time to request a change to the scheduling order).

**B.    Plaintiff's motion does not meet the requirements of L.R. 16.3.**

Furthermore, in addition to not establishing good cause, Plaintiff made no effort to comply with Local Rule 16.3's requirement that she demonstrate "extraordinary circumstances." L.R. 16.3(b), (d). The Court could deny Plaintiff's motion "[o]n this basis alone." *Azarax, Inc. v. Wireless Commc'ns Venture, LLC*, No. 16-cv-3228 (JRT/LIB), 2019 WL 13235412 (D. Minn. Jan. 15, 2019) (noting a failure to discuss or proffer any argument regarding extraordinary circumstances is a basis for a denial). Plaintiff failed to discuss the extraordinary circumstances standard nor proffered any argument as to how the circumstances demonstrate the extraordinary circumstances necessary to amend the scheduling order.

And although Plaintiff stated that she "anticipates no effect on the deadlines as a consequence of this motion," ECF No. 115 at 3 n.1, her assertion is facially implausible given the current schedule. Fact discovery closes June 1, 2026—less than a month from Plaintiff's filing of this motion, followed closely by expert identification and disclosure for the parties in May and June 2026, non-dispositive motions due June 22, 2026, and dispositive motions due October 23, 2026. *See* ECF No. 92. Plaintiff doesn't address these deadlines and fails to meet the requirements of Local Rule 16.3.

**II.    The Court should deny leave to amend because the amendment would be futile, and the motion is the product of undue delay that would prejudice Defendants.**

Even if Plaintiff could clear the Rule 16(b) threshold—which she cannot—her motion would still fail under Rule 15. *See* Fed. R. Civ. P. 15(a)(2) (Plaintiff may not amend without the court's leave). Leave to amend is not an absolute right, *Ferguson v. Cape Girardeu Cnty.*, 88 F.3d 647, 650-51 (8th Cir. 1996), and courts deny amendment where the record reflects futility of the amendment, undue delay, repeated failure to cure prior deficiencies, or undue prejudice to the opposing party. *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). Those factors are present here: Plaintiff's proposed amendment is futile on its face, particularly considering the deficiencies identified by Chief Judge Schiltz and the applicable immunities; and Plaintiff's motion is the product of undue delay, and granting leave at this stage would prejudice Defendants.

**A.    The Proposed Third Amended Complaint fails to state a First Amendment retaliation claim.**

Plaintiff's proposed amendment would be futile because the Proposed Third Amended Complaint cannot survive a motion to dismiss—it does not correct the deficiencies that Chief Judge Schiltz already identified and, instead, compounds them by removing much of the factual predicate of the operative complaint. *See Hammer,* 318 F.3d at 844. Plaintiff's First Amendment retaliation claim still rests on "[t]hreadbare recitals," "labels and conclusions[,]" "a formulaic recitation of the

15

elements," or speculation rather than the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

To state a First Amendment retaliation claim, Plaintiff's complaint must: (1) identify a statement that she made or act that she committed that was protected by the First Amendment; (2) identify an adverse action that defendants took against her that would chill a person of ordinary firmness from continuing in that activity; and (3) plead sufficient facts to make plausible the allegation that, in taking the identified adverse action, defendants were motivated at least in part by the identified activity that was protected by the First Amendment.ECF 108 at 2 (citing *Scheffler*, 743 F.3d at 621). The proposed First Amendment retaliation claim fails on every element.

### 1.   The Proposed Third Amended Complaint describes activity that is not protected by the First Amendment.

Chief Judge Schiltz flagged this problem in Plaintiff's Second Amended Complaint, noting that "some of what Dennis identifies (such as 'hyperactivity') is probably not protected by the First Amendment." ECF No. 108 at 3. Rather than heed that warning, the Proposed Third Amended Complaint continues to dress up behaviors as protected First Amendment activity. *See* ECF No. 114-1 at 15, ¶83e (describing "Conducting her public duties in a manner consistent with her ADHD, including displaying hyperactivity, short attention span, requiring additional time

16

to process information, and verbal processing of information" as protected speech); 23, ¶132 (describing Plaintiff's "communication style" and "noting that her manner of speaking was informed by her ADHD and autism"); 23, ¶133 (referring to Plaintiff's "direct manner of communication" that "reflect[s] her disability-related communication style"); and 25, ¶151 ("These removals occurred in the context of Defendants' prior discipline of Plaintiff for her communication style[.]").

