**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Molly L. Dennis, | Case No. 24-cv-426 (PJS/DLM) |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER** |
| v. | |
| City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester, | |
| Defendants. | |

## INTRODUCTION

Plaintiff submits this Reply pursuant to the Court's May 11, 2026, Briefing Order permitting briefing limited to Defendants' futility arguments. ECF 119. The proposed Third Amended Complaint now pleads the specific meetings, statements, removals, and surrounding factual context that Chief Judge Schiltz found absent from the prior pleading.

Defendants' Opposition largely confirms that these additional factual allegations now exist. Rather than arguing that the proposed pleading still lacks specificity, Defendants instead ask the Court to resolve factual disputes in Defendants' favor, credit Defendants asserted procedural explanations for Plaintiff's removals and reject Plaintiff's competing inference of retaliatory motive. But those are factual issues inappropriate for resolution at the Rule 12 stage incorporated into a futility analysis.

1

Accepting the allegations of the proposed Third Amended Complaint as true and drawing reasonable inferences in Plaintiff's favor, Plaintiff has plausibly stated a First Amendment retaliation claim under *Scheffler v. Molin*, 743 F.3d 619 (8th Cir. 2014).

### LEGAL ARGUMENT

"The test for futility is identical to the test that is applied when considering a motion to dismiss a complaint under Rule 12(b)(6)." *ecoNugenics, Inc. v. Bioenergy Life Science, Inc.*, 355 F.Supp.3d 785, 793 (D.Minn., 2019) (citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)). In ruling on a Rule 12(b)(6) motion, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *York v. Wellmark, Inc.*, 965 F.3d 633, 638 (8th Cir. 2020). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

To plead a plausible claim of First Amendment retaliation, Dennis' Complaint must: (1) identify a statement that she made or act that she committed was protected by the First Amendment; (2) identify an adverse action that Defendants took against her that would chill a person of ordinary firmness from continuing in that activity; and (3) plead sufficient facts to make plausible the allegation that, in taking the identified adverse action, Defendants were motivated at least in part by the

identified activity that was protected by the First Amendment. *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).

Chief Judge Schiltz acknowledged that, based on the allegations in the proposed Second Amended Complaint, "it is possible that the City Council expelled Dennis from four meetings in 2024 to retaliate against her for activity in which she'd continuously engaged since January 1, 2021." ECF No. 108 at 6. The Court nevertheless concluded that the prior proposed pleading lacked sufficient factual specificity to *plausibly* satisfy the required elements of a First Amendment retaliation claim. *Id.*

The Third Amended Complaint cures those deficiencies by pleading substantially greater factual specificity as to each element of the retaliation claim.

## I. PLAINTIFF'S PROTECTED SPEECH HAS BEEN IDENTIFIED WITH PARTICULARITY

Chief Judge Schiltz found that the proposed Second Amended Complaint failed to plausibly identify sufficiently specific protected First Amendment activity because it relied primarily on "sweeping generalities" such as "[r]equesting reasonable accommodation for her ADHD," "[d]isagreeing with majority positions of the Council on issues," and "[c]onducting her public duties in a manner consistent with her ADHD." ECF No. 108 at 3–4. The Court noted that the prior pleading identified only one specific instance of protected speech: Plaintiff's objection to the City Council's February 27, 2023, strategic planning meeting at the Plummer House and the absence of a live recording of that meeting. *Id.* at 3–5.

3

The proposed Third Amended Complaint directly addresses that deficiency by identifying multiple specific instances of speech on matters of public concern occurring immediately before Plaintiff's removals from Council meetings. Plaintiff now specifically alleges protected speech concerning: objections to the use of frequent flyer miles and discounts accrued on City-funded travel for personal use, Third Am. Compl. ¶ 83(a); objections to the Plummer House meeting and lack of public recording, *id.* ¶ 83(b); questions regarding transparency and tracking of dismissed parking tickets during the May 20, 2024, Council meeting, *id.* ¶¶ 99–115; questions regarding budget transparency, public expenditures, competitive bidding practices, and Destination Medical Center oversight during the October 7, 2024, Council meeting, *id.* ¶¶ 116–130; and comments regarding budget priorities, public spending, transparency, housing affordability, and taxpayer access to financial information during the December 2, 2024, Council meeting, *id.* ¶¶ 131–148.

