IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly L. Dennis,<br><br>Plaintiff,<br><br>v.<br><br>City of Rochester, and Kim Norton, in her individual as well as official capacity as the mayor of the City of Rochester,<br><br>Defendants. | Case No. 24-cv-00426 (PJS/DLM)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT OPINIONS OF ROGER EICHMAN** |

Plaintiff Molly Dennis disclosed Mr. Roger Eichman, M.S., L.P., her longtime treating therapist, as a rebuttal expert to respond to Defendants' expert, Dr. Amy Steiner. But Mr. Eichman's opinions do not stay within the proper bounds of expert rebuttal testimony. Rather than offering a focused clinical critique of Dr. Steiner's opinions, Mr. Eichman offers legal conclusions (and inaccurate summaries of the applicable law), opinions about the City's intent, and affirmative theories that are not rebuttal but instead go to core elements of Ms. Dennis's ADA and MHRA claims.

Three independent defects require exclusion. First, Mr. Eichman repeatedly opines about what the law requires and whether the City violated it, including by asserting that the City's restrictions "violated the ADA," that the censure "targeted discrimination," and that Ms. Dennis's disability had to be "fully—not partially—accommodated." Those are impermissible legal conclusions, not expert opinions.

Second, the report lacks the reliability Rule 702 requires: Mr. Eichman identifies no methodology, no testing, and no literature. In fact, despite attacking Dr. Steiner's conclusions regarding Ms. Dennis's medical records, Mr. Eichman did not review Ms. Dennis's medical records at all, resting instead on his treatment relationship and clinical experience alone. And third, Mr. Eichman exceeds the limited function of rebuttal by advancing new theories of causation, discriminatory intent, and exclusion that Ms. Dennis did not timely disclose. The Court should exclude Mr. Eichman's opinions under Rule 702, *Daubert*, and Rule 403.

**FACTUAL ALLEGATIONS**

The Court's Amended Pretrial Scheduling Order established a process and deadlines for expert disclosure. The Order set Ms. Dennis's deadline to disclose expert identities as May 2, 2026, and expert reports as May 26, 2026.[1] The Order established Defendants' deadline to disclose expert identities as May 26, 2026, and expert reports as June 17, 2026.[2] The deadline for rebuttal expert disclosures was July 21, 2026.[3]

Ms. Dennis did not disclose an expert on May 2, 2026, and thus did not serve an expert report on May 26, 2026. On May 26, 2026, Defendants timely disclosed

---

[1] Oct. 1, 2025 Amended Pretrial Scheduling Order (ECF No. 92).

[2] *Id.*

[3] *Id.*

Dr. Amy Steiner, Psy.D., LP, ABPP, a board-certified clinical neuropsychologist. On June 17, 2026, they served Dr. Steiner's report, detailing her expert opinions.[4] Dr. Steiner conducted a records-based analysis and offered four clinical opinions: (1) the accommodations documented by the City were clinically consistent with the functional limitations identified in the Mayo Clinic letters and no clinical basis existed in those records for unrestricted staff access or altered communication rules; (2) the documented accommodations preserved Ms. Dennis's functional capacity to participate; (3) the medical record did not support attributing all interpersonal or behavioral concerns to ADHD; and (4) Ms. Dennis's later [redacted] diagnosis does not support retrospectively recharacterizing her earlier accommodation requests.[5]

On July 21, 2026, Ms. Dennis disclosed Mr. Roger Eichman as a rebuttal expert and served a report detailing his opinions.[6] Mr. Eichman's report states that it is "provided as a rebuttal expert report," is "offered solely to contradict or rebut opinions expressed by Dr. Amy Steiner," and "is not intended to offer affirmative opinions beyond those necessary to respond to Dr. Steiner's conclusions."[7] The

---

[4] *See* Exhibit 1 to the Declaration of Erin Emory, filed herewith ("Emory Decl. Ex. 1").

[5] *Id.* at 8–13.

[6] *See* Exhibit 2 to the Declaration of Erin Emory, filed herewith ("Emory Decl. Ex. 2").