Courts are clear that conduct carries First Amendment protection only "if it is intended to convey a particularized message and the likelihood is great that the message will be understood by those who view it." *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 341 (8th Cir. 2023). Courts therefore "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Hyperactivity, short attention span, and ADHD-related communication patterns do not satisfy this standard. They are behavioral characteristics, not messages—and they communicate no particularized idea that observers would readily understand as such.

> **2.   Plaintiff's conclusory allegations do not establish a causal connection between the protected speech and the alleged adverse actions.**

Plaintiff's allegations also do not sufficiently establish that the Council was motivated in part because of her protected speech. *See Scheffler*, 743 F.3d at 621.

17

*First*, Plaintiff's own allegations attribute each removal to rule enforcement, not retaliatory animus. Chief Judge Schiltz emphasized that the prior complaint "describes neither direct (e.g., a statement by a Council member) nor indirect (e.g., disparate treatment) evidence of unconstitutional retaliation." ECF No. 108 at 4-5. The Proposed Third Amended Complaint does no better—and in key respects affirmatively undermines the inference of retaliation. For example, the Proposed Third Amended Complaint attributes each removal to enforcement of Council procedural rules: at the May 20 meeting, the City Attorney advised that "[i]f any council member cannot follow the rules . . . the council member needs to be excused from this proceeding," ECF No. 114-1 at 19, ¶ 105; at the October 7 meeting, the Council President stated Plaintiff "violat[ed] rules" before asking Plaintiff to leave, *id*. at 22, ¶ 125; at the December 2 meeting, Council President ruled Plaintiff "out of order" before removing her. *Id*. at 23, ¶ 137. Plaintiff's own complaint thus supplies the legitimate explanation for each removal—and then asks this Court to ignore it.

Nor does the Proposed Third Amended Complaint supply any indirect evidence of retaliation. It identifies no comparator—another council member who interrupted proceedings, was ruled out of order, or otherwise violated rules, but was not removed. The Proposed Third Amended Complaint simply alleges that Plaintiff was removed, without any non-conclusory factual basis for concluding that the treatment she received differed from what any other council member experienced

18

under similar circumstances. Without such allegations, there is no indirect evidence that the Council selectively enforced meeting rules to suppress Plaintiff's protected speech. In short, there is no direct or indirect evidence of retaliation.

*Second,* Plaintiff identifies the Council's reasons for expulsion but makes no effort to explain why they were pretextual. Chief Judge Schiltz identified two related gaps in Plaintiff's prior complaint: it did not describe "how (if at all) the Council majority justified its action," and it did not explain "why a jury could conclude that the justification was pretextual." ECF No. 108 at 4. The Proposed Third Amended Complaint closes neither gap. It now merely states that Council officials invoked meeting rules as the stated basis for each removal. ECF No. 114-1 at ¶¶ 105, 109, 125, 137, and 141. But merely reciting the officials' stated justifications does not make an inference of pretext plausible, and is the type of conclusory pleading *Iqbal* and *Twombly* forbid. Pretext requires facts. There is no bridge between the fact of removal and the conclusion that the procedural justifications were a cover for retaliation. The Proposed Third Amended Complaint merely asserts the conclusion and moves on, which is not enough to survive a motion to dismiss.

*Third,* Plaintiff makes no effort to explain why the Council did not expel Plaintiff earlier or why it welcomed her back after each expulsion. Chief Judge Schiltz identified another fundamental implausibility:

> if the expulsions were in retaliation for Dennis's disagreeing with majority positions of the Council on issues, it is difficult to understand why the Council

did not expel her much earlier—or why, after expelling her on May 20, 2024, the Council welcomed her back at subsequent meetings.