These allegations concern government transparency, public expenditures, fiscal accountability, and municipal governance - speech "occup[ying] the highest rung of the hierarchy of First Amendment values." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). Speech involves matters of public concern when it relates to "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Moreover, "[a] statement's arguably inappropriate or controversial character ... is irrelevant to the question whether it deals with a matter of public concern." *Snyder*, 562 U.S. at 453 (quoting

*Rankin v. McPherson*, 483 U.S. 378, 387 (1987)). Thus, even accepting Defendants' characterization of portions of Plaintiff's comments as argumentative or disruptive, the speech alleged in the Third Amended Complaint plainly concerns matters protected by the First Amendment.

Notably, in a 29-page opposition memorandum, Defendants devote only two paragraphs to disputing whether Plaintiff plausibly alleges protected First Amendment activity. Defs.' Mem. Opp'n at 16–17, ECF No. 117. And even there, Defendants do not meaningfully dispute that Plaintiff's statements concerning government transparency, public expenditures, fiscal accountability, procurement practices, and municipal governance involve matters of public concern. Instead, Defendants focus primarily on isolated references to Plaintiff's ADHD-related "communication style," "hyperactivity," and related behavioral characteristics. *Id.*

But Plaintiff's First Amendment retaliation claim is not premised on "hyperactivity" as protected speech. The Third Amended Complaint specifically identifies concrete statements concerning public governance and fiscal oversight made during City Council proceedings immediately preceding Plaintiff's removals. Third Am. Compl. ¶¶ 99–148. Those allegations - not generalized references to disability-related communication characteristics - form the basis of Plaintiff's First Amendment claim.

At the same time, because Plaintiff asserts claims related to her disability, the Third Amended Complaint necessarily includes allegations concerning Plaintiff's ADHD-related communication characteristics, accommodation requests, and prior disability-related conflicts with Council leadership. Defendants improperly conflate those allegations supporting Plaintiff's disability-related claims with the separate allegations supporting her First Amendment retaliation claim.[1]

In any event, Plaintiff includes allegations concerning her communication style as factual context for Defendants' anticipated assertion that Plaintiff was removed for allegedly inappropriate behavior. Whether Defendants approved of the manner in which Plaintiff expressed herself is analytically distinct from whether the substance of her speech addressed matters of public concern protected by the First Amendment. Defendants' repeated characterization of Plaintiff's speech as "ranting" is itself a disputed and pejorative characterization that risks reinforcing the very disability-related stereotypes underlying Plaintiff's statutory discrimination claims.

Defendants' argument, therefore, largely sidesteps the actual protected speech alleged in the Third Amended Complaint. Speech concerning government transparency, public expenditures, budget priorities, and municipal oversight

---

[1] Chief Judge Schiltz did not hold that such disability-related conduct categorically falls outside First Amendment protection, noting only that some such conduct was "probably not protected." ECF No. 108 at 3. To the extent those issues ultimately require further constitutional analysis, they are better addressed on a fuller factual record rather than at the pleading stage.

plainly address matters of public concern protected by the First Amendment. *See Snyder*, 562 U.S. at 452; *Connick*, 461 U.S. at 145–46. Even accepting Defendants' characterization of Plaintiff's comments as argumentative or controversial, "a statement's arguably inappropriate or controversial character … is irrelevant to the question whether it deals with a matter of public concern." *Snyder*, 562 U.S. at 453 (quoting Rankin, 483 U.S. at 387).