[7] *Id.* at 1–2.

report identifies no studies, no peer-reviewed literature, and no testing. Mr. Eichman's Exhibit B lists categories of reliance material—including "[p]rofessional literature and generally accepted clinical principles"—without identifying any specific source.[8] The report instead relies expressly on Mr. Eichman's "more than forty-five years of clinical experience."[9] Mr. Eichman did not review Ms. Dennis's medical records.[10]

Mr. Eichman disagrees with Dr. Steiner's opinions regarding the clinical adequacy of the City's accommodations, the effect of the March 6, 2023 censure and related staff-access and communication restrictions, and the extent to which Ms. Dennis's ADHD explains her communication and interpersonal issues.[11] He opines that the City used Ms. Dennis's restroom accommodation against her by calling votes when she stepped away; the censure and related restrictions "effectively destroyed her functional capacity to participate;" the censure "targeted discrimination against a person with a protected disability;" and the City's conduct followed a "predator-provocation pattern."[12] He also opines that a neurodivergent person cannot be required to communicate as a neurotypical person, that such a

[8] *Id.* at Ex. B.

[9] *Id.* at 12.

[10] *Id.*

[11] *Id.* at 2–5.

[12] *Id.* at 2, 4–5.

requirement is discriminatory, and that a person meeting the minimum criteria for ADHD "must be fully—not partially—accommodated."[13] Mr. Eichman does not rebut Dr. Steiner's opinion regarding Ms. Dennis's later [redacted] diagnosis.[14]

**LEGAL ARGUMENT**

Rule 702, Rule 403, and *Daubert* require this Court to exclude Mr. Eichman's opinions. Rule 702 requires more than credentials and conclusions. An expert may offer an opinion only if it will help the trier of fact, if the opinion rests on sufficient facts or data and reflects reliable principles and methods, and if the expert applies those principles and methods reliably to the facts. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993). And under Rule 403, the Court must also exclude expert testimony when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403; *United States v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003).

Ms. Dennis cannot meet her burden to establish the admissibility of Mr. Eichman's opinions. *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (describing the "prerequisites" for admissibility). First, Mr. Eichman

---

[13] *Id.* at 4–5.

[14] *Id.* at 5.

substitutes legal conclusions for expert analysis, including opining on the ultimate issues in this case and offering conclusions about a censure this Court has already held to be immune from review. Second, Mr. Eichman rests his opinions on experience alone, without identified methodology, literature, or meaningful record support. Third, Mr. Eichman exceeds the limited function of rebuttal by introducing affirmative theories of causation, intent, and discrimination. The Court should exclude Mr. Eichman's opinions.

### A. Mr. Eichman's legal opinions are inadmissible, and permitting him to testify would be an abuse of discretion.

Mr. Eichman's opinions about the legality of the City's conduct are inadmissible legal conclusions. "Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them;" accordingly, "expert testimony on legal matters is not admissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers*, 320 F.3d 838, 841 (8th Cir. 2003). "[E]xperts testify to aid the factfinder in understanding or determining the facts; they do not testify to aid the factfinder in understanding or determining the law." *Minn. Chamber of Com. v. Choi*, 765 F. Supp. 3d 821, 843 (D. Minn. 2025). Where an expert opines that conduct satisfied or violated a legal standard, the testimony "[is] not a fact-based opinion, but a statement of legal conclusion," and admitting it is an abuse of discretion. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

Mr. Eichman offers impermissible opinions regarding the applicable legal standard. For example, Mr. Eichman purports to recite the ADA's requirements:

> The ADA specifies that no qualified individual with a disability may be discriminated against by a department, agency, special purpose district, or other instrumentality of a State or local government. Public services shall operate their programs so that, when viewed in their entirety, they are readily accessible to and usable by individuals with disabilities.[15]

He goes on to announce the "[r]equirements of state and local government," stating that they may not "refuse to allow a person with a disability to participate in a service, program, or activity simply because of the person's disability."[16] And he says that "[i]f a person meets the minimum criteria for ADHD, that individual must be fully—not partially—accommodated."[17] Mr. Eichman thus attempts to usurp this Court's role by announcing what he believes to be the applicable legal standard. Not only that, but his recitations of the legal standard are wrong.[18] This Court should not permit him to present his spin on the legal standard to the jury. *See, e.g.*, *Peterson*, 60 F.3d at 475 (ordering new trial because the improper expert testimony "led the jury to focus on the wrong question").