ECF No. 108 at 6. The Proposed Third Amended Complaint is silent on both points. Plaintiff alleges that she engaged in protected speech through "prior . . . questioning of City policies and practices," for years before her first removal. ECF No. 114-1 at 35, ¶151. She offers no explanation for why, the Council started removing her when it did, or why having removed her once, the Council repeatedly allowed her to return to subsequent meetings before removing her again. A Council that repeatedly readmits the member it is allegedly trying to silence is not behaving like one with retaliatory intent. Plaintiff's theory is an implausible inference when taking into account the Council's conduct.

*Fourth*, temporal proximity is insufficient to establish causation. Plaintiff's causation theory rests entirely on the "timing and circumstances" of her removals. ECF No. 114-1 at 29, ¶ 183. But temporal proximity alone is insufficient to establish the causal connection required for a First Amendment retaliation claim, particularly where, as here, an obvious and legitimate alternative explanation for the adverse action exists. *See Parker v. United States Dep't of Agric.*, 129 F.4th 1104, 1114 (8th Cir. 2025) ("Moreover, this court generally requires more than mere temporal connection in order to infer causation.") (cleaned up); *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021) (noting that the temporal proximity of a plaintiff's protected

speech and the defendant's act is relevant, but "not enough on its own" to establish retaliatory motive).

The timing problems Chief Judge Schiltz identified remain unresolved. He concluded that it was implausible that the Council's decision to expel Plaintiff on May 20, 2024, was motivated by Plaintiff's February 27, 2023 objection to the Plummer House meeting not being recorded—a gap of nearly fifteen months. ECF No. 108 at 5. The Proposed Third Amended Complaint preserves that allegation verbatim, *compare* ECF No. 82-1 at 13, ¶ 26b *with* 114-1 at 15, ¶ 83(b), and offers no factual basis to connect the 2023 speech to the 2024 removals. She identifies no intervening event or triggering moment. The temporal implausibility Chief Judge Schiltz identified is unchanged.

More fundamentally, every removal from any legislative proceeding occurs during or after some statement by the removed member. The question is not whether speech *preceded* removal, but whether speech *caused* the removal. At each of the three meetings in the Proposed Third Amended Complaint, the presiding officer determined that her conduct violated the Council Rules. Because the Proposed Third Amended Complaint offers nothing beyond timing to distinguish retaliatory removal from legitimate enforcement of parliamentary procedure, it fails

21

to plausibly allege the causal connection that a First Amendment retaliation claim demands.[5]

### 3. The Proposed Third Amended Complaint does not adequately allege an adverse action.

Finally, Plaintiff's claim also fails because the conduct she characterizes as "adverse" would not chill a person of ordinary firmness from continuing to engage in protected speech. That standard is demanding in any case, *see Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022), but it is especially demanding here because Plaintiff was an elected official.

Courts apply a heightened standard to public officials, requiring the conduct to entirely "prevent [the elected official] from doing his job." *Id.* at 479. That is

---

[5] Plaintiff's carefully curated selection of three meeting removals also reveals a significant gap in her causal narrative. The public record reflects that the Council removed Plaintiff from a fourth meeting on August 5, 2024, which Plaintiff did not include in her proposed Third Amended Complaint. See ECF No. 107 at 8, n.3 (listing Plaintiff's expulsions). The circumstances of that removal are instructive: on August 5, 2024, the Council removed Plaintiff for repeatedly interrupting the Council President, including after a point of order, and refusing to stop when directed to do so. The removal occurred at the close of the meeting, immediately before the Council moved to adjourn, making it difficult to characterize as an effort to silence Plaintiff on any substantive matter before the body. This incident demonstrates that the Council's removal decisions were not uniformly triggered by the content of Plaintiff's speech, but rather by her conduct during proceedings—precisely the kind of legitimate parliamentary enforcement that the Council President is empowered to exercise. Plaintiff's decision to omit this inconvenient incident while selectively pleading three others constructs a false narrative and should be closely scrutinized, especially because Defendants already identified all meetings where the Council removed Plaintiff in response to Plaintiff's Proposed Second Amended Complaint. *See id*.

because elected officials are expected to "shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Id.* at 478. The First Amendment protects Plaintiff's speech, but "it cannot be used as a weapon to silence other representatives seeking to do the same," particularly when "[e]veryone involved was an equal member of the same deliberative body." *Id.* at 478–79. Put simply, the First Amendment does not immunize an elected official from the political fallout of what she says or how she says it. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir. 2010) (noting the First Amendment "does not succor casualties of the regular functioning of the political process").