## II.   PLAINTIFF HAS NOW ALLEGED SPECIFIC ADVERSE ACTIONS WITH PARTICULARITY

Chief Judge Schiltz found that the proposed Second Amended Complaint failed to adequately describe the alleged retaliatory acts because it contained only "a barebones statement that Plaintiff was excluded from parts of some council meetings" with "scant detail about when, or how, she was removed." ECF No. 108 at 4 (quoting ECF No. 106 at 20, 23). The Court specifically noted that the prior pleading failed to identify "the dates of the meetings from which Dennis was expelled," or describe "when during the meeting she was expelled, what (if anything) she did that triggered her expulsion, how (if at all) the Council majority justified its action, and why a jury could conclude that the justification was pretextual." *Id.*

The proposed Third Amended Complaint directly addresses those deficiencies. Magistrate Judge Micko previously recognized that removal from Council proceedings could constitute adverse action sufficient to chill protected activity. Plaintiff now identifies the specific meetings from which she was removed, including the May 20, 2024, October 7, 2024, and December 2, 2024, Rochester

City Council meetings.[2] Third Am. Compl. ¶¶ 99–148. The proposed pleading further identifies the topics Plaintiff was discussing immediately before each removal, the statements made by Council leadership and the City Attorney preceding those removals, the sequence of events during each meeting, and the portions of the proceedings from which Plaintiff was excluded. *Id.*

The Third Amended Complaint alleges that Plaintiff was removed from active legislative proceedings while discussing issues of public concern relating to government transparency, public expenditures, procurement practices, housing affordability, and budget priorities. *Id.* ¶¶ 99–148. Plaintiff further alleges that the removals prevented her from participating in votes on significant public matters, including votes concerning the Destination Medical Center budget and an item Plaintiff had specifically removed from the consent agenda for discussion.

Those allegations are sufficient at the futility stage. Unlike the prior pleading criticized by Chief Judge Schiltz, the proposed Third Amended Complaint now pleads the precise meetings, surrounding factual context, contemporaneous statements, and resulting exclusions that form the basis of Plaintiff's retaliation claim.

---

[2] Plaintiff did not specifically focus on the August 5, 202,4 meeting because the removal occurred near adjournment and did not materially interfere with pending legislative business in the same manner as the other identified removals.

Moreover, courts considering retaliation claims involving elected officials distinguish between ordinary political disagreement and actions that materially interfere with an elected official's ability to participate in governmental proceedings. In *Boquist v. Courtney*, the Ninth Circuit held that restrictions interfering with a legislator's ability to access and participate in legislative proceedings could constitute materially adverse action because they "prevent[ed] [the official] from doing his job" and deprived him of authority connected to his elected office. 32 F.4th 764, 776–84 (9th Cir. 2022). Similarly, the court in *Belkot v. Clark County* analyzed whether removal from a governmental board constituted adverse action by examining the specific factual circumstances surrounding the removal and the official functions affected. 2026 WL 764158, at *6–9 (W.D. Wash. Mar. 18, 2026).

Defendants themselves acknowledge that the proposed Third Amended Complaint now includes extensive factual detail concerning the removals, describing the pleading as "an entire rewrite" that adds "details related to Plaintiff's removal from City Council meetings" and cites "Council meeting minutes and video." Defs.' Mem. Opp'n at 4–5, ECF No. 117. At minimum, the proposed pleading now supplies the factual specificity Chief Judge Schiltz found absent from the prior Complaint.

III.   THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES RETALIATORY MOTIVE AND CAUSATION

Chief Judge Schiltz found that the proposed Second Amended Complaint failed to plausibly allege retaliatory motive because it relied on generalized allegations untethered to sufficiently specific factual context. ECF No. 108 at 5–7. The Court acknowledged that "it is possible that the City Council expelled Dennis from four meetings in 2024 to retaliate against her for activity in which she'd continuously engaged since January 1, 2021," but concluded that the prior pleading failed to plausibly connect the challenged removals to sufficiently specific protected speech and surrounding factual circumstances. *Id*. at 6. In particular, the Court emphasized the absence of allegations concerning timing, context, sequence of events, and facts supporting an inference that Defendants' asserted justifications were pretextual. *Id*. at 4–7.