---

[15] *Id.* at 2.

[16] *Id.* at 2–3.

[17] *Id.* at 5.

[18] *Compare* Emory Decl. Ex. 2 at 2–3 *with* 28 C.F.R. § 35.130(a) *and* Minn. Stat. § 363A.12, subd. 1.

Not only does Mr. Eichman announce incorrect legal standards, but he also offers opinions on issues that this Court has already decided. In particular, this Court has already determined that the March 6, 2023 censure constitutes immune legislative conduct.[19] Yet Mr. Eichman repeatedly offers opinions that the censure "effectively destroyed [Ms. Dennis's] functional capacity to participate," that it was "targeted discrimination," and that it resulted from a "predator-provocation pattern."[20]

These are improper opinions related to affirmative liability on a subject the Court has already dismissed from this case. They must be excluded. *See Life Plus Int'l v. Brown*, 317 F.3d 799, 804 (8th Cir. 2003) (a party may not "get admitted through the back door of rebuttal evidence that which the district court had correctly barred . . . at the front door"). These opinions impermissibly invite the jury to assess the validity of the censure and the motives underlying it. Mr. Eichman's legal opinions will not assist the jury in deciding any remaining issue in the case and serve only to create confusion and prejudice. The Court should exclude them.

Not only does Mr. Eichman improperly announce the law and seek to relitigate issues that this Court already decided, but Mr. Eichman also impermissibly renders a verdict. For example, he concludes that the City's "restrictions violated the

[19] *See* Oct. 30, 2024 Report and Recommendation at 12–14 (ECF No. 38).

[20] Emory Decl. Ex. 2 at 4.

ADA."[21] He even goes further, opining that the "censure targeted discrimination," that "[a] neurodivergent person cannot be required to communicate as a neurotypical person, and such a requirement is discriminatory," and that "[i]f a person meets the minimum criteria for ADHD, that individual must be fully—not partially—accommodated."[22] Such testimony does not assist the trier of fact; it merely tells the Court and jury what result to reach.

Each statement answers a question reserved for the jury. Mr. Eichman's opinions impermissibly invite the jury to substitute Mr. Eichman's legal pronouncements and conclusions for Ms. Dennis's obligation to prove the elements of her ADA and MHRA claims through admissible evidence. Whether the City denied Ms. Dennis meaningful access to a public service because of her disability, and whether any further accommodation was legally required, are the ultimate legal questions in this case. *See* 42 U.S.C. § 12132; Minn. Stat. § 363A.12, subd. 1; *see also* *Segal v. Metro. Council*, 29 F.4th 399, 403–05 (8th Cir. 2022) (applying statutes to case on summary judgment). Permitting such testimony would allow Mr. Eichman to serve as an advocate and legal arbiter rather than an expert witness.

---

[21] *Id.* at 3.

[22] *Id.* at 4–5.

### B. Mr. Eichman's opinions fail Rule 702 and *Daubert* because they are unsupported generalizations with no reliable methodology.

The Court should exclude Mr. Eichman's opinions for a second, independent reason: they are not the product of reliable principles and methods, reliably applied. Fed. R. Evid. 702 (requiring expert testimony be "based on sufficient facts or data," be "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case"); *see Daubert*, 509 U.S. at 589–95.

Mr. Eichman cites his experience as the basis for his opinions.[23] But experience alone is not a methodology. When an expert relies primarily on experience, he must explain how that experience supports the conclusions reached, why it provides a sufficient basis for those conclusions, and how it has been reliably applied to the facts of the case. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The court's gatekeeping role requires more than simply "taking the expert's word for it." *Id.* Accordingly, courts may not admit opinions that are connected to the facts only by the expert's *ipse dixit* or where the analytical gap between the underlying data and the proffered opinion is too great. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citation omitted).

[23] *See, e.g., id.* at 1, 2, 5, 6, and 12.