Tradition and history confirm that temporary removal has been an appropriate response for legislative bodies to regulate themselves. *See Temple v. Lower Elkhorn Nat. Res. Dist.,* No. 23-cv-3198, 2023 WL 8934916, at *4 (D. Neb. Dec. 27, 2023) ("History and tradition ... inform whether a particular sanction is material or not."). Legislative bodies have inherent constitutional and statutory authority to "preserve order at . . . meetings" and "regulate [their] own procedure." Minn. Stat. 412.191, subd. 2; *see* U.S. Const. art. I, § 5, cl. 2; *accord* Minn. Const. art. IV, § 7. Critically, the Council removed Plaintiff according to the Council Rules, which applied equally to all members. "[B]ecause citizens may not sue legislators for their legislative acts; legislative bodies are left to police their own members. Absent truly

exceptional circumstances, it would be strange to hold that such self-policing is itself actionable in a court." *Whitener v. McWatters*, 112 F.3d 740, 744 (4th Cir. 1997); *see also Camacho v. Brandon*, 317 F.3d 153, 162 (2d Cir. 2003) (concluding that a city councilmember's aide could not bring a First Amendment retaliation claim for his dismissal, in part, because it would "subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials."); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions.").

Plaintiff's own conduct forecloses any argument that her speech was chilled. The Eighth Circuit permits courts to consider a plaintiff's own actions as evidence of whether conduct would have chilled a reasonable person. *See Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003); *see also Kleis v. City of Becker*, Civ. No. 16-1005 (ADM/JSM), 2016 WL 4007573, at *1 (D. Minn. July 26, 2016) (finding mayor's speech not chilled because he continued to speak about the issue). Despite her removals, Plaintiff was able to attend every subsequent meeting and engage in debate, make and join motions, and vote. As the Proposed Third Amended Complaint itself describes, Plaintiff discussed "budget transparency [and] public expenditures" at the October 7, 2024 meeting, and subsequently continued to discuss "budget priorities and public spending" at the December 2, 2024 meeting.

24

*See* ECF No. 114-1 at 20, 22. Even taking the Proposed Third Amended Complaint on its own, the allegations demonstrate that Plaintiff continued to speak "on matters of public concern" after each removal, cutting against Plaintiff's inference that her speech caused her removals.

At its core, Plaintiff's First Amendment retaliation claim asks this Court to sit in judgment of the procedural decisions of a deliberative legislative body. *See Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 176 (Minn. 2006) ("The court must not substitute its judgment for that of the city council"); *Tenney v. Brandhove,* 341 U.S. 367, 377 (1951) (it is "not consonant with our scheme of government for a court to inquire into the motives of legislators."). The Council President removed Plaintiff pursuant to the Council's own rules of order, in real time, during active legislative proceedings. Whether Plaintiff's conduct at those meetings warranted removal—whether she was out of order, exceeded her allotted speaking time, or violated the censure—is precisely the kind of parliamentary judgment that legislative bodies have historically entrusted to make for themselves. To accept Plaintiff's theory would be to transform every disputed point of order in a city council meeting into a potential federal lawsuit, with courts effectively serving as appellate reviewers of parliamentary decisions.