The proposed Third Amended Complaint directly addresses those deficiencies. At this stage, Plaintiff need not prove retaliatory motive; she need only plausibly allege it. Unlike the prior pleading, the Third Amended Complaint now identifies specific protected speech occurring immediately before the challenged removals and pleads the factual context surrounding each incident in detail. Plaintiff alleges that she was removed from Council proceedings shortly after raising concerns regarding government transparency, dismissed parking citations, public expenditures, procurement practices, Destination Medical Center oversight, budget priorities, housing affordability, and taxpayer access to financial information. Third

10

Am. Compl. ¶¶ 99–148. The proposed pleading further alleges a sequence of escalating removals tied to those disputes during live legislative proceedings. *Id.*

Those allegations plausibly support an inference of retaliatory motive at the pleading stage. The Eighth Circuit has long recognized that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (quoting *Freeman v. Blair*, 793 F.2d 166, 178 (8th Cir. 1986)). In *Madewell*, the Eighth Circuit specifically rejected efforts to defeat retaliation claims by presenting competing factual explanations for challenged actions, explaining that such disputes cannot be resolved through credibility determinations at the pleading or summary judgment stage. *Id.* The court further emphasized that "the alleged manifestations of defendants' retaliation . . . need not themselves amount to constitutional violations. The violation lies in the intent." *Id.*

Defendants nevertheless ask the Court to do precisely what *Madewell* forbids. Throughout their Opposition, Defendants repeatedly argue that Plaintiff's removals reflected neutral enforcement of parliamentary procedure rather than retaliatory motive. Defs.' Mem. Opp'n at 17–24, ECF No. 117. But the Third Amended Complaint does not concede that Defendants' asserted explanations were legitimate or non-pretextual merely because Plaintiff recounts statements made during the meetings.

11

To the contrary, Plaintiff alleges that those procedural justifications used against her in the context of escalating disputes concerning matters of public concern.

Defendants' arguments ultimately depend on resolving disputed factual inferences in Defendants' favor. Whether Defendants genuinely acted out of neutral procedural concerns, whether procedural rules were selectively enforced, and whether Defendants' asserted explanations were pretextual are factual questions inappropriate for resolution on a futility motion. See *Boquist v. Courtney*, 32 F.4th 764, 784–85 (9th Cir. 2022). Indeed, Defendants devote substantial portions of their Opposition to presenting Defendants' own interpretation of disputed meeting events and asking the Court to accept Defendants' characterization of those events over Plaintiff's competing inferences. But at the Rule 12 stage incorporated into a futility analysis, the Court must draw reasonable inferences in Plaintiff's favor, not Defendants.

Accepting the allegations of the Third Amended Complaint as true, Plaintiff has plausibly alleged that her protected speech played a motivating role in Defendants' decision to remove her from legislative proceedings. That is sufficient at this stage.

## CONCLUSION

The proposed Third Amended Complaint directly addresses the deficiencies identified by Chief Judge Schiltz by pleading substantially greater factual specificity regarding Plaintiff's protected speech, the adverse actions taken against her, and the

12

factual circumstances supporting a plausible inference of retaliatory motive. Defendants' Opposition largely confirms that these additional allegations now exist, while improperly asking the Court to resolve disputed factual inferences and credit Defendants' competing explanations at the pleading stage.

At this stage, Plaintiff need not prove retaliation; she need only plausibly allege it. Accepting the allegations of the proposed Third Amended Complaint as true and drawing reasonable inferences in Plaintiff's favor, Plaintiff has plausibly stated a First Amendment retaliation claim under *Scheffler*. Because amendment would not be futile, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Leave to Amend the Complaint and Modify the Scheduling Order.

Dated: May 14, 2026

**OSTROW LAW LLC**
/s/ Paul T. Ostrow
Paul T. Ostrow (#151889)
2239 Arthur Street NE
Minneapolis, Minnesota 55418

**QUANTUM LEX PA**
/s/ John Hayden
John Hayden (#504136)
6800 France Avenue South, Suite 405
Minneapolis, Minnesota 55435
(952) 746-2400
jhayden@quantumlex.io

*Attorneys for Plaintiff Molly L. Dennis*