Mr. Eichman cites no study, no peer-reviewed article, and no further documentation to support his opinions. While Exhibit B to his report generically refers to "[p]rofessional literature and generally accepted clinical principles," Mr. Eichman identifies no specific sources.[24] The report's only substantive citation is a link to another provider's website for the quotation that "[d]iagnoses may be helpful as descriptors, but they're never explanations."[25] Instead of methodology, the report offers Mr. Eichman's recollection of his clinical experience: "In the past forty-five years, I have diagnosed many people with ADHD."[26] He then announces, based on his experience, a conclusion: "I do not believe there has ever been a person in my career diagnosed with ADHD who did not have these other issues directly related to the disorder."[27] That is the definition of *ipse dixit*—a pure assertion without proof. Such an opinion is inadmissible. *See Marmo*, 457 F.3d at 758.

Even more concerning, Mr. Eichman did not review or consider Ms. Dennis's medical records.[28] Specifically, Mr. Eichman did not review the [redacted]

[24] *See id.* at 12, Ex. B.

[25] *Id.* at 5, n. 1.

[26] *Id.* at 5.

[27] *Id.*

[28] *Id.* at 12, Ex. B.

[redacted][29] By contrast, Defendants' expert Dr. Steiner reviewed and analyzed each set of records in reaching her opinions.[30]

Mr. Eichman's failure to review Ms. Dennis's medical records further demonstrates his lack of methodology. For example, one of the opinions that Mr. Eichman challenges is Dr. Steiner's third opinion that "the medical record [does not] support attribution of interpersonal or behavioral concerns to ADHD."[31] Mr. Eichman responds that this statement "is completely inconsistent with this case and with my own general experience as a clinician with forty-five years of experience."[32] He thus disputes a conclusion *about the medical records* without having read the medical records, substituting his own career impressions for the documents at issue. He does the same in disagreeing that "the records do not clinically substantiate all of Ms. Dennis's self-described symptoms as ADHD-related functional limitations."[33] But, again, Mr. Eichman did not review "the records." His opinion is thus not "based on sufficient facts or data." Fed. R. Evid. 702(b). Rule 702 does not permit an expert

[29] *Id.*

[30] *See* Emory Decl. Ex. 1 at 2–8.

[31] *Id.* at 12.

[32] Emory Decl. Ex. 2 at 5.

[33] *Id.*

to rebut a medical-record analysis by invoking decades of experience while never reviewing the medical records themselves.

Mr. Eichman's "predator-provocation pattern" theory suffers from the same defect. He asserts that City officials provoked a reaction from Ms. Dennis and then used that reaction to justify additional restrictions.[34] But, again, he identifies no methodology supporting that theory, cites no literature recognizing such a concept, and provides no explanation for how he applied any professional principle to the facts of this case. Instead, Mr. Eichman offers only the bald conclusion that such a pattern existed. Expert testimony that gives the factfinder no information—other than what the witness believes the outcome should be—is inadmissible. *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990).

Mr. Eichman's own framing confirms this problem. He writes that "[u]nlike Dr. Steiner, my opinions are informed by my direct treatment of Ms. Dennis."[35] A treatment relationship may inform clinical observation, but it does not permit an expert to opine on records he never reviewed or to dismiss another expert's record-based conclusions without examining the underlying materials. The Eighth Circuit affirmed exclusion on materially similar reasoning in *Marmo*, where a toxicologist relied on limited information from the plaintiff, failed to investigate alternative

---

[34] *Id.* at 4.

[35] *Id.* at 1.

causes, and did not account for critical facts necessary to support his conclusions. 457 F.3d at 758–59. Mr. Eichman commits the same error here: he rejects Dr. Steiner's analysis of the medical records while concededly never reviewing the records himself, leaving his opinions untethered to the very data he purports to critique.

Mr. Eichman's resulting assumptions and generalizations are unsupported. Mr. Eichman asserts that interpersonal or behavioral concerns are "the very essence of ADHD;" that all of "Ms. Dennis's issues are embedded in her ADHD diagnosis," and that "[a]ny other potential diagnostic issues . . . are not separate from her ADHD but are an integral part of it."[36] Mr. Eichman provides no further analysis to support or explain these assertions. Critically, Mr. Eichman also does not engage with, much less rebut, Dr. Steiner's opinion that Ms. Dennis's medical records "do not provide a reliable clinical basis to attribute all reported interpersonal conflicts, communication difficulties, or boundary-related concerns to ADHD."[37] Through her review of the clinical records, Dr. Steiner identified several "additional diagnostic considerations" including [redacted][38] Mr.