**4.     The Proposed Third Amended Complaint fails to state a claim against Mayor Norton and even if it did so, Mayor Norton is entitled to qualified immunity.**

The First Amendment retaliation claim against Mayor Norton also fails because the Proposed Third Amended Complaint's own factual allegations do not connect her to the specific adverse actions at issue. The Proposed Third Amended Complaint alleges that the removals were carried out by the Council President and body, not Mayor Norton. *See* ECF No. 114-1 at 18-25. The Proposed Third Amended Complaint does not allege that Mayor Norton directed, authorized, or was even present for the removals in a way that would establish her causal role. Without specific factual allegations tying Norton to the removals themselves, the proposed Third Amended Complaint does not meet the *Iqbal* and *Twombly* standard.

Even if the Proposed Third Amended Complaint included sufficient factual allegations, Mayor Norton is entitled to qualified immunity. Qualified immunity protects government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be established "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). It was not. Minnesota law expressly provides that city councils have the power to "preserve order" at meetings and "regulate its own procedure," therefore reasonable officials in Mayor Norton's position could assume that the Rochester City Council was regulating its

26

own procedure during the meetings where the Council removed Plaintiff. *See* Minn. Stat. § 412.191, subd. 2.

### 5.    Legislative immunity applies.

Even if Plaintiff could establish the causal connection her Proposed Third Amended Complaint lacks, the First Amendment retaliation claim would still fail because the challenged conduct is shielded by legislative immunity. Local legislators are entitled to absolute immunity from civil liability for legislative acts, including acts taken in the exercise of their authority to manage legislative proceedings. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).

The City Council as a body is the only entity that can enforce its Council Rules and expel a member from the meeting. *See* ECF No. 74-1 at 1-2. The decision to remove a council member from a meeting for violating rules of order is quintessentially a legislative act which exercises the inherent authority of a deliberative body to govern its own proceedings. The fact that others may have disputed the removal does not strip it of its legislative character. Accordingly, such expulsions are actions entitled to "absolute legislative immunity." *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013) (quoting *Bogan*, 523 U.S. at 54).

### B.    Plaintiff's motion is the product of undue delay, and permitted amendment would prejudice Defendants.

Courts deny leave to amend when the movant's undue delay results in prejudice to the opposing party. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith,*

27

*Inc.*, 644 F.2d 690, 694 (8th Cir. 1981); *see also IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 527 (D. Minn. 2018) (denying motion for leave to amend because the request was unduly delayed and the defendant would suffer prejudice). The Proposed Third Amended Complaint is Plaintiff's third attempt to state a First Amendment claim. *See* ECF No. 74, 82-1, 114-1. Plaintiff has been aware of the facts underlying the proposed claim since she personally experienced them. The council meeting expulsions were public events, video-recorded, and reflected in publicly-available minutes—all from 2024. Yet despite the benefit of counsel since April 2025, Plaintiff chose not to develop and plead those facts with specificity before the July 1, 2025 deadline. Plaintiff cannot claim newly discovered facts, a change in law, or a change in circumstances to explain the delay.

That delay is compounded by the prejudice amendment would inflict on Defendants. Plaintiff filed this motion on May 1, 2026. Fact discovery closes on June 1, 2026—less than one month away. The parties may not receive a ruling on this motion for some time, which will also impact upcoming deadlines in the schedule related to experts and dispositive motion practice. *See* ECF No. 92 (setting expert identification and disclosure dates in May and June 2026, setting the non-dispositive fact motion deadline of June 22, 2026, and setting a dispositive motion deadline of October 23, 2026).

Furthermore, the Proposed Third Amended Complaint is a "complete revision" that excised substantial portions of the prior operative pleading. ECF No. 114 at 1-2. In restructuring the complaint, Plaintiff omitted factual allegations on which this Court relied in concluding that the ADA and MHRA claims survive dismissal. The combination of an imminent discovery deadline and a substantially revised pleading creates precisely the type of prejudice that supports denial of leave to amend.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to Amend Complaint and to Modify Scheduling Order.

Dated: May 8, 2026

**GREENE ESPEL PLLP**

*s/ Farah Famouri*

Jenny Gassman-Pines, Reg. No. 0386511
Erin Emory, Reg. No. 0401215
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jgassman-pines@greeneespel.com
eemory@greeneespel.com
ffamouri@greeneespel.com
(612) 373-0830

Attorneys for Defendants