[36] *Id.* at 5.

[37] Emory Decl. Ex. 1 at 12.

[38] *Id.* at 12.

Eichman neither addresses these alternative explanations nor explains why they should be discounted. That omission is significant. An expert's failure to account for "obvious" alternative explanations is a recognized basis for exclusion. *See Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 608 (8th Cir. 2020) (quotation and citation omitted); Fed. R. Evid. 702 advisory committee's note to 2000 amendment (courts should consider whether the expert has adequately accounted for obvious alternative explanations). Because Mr. Eichman ignores these competing explanations while attributing Ms. Dennis's reported difficulties to ADHD, his opinions reflect precisely the type of unsupported analytical leap that Rule 702 forbids.

Finally, Mr. Eichman's factual assertions about the City fare no better. He opines that restricting Ms. Dennis's access "inflicts significant mental, emotional, functional, and physical harm;" that the City "us[ed] Ms. Dennis's accommodation against her;" and that the City's actions "obliterated Ms. Dennis's connections."[39] Those are not expert opinions derived from any discernible methodology. They are factual assertions and attributions of motive dressed in the language of expertise. Mr. Eichman never identifies the evidence supporting these conclusions, the basis for attributing particular motives to City officials, or any clinical methodology used to measure the alleged harms. Nor does he explain how he reliably arrived at those

[39] Emory Decl. Ex. 2 at 2–3, 5.

conclusions from the facts of this case. An expert may not simply adopt a party's version of disputed events, weigh the evidence, or opine on witness credibility. *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883–84 (8th Cir. 1998). Allowing such testimony would improperly "attempt to guide the jury in determining an issue beyond their charge." *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, 994 F. Supp. 2d 1033, 1055 (D. Minn. 2014). In short, these opinions do not reflect the application of specialized knowledge to disputed facts; they reflect Mr. Eichman's preferred interpretation of those facts. Determining whether the City acted as alleged, why it acted, and what consequences followed are questions for the jury, not an expert witness.

For the same reasons, the Court should also exclude this testimony under Rule 403. Testimony that bears the imprimatur of expert analysis but consists of legal conclusions and unsupported assertions about the City's intent creates a substantial risk of unfair prejudice, juror confusion, and misleading the jury. *See* Fed. R. Evid. 403. As one court has explained, the "aura of trustworthiness and reliability" that surrounds expert testimony can improperly enhance its persuasive force, particularly when the expert offers legal conclusions that may supplant the Court's instructions on the law. *CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571, 587 (N.D. Ill. 2009). That danger is especially acute

here, where Mr. Eichman repeatedly couples legal pronouncements with unsupported factual assertions about the City's motives and conduct.

### C. Mr. Eichman's opinions exceed the scope of proper rebuttal.

Finally, several of Mr. Eichman's opinions warrant exclusion for an additional reason: they are not rebuttal at all. Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits rebuttal evidence only where it is "intended solely to contradict or rebut evidence on the same subject matter" identified by the opposing party's expert. "The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005) (citation omitted). "As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo*, 457 F.3d at 759. At least three of Mr. Eichman's opinions go beyond the scope of rebuttal and instead advance Ms. Dennis's affirmative case.

First, Mr. Eichman opines on causation, stating that the City's post-censure actions "obliterated Ms. Dennis's connections, worsened her ADHD, and severely limited her ability to function as a Council Member."[40] That is not a rebuttal to any opinion Dr. Steiner offered. Dr. Steiner did not opine on causation; rather, she concluded that the contemporaneous records did not support a finding that Ms. Dennis lacked the cognitive ability to participate with the identified

---

[40] *Id.* at 5.

accommodations and supports.[41] Mr. Eichman does not address that point but merely reiterates Ms. Dennis's point of view without further explanation. Mr. Eichman's opinion thus does not "explain, repel, counteract or disprove evidence of the adverse party." *Lamoreaux*, 422 F.3d at 755. It is improper.

Second, Mr. Eichman introduces a novel theory that City officials provoked a reaction from Ms. Dennis, then used the reaction to justify restricting her, which he labels the "predator-provocation pattern."[42] That theory does not critique Dr. Steiner's methodology, challenge the sufficiency of the data she reviewed, or rebut any conclusion she reached.[43] Instead, it advances a new theory of motive and intent that is directed at proving Ms. Dennis's affirmative discrimination claims. Such testimony exceeds the proper scope of rebuttal. *See Marmo*, 457 F.3d at 759 ("[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief."). Rule 26 does not permit a party to introduce new affirmative theories under the guise of rebuttal testimony.

Third, Mr. Eichman opines that the City "us[ed] Ms. Dennis's accommodation against her" by calling votes when she stepped away to use the restroom.[44] That opinion does not rebut any conclusion in Dr. Steiner's report. Dr. Steiner offered no

[41] Emory Decl. Ex. 1 at 11.

[42] Emory Decl. Ex. 2 at 4.

[43] *See generally* Emory Decl. Ex. 1.

[44] Emory Decl. Ex. 2 at 2.

opinion regarding when Council votes were called, why they were called, or the motives of City officials.[45] Rather, she concluded that the accommodations and supports documented in the record, including bathroom access, hydration, and mobile livestream access, corresponded to the functional limitations identified in the Mayo Clinic letters.[46] Mr. Eichman's assertion therefore is not a clinical response to Dr. Steiner's assessment. It is an accusation of intentional discrimination masquerading as rebuttal testimony. Because it seeks to establish motive and liability rather than rebut Dr. Steiner's opinions, it falls outside the permissible scope of rebuttal expert testimony.

Ms. Dennis chose not to disclose Mr. Eichman as an affirmative expert, even though, as her longtime treating therapist, he was plainly available for disclosure under this Court's expert disclosure deadlines. The Eighth Circuit recently affirmed exclusion under similar circumstances where the plaintiff bore the burden of proof on the issues addressed by the expert and "waited until [the defendants'] expert pointed out all the flaws in her case to retain a rebuttal expert in an attempt to salvage her case." *Lloyd v. FedLoan Serv'g*, 105 F.4th 1020, 1029 (8th Cir. 2024). The same is true here. Mr. Eichman offers opinions on causation, discrimination, discriminatory intent, and the alleged inadequacy of the City's accommodations—

---

[45] *See generally* Emory Decl. Ex. 1.

[46] *Id.* at 9–10.

all issues on which Ms. Dennis bears the burden of proof. Like the plaintiff in *Lloyd*, Ms. Dennis may not use a rebuttal report to introduce affirmative expert opinions that should have been disclosed as part of her case-in-chief. If she intended to rely on expert testimony to establish those elements of her ADA and MHRA claims, she was required to disclose those opinions in accordance with this Court's affirmative expert disclosure deadlines. Having chosen not to do so, she cannot now use rebuttal testimony to supply proof on causation, intent, or liability. Because Mr. Eichman's opinions advance affirmative theories rather than rebut Dr. Steiner's opinions, they must be excluded.

## CONCLUSION

Ms. Dennis bears the burden of proving her ADA and MHRA claims. She cannot satisfy that burden through expert testimony that consists of (incorrect) legal pronouncements and conclusions, opinions directed at immune conduct, affirmative theories improperly disclosed in rebuttal, and unsupported assertions lacking a reliable methodology. Absent those opinions, Mr. Eichman's report provides no admissible opinions and offers nothing that would help the jury. For the foregoing reasons, Defendants respectfully request that the Court grant their motion to exclude Roger Eichman as an expert.

Dated: September 2, 2026

**GREENE ESPEL PLLP**

*/s/ Erin Emory*

Jenny Gassman-Pines, Reg. No. 0386511
Erin Emory, Reg. No. 0401215
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
jgassman-pines@greeneespel.com
eemory@greeneespel.com
(612) 373-0830

Attorneys for Defendants